STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

IN RE:

GUARDIAN FUND, LLC,

Debtor.

_____ /

Case No.: BK-23-50177-hlb
Case No.: BK-23-50233-hlb
**Consolidated Under Case No. BK-23-50177-hlb**
(Chapter 11)

**MOTION FOR ORDER ENFORCING THE AUTOMATIC STAY, FINDING CHRISTOPHER BURKE WILLFULLY VIOLATED THE 11 U.S.C. § 362(a) AUTOMATIC STAY, AND AWARDING SANCTIONS**

Hearing Date:
Hearing Time:
Est. Time:       1 hour
Set By:          OST Pending

GUARDIAN FUND, LLC, a Nevada limited liability company, Debtor and Debtor-In-Possession in the above-captioned Chapter 11 case ("Debtor" or "Guardian Fund"), by and through its proposed attorneys, STEPHEN R. HARRIS, ESQ. and NORMA GUARIGLIA, ESQ., of HARRIS LAW PRACTICE LLC, and the Official Committee of Unsecured Creditors (the "Committee"), by and through its proposed attorney, SALLIE ARMSTRONG of MCDONALD CARANO, LLP, file their MOTION FOR ORDER ENFORCING THE AUTOMATIC STAY, FINDING THAT CHRISTOPHER BURKE WILLFULLY VIOLATED THE 11 U.S.C. § 362(a) AUTOMATIC STAY, AND AWARDING SANCTIONS ("Motion").

This Motion is based on the supporting Declarations of Aaron Noe and Norma Guariglia,

these points and authorities, the pleadings, and papers on file with this Court of which the Court may take judicial notice pursuant to Fed. R. Evid. 201, and oral argument of counsel at any hearings on this matter.

### JURISDICTION

1.      This Court has subject matter jurisdiction to consider and adjudicate this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O) and 1334(e)(1), and LR 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(G), and (b)(2)(O). Venue of the Debtor's Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Debtor and the Committee confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9014.2, to entry of a final order by the Court on this Motion if it is later determined the Court, absent consent of the parties, cannot enter final orders or judgments on the Motion consistent with Article III of the United States Constitution.

3.      The statutory predicate for the sought relief is 11 U.S.C. §§ 105 (a), 362, 541 and 542, and Fed. R. Bankr. P. 9014.

### BACKGROUND

4.      On March 17, 2023, certain petitioning creditors ("Petitioning Creditors") filed a Chapter 7 *Involuntary Petition Against a Non-Individual* as Case No. 23-50177-hlb ("Involuntary Case") against the Debtor. *See* ECF No. 1, Case No. 23-50177-hlb.

5.      On April 11, 2023, Debtor filed a Chapter 11 *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, initiating Case No. 23-50233-hlb ("Voluntary Chapter 11 Case"). *See* ECF No. 1, Case No. 23-50233-hlb. Pursuant to 11 U.S.C. § 301(b), the commencement of Debtor's Voluntary Chapter 11 Case constitutes an order for relief under Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 301(b).

6.      On April 17, 2023, the Debtor filed a *Stipulation Between Debtor and Petitioning Creditors to Consolidate Involuntary and Voluntary Cases Pursuant to Fed. R. Bankr. P. 1015(a)* ("Stipulation") in both the Involuntary Case and the Voluntary Chapter 11 Case. *See* ECF No. 17, Case No. 23-50233-hlb; ECF No. 12, Case No. 23-50177-hlb.

7.      On April 27, 2023, the Court entered its *Order Approving Stipulation Between*

*Debtor and Petitioning Creditors to Consolidate Involuntary and Voluntary Cases Pursuant to Fed. R. Bankr. P. 1015(a) and Fixing Petition Date and Commencement Date* [ECF No. 15, Case No. 23-50177-hlb; ECF No. 28, Case No. 23-50233-hlb] ("Consolidation Order"). The Consolidation Order consolidated the Involuntary Case together with the Voluntary Chapter 11 Case under the first-filed case, 23-50177-hlb, and fixed the Chapter 11 petition date, as defined under 11 U.S.C. § 101(42), to March 17, 2023.

8.    The Committee was appointed by Tracy Hope Davis, the United States Trustee for Region 17, on May 10, 2023. [ECF No. 54]

9.    No trustee has been appointed in this case and Debtor acts as Debtor-In-Possession.

10.    The Debtor's business consists of buying, selling, and managing rental properties primarily in Ohio, Missouri, and Alabama. As of the Petition Date, the Debtor owned, directly or through wholly owned subsidiaries, around 300 real properties and managed about 1,500 other real properties under certain lease agreements. *See Schedules* [ECF No. 21], *Amended Schedules* [ECF Nos. 33 and 90], *Statement of Financial Affairs* [ECF No. 22], and *Amended Statement of Financial Affairs* [ECF No. 63].

11.    As noted on Debtor's Schedule A/B, one of its largest assets is an outstanding note receivable with an estimated unpaid balance of $23,727,307 from 12 Bridges, Inc., successor-by-merger to 12 Bridges, LLC and Home Partners, LLC ("12 Bridges"), a wholly owned subsidiary of the Debtor's former non-equity managing member, Hughes Private Capital, Inc. ("HPC"). *See Amended Schedule* A/B #71 [ECF No. 90]. It is believed that the Debtor also transferred money and property in excess of $50 million to 12 Bridges during the prepetition preference period, with the net amount for the most part reflected in the outstanding note receivable balance. *See Amended Statement of Financial Affairs* #4.9 [ECF No. 63].

12.    After the Petition Date but before the filing of the Voluntary Chapter 11 Case, the Debtor acquired  - through a Power of Attorney ("POA") dated April 11, 2023 - a **legal** interest in 181 real properties (collectively, the "12 Bridges Properties") which were owned by 12

Bridges.[1]   *See Amended Schedules A/B* #55.5 [ECF No. 90].[2]   The POA is between 12 Bridges as the principal and the Debtor's managing member, El Monte Capital, Inc., as the principal's attorney-in-fact ("Agent") and specifically provides that the POA "will cease once all properties identified in Addendum A, are transferred to the Guardian Fund, LLC or sold and the proceeds are transferred to the Guardian Fund, L.L.C." *See Power of Attorney* attached as **Exhibit A**.

13.   The POA granted the Agent broad rights to enter into real estate transactions, manage the properties, mortgage the properties, sell the properties, pay vendors from proceeds of the properties, and transfer sale proceeds from the properties to this Debtor, Guardian Fund. *See POA* ¶ 6. The POA was not subject to any conditions or restrictions other than as noted. *See POA* ¶ 10. The purpose and effect of the POA is therefore to provide an assignment of the 12 Bridges Properties and their proceeds for the benefit of 12 Bridges' creditor, Guardian Fund.[3]

14.   The consideration for the POA includes, among other claims, the outstanding debt owing from 12 Bridges to the Debtor under a revolving line of credit secured by all of 12 Bridges' assets, including the 12 Bridges Properties. *See Noe Declaration.* The 12 Bridges Properties were purchased with monies loaned by the Debtor to 12 Bridges. *Id.*

15.   On May 12, 2023, 12 Bridges' sole shareholder, HPC, filed a voluntary Chapter 7 petition in this Court as Case No. 23-50322-hlb. HPC's Chapter 7 trustee is Christopher Burke ("Mr. Burke"), and Mr. Burke's counsel is Robert Atkinson, Esq. ("Mr. Atkinson"). *See* Case No. 23-50322-hlb.

---

[1] Debtor arguably had a prior equitable interest in 12 Bridges' assets, including the 12 Bridges Properties, because of the prepetition loans and transfers from the Debtor to 12 Bridges (the Debtor is investigating all potential legal claims and interests), but the POA unequivocally gave the Debtor both legal and equitable interests in the assets identified in Addendum A to the POA.

[2] The 12 Bridges Properties were not originally listed on the Debtor's Schedules because the POA was effective April 11, 2023, and the Schedules reflect the Debtor's estimated assets and liabilities as of the Petition Date of March 17, 2023.

[3] The assignment of the 12 Bridges Properties resolved numerous issues between 12 Bridges and the Debtor without litigation; it also provides the Debtor with the framework from which the Debtor and the Committee hope they will be able to formulate a successful plan of reorganization. It is for this reason that the Committee is a party to this Motion. The Committee believes at this early point in the Debtor's case the greatest prospect for a recovery by unsecured creditors is the continued administration of the 12 Bridges Properties.

Case 23-50177-hlb   Doc 113   Entered 06/16/23 16:53:13   Page 5 of 25

16.   HPC's Schedules disclose its 100% ownership interest in 12 Bridges with an estimated value of $0, because 12 Bridges' liabilities far exceed its assets given the large multi-million-dollar debt owing to Guardian Fund. *See* ECF No. 31, Case No. 23-50322-hlb.[4] Consequently, there is no surplus equity in 12 Bridges for the benefit of its sole shareholder, HPC, and, therefore, 12 Bridges is an asset with no value for HPC's estate and unsecured creditors.

17.   On or about May 25, 2023, Mr. Noe received an email from Mr. Atkinson advising him and various other parties and title companies that HPC's bankruptcy trustee had dissolved 12 Bridges. *See Noe Declaration.* Mr. Atkinson also provided the parties with a "cease and desist" letter (the "Cease and Desist Letter") telling the parties they could not process any more transactions related to the 12 Bridges Properties. *Id.*

18.   Some recipients of Mr. Atkinson's letter were properly conducting title work and preparing deeds of trust on the 12 Bridges Properties in favor of the Debtor under the secured Line of Credit Promissory Note owed by 12 Bridges to the Debtor and the POA. *Id.* However, after receiving the Cease and Desist Letter, the parties conducting the title work and preparing deeds of trust for the Debtor stopped working. *Id.*

19.   Before dissolving 12 Bridges, neither Mr. Burke nor Mr. Atkinson contacted Debtor's bankruptcy counsel to discuss 12 Bridges, the Debtor's claims against 12 Bridges, or Mr. Burke's intended dissolution of 12 Bridges. *See Guariglia Declaration.* Without providing requisite notice to any of the estates' creditors and/or explaining the legal implications of a corporate dissolution for 12 Bridges, Mr. Burke acted unilaterally and without Court approval. Moreover, neither Mr. Burke nor Mr. Atkinson provided Debtor's counsel or Committee's counsel with notice or a copy of the Cease and Desist Letter even though they were allegedly aware from HPC's bankruptcy counsel, Debtor's § 341 meeting,[5] and Debtor's Amended Schedules that the Debtor claims an interest in the 12 Bridges Properties. *Id.*

---

[4] Mr. Greg Hughes, one of the principals of HPC, confirmed at the HPC 341 Meeting conducted on June 15, 2023 that HPC's equity interest in 12 Bridges has no value.

[5] Mr. Atkinson attended the Debtor's 341 Meeting conducted on May 30, 2023, and asked questions about the Debtor's interest in the 12 Bridges Properties. Debtor's counsel also emailed a copy of the POA to Mr. Atkinson on May 30, 2023 at 2:05 p.m. *Id.*

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

20.     On May 25, 2023, and again on May 26, 2023, Debtor's counsel emailed a letter to Mr. Atkinson advising him of Debtor's interest in the 12 Bridges Properties; of the damages Mr. Burke was doing to the Debtor's estate by interfering in the administration of its assets and violating the automatic stay; and requesting that Mr. Burke immediately rescind his improper actions. *Id.* Mr. Burke did not comply. *Id.*

21.     On June 9, 2023, the Debtor's wholly owned property management entity, 12 B Residential, asked an officer at Title One USA to record the POA in Ohio counties where 12 Bridges Properties are located. *See Noe Declaration.* On June 12, 2023, Mr. Atkinson, on behalf of Mr. Burke, once again delivered a "cease and desist" letter to 12 B Residential to prevent the Debtor's agent from recording the POA. *See Guariglia Declaration.*

22.     Thereafter, Mr. Atkinson sent Mr. Noe an email on June 12, 2023, stating that Mr. Burke had revoked the POA, presumably on behalf of 12 Bridges, although Mr. Burke had not sought or obtained relief from the automatic stay in this Chapter 11 case to exercise control over Guardian Fund's assets by attempting to revoke the POA. *Id.*  Notably, Mr. Burke took all of these action without obtaining Court authorization in HPC's Chapter 7 case to operate any of HPC's business interests. *Id.*

23.     After receiving Mr. Burke's alleged Revocation of the POA, Debtor's counsel emailed Mr. Atkinson to once again advise him that Mr. Burke is violating the automatic stay with his continued actions in exercising control over the 12 Bridges Properties. *Id.*

24.     Mr. Burke has not sought or obtained Court authorization to operate HPC's business under 11 U.S.C. § 721. Mr. Burke has not sought or obtained Court authorization to use property of HPC's estate under 11 U.S.C. § 363 other than seeking to sell certain furniture, supplies, and equipment of HPC. *See* ECF No. 27, Case No. 23-50322-hlb. Mr. Burke has also not sought or obtained relief from stay under 11 U.S.C. § 362(a) to exercise control over the 12 Bridges' Properties which are assets that vested in <u>Guardian Fund's</u> bankruptcy estate, created before HPC's Chapter 7 filing. HPC's shareholder interest in 12 Bridges is a personal property asset of HPC's Chapter 7 estate, but the 12 Bridges Properties are not property of HPC's estate. Finally, Mr. Burke did not provide notice to creditors of HPC's estate, this estate, or 12 Bridges

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

6

of his intent to carry out an extra-judicial corporate dissolution of 12 Bridges, perhaps in violation of 28 U.S.C. §959.

25.     Because of Mr. Burke's unauthorized interference in the administration of this Chapter 11 case, the Debtor's managing member, El Monte Capital, Inc., has been unable to carry out the acts contemplated by the POA for the benefit of the Debtor's estate. Mr. Burke's actions have caused the Debtor's estate substantial harm.  This Court should enforce the automatic stay to preserve and protect property of Guardian Fund's Chapter 11 estate.

## LEGAL ARGUMENT

### A. The Debtor's Interest In The 12 Bridges Properties Is Property Of The Debtor's Estate Under 11 U.S.C. § 541.

The filing of a bankruptcy petition creates a bankruptcy estate. *See* 11 U.S.C. § 541. 11 U.S.C. § 541 is to be interpreted very broadly so that the bankruptcy estate consists of "all the interests in property, legal and equitable, possessed by the debtor at the time of the filing, as well as those interests recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991). What constitutes property of a bankruptcy estate is a federal question governed by § 541, yet whether and to what extent a debtor has any legal or equitable interest in the subject property as of the commencement of the case is determined under state law. *Butner v. United States*, 440 U.S. 48, 55 (1979).

11 U.S.C. § 541 is intended to be broad and all-inclusive. *In re Bialac*, 712 F.2d 426, 431 (9th Cir. 1983). "Section 541(a) is an all-embracing definition which includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interest, that the debtor may have in property of another." *Id.* (quoting 124 Cong. Rec. H 11,096 (Sept. 28, 1978) (Statement of Rep. Edwards). Options or contingent interests are property of the estate, and an interest is not outside the reach of § 541 "because it is novel or contingent or enjoyment must be postponed." *Id.* (citing *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)). After-acquired property is also property of the estate under 11 U.S.C. §§ 541(a)(6) and (7). *See* 5 Collier on Bankruptcy, 16th ed. ¶ 541.02 (2023).

/ / /

/ / /

**1. The POA Vested In The Debtor An Irrevocable Property Interest Superior To Any Competing Claims Of A Later-Created Bankruptcy Estate.**

Courts have consistently held that powers of attorney like the one here are irrevocable because they are coupled with an interest or given in exchange for valuable consideration or as security intended for the benefit of the agent or a third party rather than the principal. *See Frankel v. J.P. Morgan Chase & Co.*, 76 A.D. 3d 664, 668 (N.Y. 2010) (citing *Terwilliger v. Ontario, Carbondale & Scranton R.R. Co.* 149 N.Y. 86, 95 (N.Y. 1896)); *Jozefowicz v. Allstate Ins. Co.*, 35 Cal. App. 5th 829, 836 (Cal. 2019).

Here, the POA gave the Debtor an irrevocable legal interest in the 12 Bridges Properties because it was given in exchange for valuable consideration and to secure payment of 12 Bridges' debts to the Debtor. The Debtor arguably obtained an equitable interest in the 12 Bridges Properties first when it loaned money to 12 Bridges for the purchase of properties under the parties' secured revolving line of credit, and it thereafter indisputably obtained a legal interest in the 12 Bridges' Properties through the POA. These property rights were vested in Guardian Fund's Chapter 11 estate under § 541 before HPC's chapter 7 estate was created upon its own bankruptcy filing on May 12, 2023 and before Mr. Burke unilaterally chose to dissolve 12 Bridges, HPC's wholly owned subsidiary.

Once property is vested in one bankruptcy estate, that property interest is superior to an alleged competing interest held by a debtor of a later-filed bankruptcy case. *See In re Bartlett*, 24 B.R. 605, 608 (B.A.P. 9th Cir. 1982) (holding that a married couple's entire community property interest became part of the estate of the first spouse to file a bankruptcy petition); *In re Vazquez*, 606 B.R. 432, 441 (Bankr. D. Kan. 2019) (holding that wife's bankruptcy estate included sole fee title to the couple's marital property because husband's bankruptcy case was filed later).

12 Bridges has not filed a bankruptcy case nor has Mr. Burke sought Court authorization to file a bankruptcy case for 12 Bridges. However, even if Mr. Burke caused 12 Bridges to file a bankruptcy petition, Guardian Fund's interest in the 12 Bridges Properties is superior to those of any debtor in a subsequently filed case because those interests vested first in time in this Debtor's bankruptcy estate. What is more, HPC's estate currently has no interest in the 12 Bridges

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

8

Properties because HPC's stock ownership in 12 Bridges is only a personal property interest in the stock—not ownership in the corporation's underlying assets. *See* NRS 78.240 (shares of stock in every corporation shall be personal property).

**2. HPC's Stock Interest In 12 Bridges Is Property Of Its Chapter 7 Estate, But 12 Bridges' Underlying Assets Are Not.**

Courts have uniformly held that an equity holder's interest in a corporation becomes property of the shareholder's bankruptcy estate, but the corporate assets are not property of the shareholder debtor's estate. *See Frye v. Excelsior Coll. (In re Frye)*, 2009 Bankr. LEXIS 4556; 2009 WL 7751434 (B.A.P. 9th Cir. 2009) (quoting *In re LaVelle*, 350 B.R. 505, 512 (Bankr. D. Idaho 2005)) ("[I]t is a debtor's partnership interest, not the assets of the partnership, that becomes property of the bankruptcy estate when an individual partner files for bankruptcy."); *In re Hess*, 618 B.R. 13, 17 (Bankr. D. N.M. (2020) (sustaining an objection to exemptions claimed by individual debtor shareholder in corporate assets because the corporation's assets are not property of the debtor's estate).

But even if HPC's trustee could successfully argue that HPC has some equitable interest in the 12 Bridges Properties, that interest cannot vest in HPC's estate because Guardian Fund's estate has a first-in-time superior interest in the 12 Bridges Properties. Since the POA only terminates after all 12 Bridges Properties or their proceeds are transferred to the Debtor, no reversionary or remainder interest remains to possibly vest in HPC's estate.

Lastly, under Nevada law and the Bankruptcy Code, a corporation's equity holders are last in priority and only entitled to a distribution after unsecured creditors are paid in full. *See* NRS 78.288, 78.300, 78.710; 11 U.S.C. § 726(a)(6).[6] In summary, the Debtor's estate, as a creditor of 12 Bridges and beneficiary under the POA, has both a legal and equitable interest in the 12 Bridges Properties that is superior to any shareholder interest HPC holds in 12 Bridges, an insolvent entity.

///

///

---

[6] Under Nevada law, Mr. Burke may also be personally liable for having improperly dissolved 12 Bridges.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

**B. HPC's Trustee, Christopher Burke, Willfully Violated The Automatic Stay By Exerting Control Over Property Of This Estate.**

Mr. Burke has willfully violated the automatic stay by interfering with this Debtor's estate's assets despite his knowledge of the Chapter 11 case. Upon the filing of a bankruptcy case, § 362(a) imposes an automatic stay on all creditor collection activities against the debtor. *See* 11 U.S.C. § 362(a). Section 362(a)(3) further prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

A "willful violation" of 11 U.S.C. § 362 occurs when the defendant knows of the automatic stay and acts intentionally to violate it. *Keith v. United States (In re Keith)*, 974 F.2d 113, 115 (9th Cir. 1992). "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362." *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995) (citations omitted). It is also irrelevant whether the party believed in good faith that it had a right to the property at issue. *Id.* (citing *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of his act. *Id.* (citing *Sansone v. Walsworth*, 99 B.R. 981, 987 (Bankr. C.D. Cal. 1989)).

Functionally, "the automatic stay is a combination of a temporary restraining order and a preliminary injunction." *In re Henry*, 266 B.R. 457 (Bankr. C.D. Cal. 2001). But importantly, the automatic stay differs from a temporary restraining order and a preliminary injunction in six ways: (1) it is automatic upon the filing of a bankruptcy petition and does not require a court order; (2) a debtor need not carry any burden of proof or provide any level of evidence to obtain it; (3) a creditor has no right to be heard, or even to be given notice, before it is imposed; (4) it requires no bond; (5) it is binding on all creditors, whether or not they have notice of it, and lack of notice is chiefly a defense to punitive damages. *Id.*

The Ninth Circuit has addressed the breadth of the automatic stay and applies it seriously, because the automatic stay plays a vital role in bankruptcy. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). The automatic stay is one of the fundamental protections provided by the Bankruptcy Code, and it is meant to give the debtor a breathing spell

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

and to stop "all collection efforts, all harassment and all foreclosure actions." *Id.*

The Ninth Circuit has also explained that courts will not reward those who violate the automatic stay. *Id.* at 572. Importantly, "[t]he Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay." *Id.* If a creditor believes it has cause to continue post-petition collection efforts, then it has the burden of obtaining relief from the automatic stay. *Id.* (citing *In re Williams*, 124 B.R. 311, 317–18 (Bankr. C.D. Cal. 1991)).

The Debtor's legal and equitable interests in the 12 Bridges Properties are property of this estate under 11 U.S.C. § 541 and are therefore protected by the automatic stay under 11 U.S.C. § 362(a). Notwithstanding Mr. Burke's knowledge of this pending Chapter 11 case, he secretly dissolved 12 Bridges without notice or Court approval in an attempt to consolidate the 12 Bridges Properties into HPC's bankruptcy estate. Mr. Burke sought to exercise control over the 12 Bridges Properties which are not property of HPC's estate (although its 100% stock ownership in 12 Bridges is a valueless personal property asset of HPC's estate). To compound the harm to this Debtor's estate, Mr. Burke proceeded to deliver his improper "cease and desist" letter which caused the Debtor's agents to stop working on title and property transactions under the POA. Then, to expand on his previous stay violations, Mr. Burke delivered his alleged Revocation of Power of Attorney without ever seeking or obtaining relief from the automatic stay from this Court. Mr. Burke incorrectly believes he is above the law and vested with some unusual authority that supplants this Court.

Setting aside the impropriety of Mr. Burke's actions without first seeking Court approval: to operate HPC's business,[7] to use HPC's property (12 Bridges) which would provide no benefit

---

[7] *See* 11 U.S.C. 721. Logically, no actions can be "in the ordinary course of business" when the trustee has not obtained authorization to operate the debtor's business.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

to HPC's estate,[8] or to otherwise gain control over non-debtor 12 Bridges,[9] Mr. Burke violated the automatic stay by trying to possess and exercise control over this Chapter 11 estate's property without first seeking relief from stay. To make matters worse, after Debtor's counsel advised Mr. Burke's counsel of the stay violation, he not only refused to rescind his Cease and Desist Letter, but he continued to act in violation of the stay. The "cease and desist" letters caused interruption in the sale or transfer of 12 Bridges Properties under the POA in the ordinary course of business to provide working capital to benefit Guardian Fund's estate and its creditors.

Later, the Debtor's representative was advised through third parties that Mr. Atkinson has contacted the title companies with pending escrows to provide his "consent" for the transactions to close. But Mr. Burke and Mr. Atkinson continue to act in secrecy and have allegedly instructed the title companies to withhold the net sale proceeds from the Debtor. Without Court approval, Mr. Burke has shockingly taken control of assets that are not part of his bankruptcy estate. He is also allegedly authorizing sales of those properties and directing distribution of the proceeds without Court approval.

### C. Because Mr. Burke Willfully Violated The Automatic Stay And Refused To Stop His Violation, The Court May Award The Debtor Damages.

A willful violation of the automatic stay against a non-individual debtor may result in sanctions under the Court's inherent contempt powers. *See Cascade Roads*, 34 F.3d 756, 767 (9th Cir. 1994) (citing *In re Pace*, 169 B.R. 890, 904 (B.A.P. 9th Cir. 1993)) ("Although the court in *Goodman* . . . referred in common parlance to 'contempt' for violation of the automatic stay, what is clearly meant is sanctionable conduct . . . While *Sequoia* questions the power of a bankruptcy court to issue contempt orders, there is no question of a bankruptcy court's power to award

---

[8] The general rule is that trustees are prohibited from administering fully encumbered assets or assets that provide no return to the estate's unsecured creditors because the administrative burden outweighs the benefit. *See In re KVN Corp.*, 514 B.R. 1, 4 (B.A.P. 9th Cir. 2014) (citations omitted).

[9] A bankruptcy trustee acts outside the scope of his authority when he acts without court approval or exercises control over property not of his debtor's estate. Moreover, a bankruptcy trustee may not try to take possession of property, even if he/she believes a preference or fraudulent transfer may have occurred, without an order directing him to do so. *Leonard v. Vrooman*, 383 F.2d 556, 561(9th Cir. 1967)

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

sanctions.'").

A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, a 'willful violation' is shown when a creditor knew of the automatic stay and the creditors' actions which violated the stay were intentional. *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). "Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Id.*

Here, it is undisputed that Mr. Burke and his counsel knew of the automatic stay. They were aware of this pending Chapter 11 case, and they are both experienced bankruptcy attorneys and trustees. Their actions were also intentional and not involuntary acts taken under duress or incapacity. And it does not matter whether Mr. Burke and Mr. Atkinson may have legal theories about Guardian Fund's entitlement to the 12 Bridges Properties from 12 Bridges, a non-debtor. Any questions about the applicability of the automatic stay should have been brought to this Court first. Mr. Burke and his counsel are not vested with authority to extra judicially adjudicate relief from the automatic stay or to determine whether property is property of the estate.

Mr. Burke's intense focus on 12 Bridges is also curious because it is an insolvent entity that will never return value to HPC's creditors. Mr. Burke's tactics thus far in desperately trying to control assets outside HPC's estate are not only harming this Chapter 11 estate, but also harming HPC's estate by needlessly compounding administrative expenses.[10]

In any event, because the Debtor and the Committee are seeking a hearing on this Motion on an emergency basis, the Debtor and the Committee agree to table the issue of sanctions and damages for now. But the Debtor and the Committee reserve the right in the future to seek sanctions for Mr. Burke's conduct, including compensatory and punitive damages, if appropriate and legally warranted.

**D. Any actions taken by Mr. Burke in violation of the automatic stay are void *ab initio*.**

The final issue is that any detrimental actions taken by Mr. Burke against the Debtor's

---

[10] Mr. Burke's actions make no sense. Why would he, as a fiduciary of HPC's estate, attempt to interfere with the administration of the Debtor's estate? The only plausible inference is that Mr. Burke is motivated by self-interest and perhaps what he perceives as the value of the 12 Bridges Properties.

property are void *ab initio*. That said, the Debtor is unaware of the extent of Mr. Burke's actions because he and his counsel have acted in secrecy.

The Ninth Circuit has stated that acts done in violation of the automatic stay are void, rather than voidable, because merely voidable acts "would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time." *Schwartz*, 954 F.2d at 569.

To date, the Debtor and the Committee are aware that Mr. Burke dissolved 12 Bridges in violation of the automatic stay; he likewise delivered his "cease and desist" letters to various parties in violation of the stay; he delivered an alleged Revocation of Power of Attorney in violation of the stay; and he has interfered with title and sale transactions related to the 12 Bridges Properties. Accordingly, the Debtor and the Committee request an order from this Court finding Mr. Burke's actions stated above, along with other possible unknown detrimental acts which have yet to be discovered, are void *ab initio*. It is imperative that the status quo be maintained to the extent possible as of the time before Mr. Burke improperly attempted to exercise control over this Debtor's estate's assets.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

14

## CONCLUSION

In conclusion, the Debtor and Committee request that the Court enter an order: (1) determining that the 12 Bridges Properties are subject to Guardian Fund's estate's automatic stay under 11 U.S.C. § 362(a); (2) determining that that Mr. Burke willfully violated the automatic stay; (3) scheduling a future hearing and briefing schedule to determine compensatory and punitive damages in favor of the Debtor under the Court's contempt powers; (4) or alternatively, if the Court requires an evidentiary hearing or additional briefing before determining whether Mr. Burke violated the automatic stay, that the Court temporarily modify the automatic stay pursuant to its equitable powers under 11 U.S.C. § 105 so that any acts by Mr. Burke against the 12 Bridges Properties are stayed until further order of this Court; and (5) granting any other relief as is just and proper.

Respectfully submitted June 16, 2023.

HARRIS LAW PRACTICE LLC

*/s/ Norma Guariglia*

NORMA GUARIGLIA, ESQ.
Proposed Attorneys for Debtor

McDONALD CARANO LLP

*/s/ Sallie B. Armstrong*
Sallie B. Armstrong, Esq. (NSBN 1243)
McDONALD CARANO LLP
100 W. Liberty Street, 10th Floor
Reno, NV 89501
Telephone: (775) 788-2000
sarmstrong@mcdonaldcarano.com

# EXHIBIT A

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

## POWER OF ATTORNEY

**THIS Power of Attorney** is given by, 12 Bridges, LLC (the "Principal"), presently of 5440 Louie Lane, Suite 106, Reno, in the State of Nevada, on this 11th day of April, 2023. The managing members of 12 Bridges, LLC, Steve Sixberry and Greg Hughes will be signing this power of attorney on behalf of the Principal

## Previous Power of Attorney

1. **I REVOKE** any previous power of attorney granted by the Principal.

## Attorney-in-fact

2. **I APPOINT** El Monte Capital, Inc, of 3180 Vista Lucci, Reno, Nevada, to act as Principal's Attorney-in-fact.

## Governing Law

3. This document will be governed by the laws of the State of Nevada. Further, Principal's Attorney-in-fact is directed to act in accordance with the laws of the State of Nevada at any time he or she may be acting on Principal's behalf.

## Liability of Attorney-in-fact

4. Principal's Attorney-in-fact will not be liable to Principal, successors or assigns for any action taken or not taken under this document, except for willful misconduct or gross negligence.

## Effective Date

5. This Power of Attorney will start immediately and will cease once all properties identified in Addendum A, are transferred to the Guardian Fund, LLC or sold and the proceeds are transferred to the Guardian Fund, LLC.

## Powers of Attorney-in-fact

6. Principal's Attorney-in-fact will have
the following power(s): <u>Initials</u>

### X____Real Estate Transactions

a. Sign all documents on Principal's behalf for the properties listed on Addendum A. These powers include, but are not limited to, the ability to:

    i. Purchase, sell, exchange, accept as gift, place as security on loans, convey with or without covenants, rent, collect rent, sue for and receive rents, eject and remove tenants or other persons, to pay or contest taxes or assessments, control any legal claim in favor of or against me, partition or consent to partitioning, mortgage, charge, lease, surrender, manage or otherwise deal with real estate and any interest therein; and

ii.    Execute and deliver deeds, transfers, mortgages, charges, leases, assignments, surrenders, releases and other instruments required for any such purpose.

### X____Banking Transactions

b.    Principal grants the Attorney-in-fact with bank transactional authority for the Umpqua Bank account number▮▮▮▮▮5054. This power includes, but is not limited to, the power to:

i.    Transferring monies from the sale of any property listed on Addendum A to Guardian Fund accounts;

ii.    Paying vendors from the proceeds from the sale of properties listed on Addendum A;

iii.    Create and deliver any financial statements necessary to or from any bank or financial institution.

### X____Manage Real Estate

c.    To manage the property listed in Addendum A. Power includes, but is not limited to, the power to receive rents, make repairs, pay expenses including the insuring of the property and generally to deal with Principal's property as effectually as I myself could do; to take all lawful proceedings by way of action or otherwise, for recovery of rent in arrears, or for eviction of tenants; and to commence, carry on and defend all actions, suits and other proceedings touching Principal's property or any part of it.

## Co-owning of Assets and Mixing of Funds

7.    Principal's Attorney-in-fact may not mix any funds owned by him or her in with my funds and all assets should remain separately owned if at all possible.

## Personal Gain from Managing My Affairs

8.    Principal's Attorney-in-fact is not allowed to personally gain from any transaction he or she may complete on Principal's behalf.

## Delegation of Authority

9.    Principal's Attorney-in-fact may delegate any authority granted under this document to a Aaron M. Noe, El Monte Capital, Inc, President and Director.

## Attorney-in-fact Restrictions

10.    This Power of Attorney is not subject to any conditions or restrictions other than those noted above.

## Notice to Third Parties

11.    Any third party who receives a valid copy of this Power of Attorney can rely on and act under it. A third party who relies on the reasonable representations of my Attorney-in-

fact as to a matter relating to a power granted by this Power of Attorney will not incur any liability to the Principal or to the Principal's heirs, assigns, or estate as a result of permitting the Attorney-in-fact to exercise the authority granted by this Power of Attorney up to the point of revocation of this Power of Attorney. Revocation of this Power of Attorney will not be effective as to a third party until the third party receives notice and has actual knowledge of the revocation.

## Severability

12.     If any part of any provision of this document is ruled invalid or unenforceable under applicable law, such part will be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provisions or the remaining provisions of this document.

## Acknowledgment

13.     I, **12 Bridges, LLC**, being the Principal named in this Power of Attorney hereby acknowledge:

   a.     I have read and understand the nature and effect of this Power of Attorney;

   b.     I am of legal age in the State of Nevada to grant a Power of Attorney; and

   c.     I am voluntarily giving this Power of Attorney.

**IN WITNESS WHEREOF** I hereunto set my hand and seal at the City of Reno in the State of Nevada, this 11th day of April, 2023.

**SIGNED, SEALED, AND DELIVERED**

in the presence of:

Witness: _____

Witness Name: Alexis Spencer

Address: 3350 Bryan St

Reno, NV 89503

Witness: _____

Witness Name: Isabella Gargano

Address: 2815 Scottsdale RD

Reno, NV 89512

Greg Hughes

12 Bridges, LLC (Principal)

Steve Sixberry

12 Bridges, LLC (Principal)

Power of Attorney                                                                                                    Page 4 of 9

## NOTARY ACKNOWLEDGMENT

STATE OF NEVADA

COUNTY OF WASHOE

On this 11th day of April, 2023, 12 Bridges, LLC personally appeared before me, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that they executed it. I declare under penalty of perjury that 12 Bridges, LLC appears to be of sound mind and under no duress, fraud, or undue influence.

Notary Public

My commission expires: 7/21/2024

> HEATHER HULL
> Notary Public - State of Nevada
> Appointment Recorded in Washoe County
> No: 08-7695-2 - Expires July 21, 2024

Addendum A

| Building Address | City | State | PP | HC Value | 95% of HC Value |
|---|---|---|---|---|---|
| 4556 Carter Ave | Saint Louis | Missouri | $42,000 | $43,888 | $41,694 |
| 9101 Lackland Rd OFFICE | Saint Louis | Missouri | $195,000 | $195,000 | $185,250 |
| 3508 Kings Park Dr N | Macon | Georgia | $57,132 | $60,677 | $57,643 |
| 1537 W Franklin St | Elkhart | Indiana | $57,132 | $109,222 | $103,761 |
| 815 W Franklin St | Elkhart | Indiana | $57,132 | $75,070 | $71,317 |
| 2063 E Outer Dr | Detroit | Michigan | $57,132 | $66,401 | $63,081 |
| 9901 Chatham | Redford | Michigan | $57,132 | $79,631 | $75,649 |
| 936 Vance St | Roanoke Rapids | North Carolina | $57,132 | $62,796 | $59,656 |
| 255 Cross St | Akron | Ohio | $30,000 | $38,093 | $36,188 |
| 7608 Lawnview Ave | Cleveland | Ohio | $32,000 | $41,055 | $39,002 |
| 1034 Booth Ave | Toledo | Ohio | $44,000 | $47,435 | $45,063 |
| 128 Honeysuckle Ln | Gardendale | Alabama | $85,000 | $93,160 | $88,502 |
| 1761 48Th Street Ensley | Birmingham | Alabama | $34,270 | $47,778 | $45,389 |
| 2116 Etowah St | Birmingham | Alabama | $89,900 | $103,412 | $98,241 |
| 2309 Wharton Ave | Fultondale | Alabama | $130,000 | $133,567 | $126,889 |
| 3005 Avenue J | Birmingham | Alabama | $490,000 | $438,850 | $416,908 |
| 3633 Oak Ave Sw | Birmingham | Alabama | $28,500 | $54,014 | $51,313 |
| 3652 Cherry Ave | Birmingham | Alabama | $30,000 | $114,242 | $108,530 |
| 4155 Seabrook Ln | Vestavia Hills | Alabama | $264,000 | $267,717 | $254,331 |
| 606 Rosebud Street | Gadsden | Alabama | $38,000 | $71,000 | $67,450 |
| 621 Pine Hill Rd | Tarrant | Alabama | $45,000 | $49,242 | $46,780 |
| 836 Woodward Rd | Birmingham | Alabama | $60,000 | $71,658 | $68,075 |
| 1509 Potomac Dr | Belleville | Illinois | $125,000 | $135,839 | $129,047 |
| 18 S 88Th St | Belleville | Illinois | $65,000 | $72,816 | $69,175 |
| 19 Englewood Dr | Swansea | Illinois | $175,000 | $88,423 | $84,002 |
| 200 W Elm St | Alton | Illinois | $55,000 | $113,492 | $107,817 |
| 2031 Illinois Ave | Granite City | Illinois | $46,000 | $51,418 | $48,847 |
| 214 Gilbert St | Swansea | Illinois | $58,000 | $72,745 | $69,108 |
| 2151 Lee Ave | Granite City | Illinois | $14,500 | $42,493 | $40,368 |
| 2215 E 25th St | Granite City | Illinois | $36,000 | $59,570 | $56,592 |
| 2429 Delmar Ave | Granite City | Illinois | $100,000 | $108,478 | $103,054 |
| 2604 E 27Th St | Granite City | Illinois | $43,000 | $67,561 | $64,183 |
| 2608 Iowa St | Granite City | Illinois | $41,500 | $69,467 | $65,994 |
| 2817 Birch Ave | Granite City | Illinois | $48,000 | $84,267 | $80,054 |
| 2818 Victory Dr | Granite City | Illinois | $60,000 | $80,083 | $76,079 |
| 2826 Viewland St | Alton | Illinois | $27,000 | $40,539 | $38,512 |
| 2938 Myrtle Ave | Granite City | Illinois | $33,000 | $79,588 | $75,609 |
| 310 Kingshighway | East Alton | Illinois | $28,000 | $76,414 | $72,593 |
| 3332 Oakland Ave | Alton | Illinois | $95,000 | $52,502 | $49,877 |
| 3512 Coronado Dr | Alton | Illinois | $36,000 | $80,958 | $76,910 |
| 429 Washington Ave | East Alton | Illinois | $52,000 | $94,220 | $89,509 |
| 635 N 39Th St | Belleville | Illinois | $90,000 | $113,855 | $108,162 |
| 635 Spring St | Alton | Illinois | $49,500 | $43,813 | $41,622 |
| 638 N 39th St | Belleville | Illinois | $95,000 | $72,711 | $69,075 |
| 824 S Church St | Belleville | Illinois | $83,000 | $89,959 | $85,461 |
| 524 Vistula St | Elkhart | Indiana | $57,132 | $88,600 | $84,170 |
| 129 Archer Ave | Jackson | Mississippi | $15,000 | $27,217 | $25,856 |
| 10034 Baron Dr | Saint Louis | Missouri | $45,000 | $42,582 | $40,453 |
| 10071 Bon Oak Dr | Saint Louis | Missouri | $40,000 | $43,192 | $41,032 |
| 10235 Lord Dr | Saint Louis | Missouri | $21,000 | $31,992 | $30,392 |
| 10532 Count Dr | Saint Louis | Missouri | $68,000 | $78,713 | $74,777 |
| 10640 Spring Garden Dr | Saint Louis | Missouri | $55,000 | $61,348 | $58,281 |
| 110 W Courtois St | Saint Louis | Missouri | $110,000 | $123,591 | $117,411 |

| Address | City | State | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|
| 1286 Oak Ct | St Louis | Missouri | $101,000 | $116,050 | $110,248 |
| 1451 N Elizabeth Ave | Saint Louis | Missouri | $99,500 | $115,589 | $109,810 |
| 1913 Mclaran Ave | Saint Louis | Missouri | $42,000 | $60,333 | $57,316 |
| 2001 Key West Dr | Arnold | Missouri | $233,000 | $238,009 | $226,109 |
| 206 Elbring Dr | Saint Louis | Missouri | $48,000 | $69,835 | $66,343 |
| 209 W Steins St | Saint Louis | Missouri | $287,000 | $330,801 | $314,261 |
| 210 Flora Dr | Saint Louis | Missouri | $45,000 | $56,897 | $54,052 |
| 215 Meadowcrest Dr | Saint Louis | Missouri | $105,000 | $105,009 | $99,759 |
| 2648 California Ave | Saint Louis | Missouri | $127,000 | $206,803 | $196,463 |
| 2710 Ann Ave | Saint Louis | Missouri | $219,000 | $229,513 | $218,037 |
| 2820 Lemay Ferry Rd | Saint Louis | Missouri | $300,000 | $300,000 | $285,000 |
| 303 Saint Louis Ave | Ferguson | Missouri | $45,000 | $70,171 | $66,662 |
| 3104 N Hanley Rd | Saint Louis | Missouri | $70,000 | $73,600 | $69,920 |
| 3122 California Ave | Saint Louis | Missouri | $217,000 | $222,903 | $211,758 |
| 3130 Michigan Ave | Saint Louis | Missouri | $190,000 | $203,852 | $193,659 |
| 3149 Potomac Avenue | Saint Louis | Missouri | $161,000 | $161,000 | $152,950 |
| 3214 Natural Bridge Ave | Saint Louis | Missouri | $135,000 | $122,458 | $116,335 |
| 3253-3255 Nebraska Ave | St Louis | Missouri | $225,000 | $273,754 | $260,066 |
| 3418 Nebraska Ave | Saint Louis | Missouri | $160,000 | $171,850 | $163,258 |
| 3436 Mckean Ave | Saint Louis | Missouri | $262,000 | $291,903 | $277,308 |
| 3517 Pennsylvania Ave | Saint Louis | Missouri | $165,000 | $172,810 | $164,170 |
| 3626 Nebraska Ave | Saint Louis | Missouri | $217,000 | $198,887 | $188,943 |
| 3657 Liermann Ave | Saint Louis | Missouri | $93,000 | $109,036 | $103,584 |
| 3726 S Compton Ave | St Louis | Missouri | $171,000 | $192,399 | $182,779 |
| 3733 Pennsylvania Ave | Saint Louis | Missouri | $112,000 | $120,267 | $114,254 |
| 3802 Avondale Ave | Saint Louis | Missouri | $92,000 | $116,669 | $110,836 |
| 3829 Minnesota Ave | St Louis | Missouri | $235,000 | $123,236 | $117,074 |
| 3841 Virginia Ave | Saint Louis | Missouri | $85,000 | $103,167 | $98,009 |
| 3903 Iowa Ave | Saint Louis | Missouri | $178,000 | $191,590 | $182,011 |
| 3937 Illinois Ave | Saint Louis | Missouri | $108,000 | $112,246 | $106,634 |
| 3945 Michigan Ave | Saint Louis | Missouri | $105,000 | $124,737 | $118,500 |
| 4063 Wyoming St | Saint Louis | Missouri | $200,000 | $248,823 | $236,382 |
| 4134 Oregon Ave | Saint Louis | Missouri | $80,000 | $95,678 | $90,894 |
| 4142 Iowa Ave | Saint Louis | Missouri | $165,000 | $160,008 | $152,008 |
| 4169 Mcpherson Ave | Saint Louis | Missouri | $215,000 | $258,335 | $245,418 |
| 4201 Enright Ave | St Louis | Missouri | $75,000 | $127,165 | $120,807 |
| 4203 Enright Ave | Saint Louis | Missouri | $195,000 | $245,728 | $233,442 |
| 4265 Ellenwood Ave | St Louis | Missouri | $120,000 | $128,515 | $122,089 |
| 4318 N Euclid Ave | Saint Louis | Missouri | $129,000 | $112,047 | $106,445 |
| 4350 Ellenwood Ave | St Louis | Missouri | $126,500 | $127,163 | $120,805 |
| 4415 Minnesota Ave | Saint Louis | Missouri | $45,000 | $102,727 | $97,591 |
| 4438 Norfolk Ave | Saint Louis | Missouri | $170,000 | $189,015 | $179,564 |
| 4447 Nebraska Ave | St Louis | Missouri | $80,000 | $105,436 | $100,164 |
| 4530 Newport Ave | Saint Louis | Missouri | $51,000 | $65,998 | $62,698 |
| 4547 Bessie Ave | Saint Louis | Missouri | $75,000 | $69,704 | $66,219 |
| 4547 Clarence Ave | Saint Louis | Missouri | $60,000 | $52,348 | $49,731 |
| 5007 Durant Ave | Saint Louis | Missouri | $59,500 | $60,082 | $57,078 |
| 5055 Alabama Ave | Saint Louis | Missouri | $145,000 | $155,956 | $148,158 |
| 5143 Northland Ave | St Louis | Missouri | $57,000 | $77,360 | $73,492 |
| 5227 Wells Ave | Saint Louis | Missouri | $147,000 | $114,786 | $109,047 |
| 537 Hurck St | Saint Louis | Missouri | $67,250 | $80,760 | $76,722 |
| 5415 Helen Ave | Saint Louis | Missouri | $25,000 | $31,065 | $29,512 |
| 5458 Arlington Ave | Saint Louis | Missouri | $19,000 | $35,717 | $33,931 |
| 5505 Wilborn Dr | Saint Louis | Missouri | $41,000 | $52,537 | $49,910 |
| 5506 Grace Ave | Saint Louis | Missouri | $120,000 | $128,153 | $121,745 |
| 5537 Helen Ave | Saint Louis | Missouri | $105,000 | $118,381 | $112,462 |
| 5712 Saloma Ave | St. Louis | Missouri | $15,000 | $41,295 | $39,230 |
| 581 Scranton Ave | Saint Louis | Missouri | $72,500 | $41,374 | $39,305 |
| 6029 W Cabanne Pl | Saint Louis | Missouri | $290,000 | $299,231 | $284,269 |

Power of Attorney

| Address | City | State | | | |
|---|---|---|---:|---:|---:|
| 6081 West Florissant Ave | Saint Louis | Missouri | $45,000 | $72,691 | $69,056 |
| 610 Fremont Street Front | St Louis | Missouri | $23,000 | $23,000 | $21,850 |
| 635 Castlewood Dr | Ballwin | Missouri | $210,000 | $133,962 | $127,264 |
| 6620 Idaho Ave | Saint Louis | Missouri | $95,000 | $100,366 | $95,348 |
| 6708 Pennsylvania Ave | Saint Louis | Missouri | $94,000 | $85,297 | $81,032 |
| 6724 Idaho Ave | Saint Louis | Missouri | $92,000 | $102,995 | $97,845 |
| 7818 Pennsylvania Ave | Saint Louis | Missouri | $44,000 | $52,994 | $50,344 |
| 8135 Rector Drive | St. Louis | Missouri | $110,000 | $113,767 | $108,079 |
| 8409 Pennsylvania Ave | Saint Louis | Missouri | $65,000 | $44,423 | $42,202 |
| 10814 Garfield Avenue | Cleveland | Ohio | $62,000 | $63,987 | $60,788 |
| 11305 Matilda Ave | Cleveland | Ohio | $69,000 | $60,002 | $57,002 |
| 12008 Soika Ave | Cleveland | Ohio | $26,500 | $68,513 | $65,087 |
| 1254 Carlyon Rd | East Cleveland | Ohio | $51,000 | $53,502 | $50,827 |
| 13201 Glendale Ave | Cleveland | Ohio | $95,000 | $48,899 | $46,454 |
| 13612 Durkee Avenue | Cleveland | Ohio | $75,000 | $80,892 | $76,847 |
| 1369 Brookline Rd | South Euclid | Ohio | $111,000 | $127,408 | $121,038 |
| 13810 Glendale Ave | Cleveland | Ohio | $72,000 | $73,864 | $70,171 |
| 15901 Rockside Rd | Maple Heights | Ohio | $82,012 | $113,080 | $107,426 |
| 16100 Saranac Rd | Cleveland | Ohio | $48,000 | $48,810 | $46,370 |
| 16101 Arcade Ave | Cleveland | Ohio | $195,000 | $100,774 | $95,735 |
| 1886 Haldane Rd | Cleveland | Ohio | $45,000 | $44,466 | $42,243 |
| 2314 E 95Th St | Cleveland | Ohio | $156,500 | $105,696 | $100,411 |
| 3275 E 134Th St | Cleveland | Ohio | $28,129 | $78,916 | $74,970 |
| 3286-3288 W 141st Street | Cleveland | Ohio | $191,000 | $193,419 | $183,748 |
| 3321 E 119Th St | Cleveland | Ohio | $124,000 | $126,228 | $119,917 |
| 3374 E 135Th St | Cleveland | Ohio | $65,000 | $69,963 | $66,465 |
| 3424 E 145Th St | Cleveland | Ohio | $75,000 | $77,432 | $73,560 |
| 3435 E 117Th St | Cleveland | Ohio | $28,000 | $43,123 | $40,967 |
| 3545 E 117th Street | Cleveland | Ohio | $80,000 | $81,258 | $77,195 |
| 4126 E 142Nd St | Cleveland | Ohio | $29,500 | $54,811 | $52,070 |
| 4160 E 99Th St | Cleveland | Ohio | $63,500 | $44,251 | $42,038 |
| 4223 Poe Avenue | Cleveland | Ohio | $86,702 | $115,000 | $109,250 |
| 438 E 152Nd St | Cleveland | Ohio | $65,000 | $55,723 | $52,937 |
| 475 E 108Th St | Cleveland | Ohio | $53,500 | $58,639 | $55,707 |
| 4929 Donovan Dr | Garfield Heights | Ohio | $70,588 | $108,600 | $103,170 |
| 5797 Turney Rd | Garfield Heights | Ohio | $77,854 | $103,326 | $98,160 |
| 7115 Park Ave | Cleveland | Ohio | $75,000 | $77,519 | $73,643 |
| 765 Lakeview Rd | East Cleveland | Ohio | $46,000 | $52,140 | $49,533 |
| 930 E 131St St | Cleveland | Ohio | $62,000 | $65,244 | $61,982 |
| 9611 Fuller Ave | Cleveland | Ohio | $85,000 | $109,166 | $103,708 |
| 9800 Parmelee Ave | South Euclid | Ohio | $85,000 | $74,395 | $70,675 |
| 1022 Salem St | Toledo | Ohio | $74,000 | $78,281 | $74,367 |
| 1024 Earl St | Toledo | Ohio | $23,000 | $27,443 | $26,071 |
| 1048 Campbell St | Toledo | Ohio | $83,000 | $90,997 | $86,447 |
| 1215 Greenwood Ave | Toledo | Ohio | $24,000 | $31,542 | $29,965 |
| 124 Dexter Street | Toledo | Ohio | $70,000 | $49,956 | $47,458 |
| 128 E Plumer St | Toledo | Ohio | $21,000 | $29,827 | $28,336 |
| 1303 Saint John Ave | Toledo | Ohio | $68,000 | $77,436 | $73,564 |
| 1353 Oak Street | Toledo | Ohio | $41,000 | $44,587 | $42,358 |
| 149 Oswald St | Toledo | Ohio | $34,000 | $43,215 | $41,054 |
| 1711 Macomber St | Toledo | Ohio | $48,000 | $56,391 | $53,571 |
| 202 Hathaway St | Toledo | Ohio | $52,000 | $58,158 | $55,250 |
| 2024 Elliott Avenue | Toledo | Ohio | $20,000 | $34,095 | $32,390 |
| 244 Hanover St | Toledo | Ohio | $31,000 | $47,148 | $44,791 |
| 3223 Maple St | Toledo | Ohio | $50,000 | $55,635 | $52,853 |
| 3923 Burnham Avenue | Toledo | Ohio | $38,000 | $29,678 | $28,194 |
| 522 Oswald Street | Toledo | Ohio | $34,000 | $29,299 | $27,834 |
| 537 Dexter St | Toledo | Ohio | $30,000 | $35,953 | $34,155 |

Power of Attorney

| | | | | | |
|---|---|---|---|---|---|
| 557 South Ave | Toledo | Ohio | $35,000 | $39,115 | $37,159 |
| 566 Howland Ave | Toledo | Ohio | $38,000 | $53,455 | $50,782 |
| 606 Nevada Street | Toledo | Ohio | $55,000 | $62,081 | $58,977 |
| 631 Clark St | Toledo | Ohio | $45,000 | $51,763 | $49,175 |
| 670 Lorain Street | Toledo | Ohio | $19,000 | $17,041 | $16,189 |
| 714 Berry St | Toledo | Ohio | $20,000 | $25,350 | $24,083 |
| 819 Blum St | Toledo | Ohio | $17,500 | $24,296 | $23,081 |
| 903 Heston Street | Toledo | Ohio | $24,000 | $19,802 | $18,812 |
| 2661-2663 E Aurora Rd | Twinsburg | Ohio | $200,000 | $217,640 | $206,758 |
| 4263 Hickory Ln | Warrensville Heights | Ohio | $146,366 | $99,183 | $94,224 |
| 529 E 288Th St | Willowick | Ohio | $150,000 | $152,050 | $144,448 |
| | | Total | $16,176,995 | $17,753,073 | $16,865,420 |