LAW OFFICES OF AMY N. TIRRE, APC      E-Filed:  June 22, 2023
AMY N. TIRRE, ESQ.  #6523
3715 Lakeside Drive, Suite A
Reno, NV 89509
Telephone: (775) 828-0909
Facsimile: (775) 828-0914
E-mail:  amy@amytirrelaw.com

ROBERTSON, JOHNSON, MILLER & WILLIAMSON
50 West Liberty Street, Suite 600
Reno, NV  89501
Telephone: (775) 329-5600
Facsimile: (775) 348-8300
Email:  Rich@NVLawyers.com

*Counsel for Andronico Family Partnership, L.P.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>GUARDIAN FUND, LLC,<br><br>Debtor. | Case No.: BK-23-50177-nmc<br>Case No.: BK-23-50233-nmc<br>**Consolidated Under Case No.: BK-23-50177-nmc (Chapter 11)**<br><br>**STIPULATION BETWEEN ANDRONICO FAMILY PARTNERSHIP, L.P. AND DEBTOR GUARDIAN FUND, LLC REGARDING INAPPLICABILITY OF AUTOMATIC STAY UNDER 11 U.S.C. §362(a) TO 12 RESIDENTIAL REAL PROPERTIES**<br><br>Hearing Date:  Notice per LR 4001(c)(2)<br>Hearing Time:<br>Est. Time: |

Andronico Family Partnership, L.P., a California limited partnership ("Andronico"), by and

through undersigned counsel, and Debtor Guardian Fund, LLC, ("Debtor"), by and through

undersigned counsel, hereby stipulate and agree that the automatic stay pursuant to 11 U.S.C.

§362(a) does not apply and is not in effect as to the twelve (12) residential real properties that

Andronico purchased from Debtor as identified in **Exhibit 1** hereto and Andronico may proceed

with exercising its rights as the record title holder and owner of these residential real properties,

including, but not limited to, listing and selling them to third parties.

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

**Jurisdiction and Legal Authority**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought is 11 U.S.C. §362(d), §365(c)(3) and §541(b)(2) and Fed. R. Bank. P. 4001(d).

**Recitals**

A.      On March 17, 2023, certain petitioning creditors ("Petitioning Creditors") filed a Chapter 7 Involuntary Petition Against a Non-Individual as Case No. 23-50177-nmc (the "Involuntary Case") against the Debtor. See ECF No. 1, Case No. 23-50177-nmc.

B.      On April 11, 2023, Debtor filed a Chapter 11 Voluntary Petition for Non-Individuals Filing for Bankruptcy, initiating Case No. 23-50233-nmc (the "Voluntary Chapter 11 Case"). See ECF No. 1, Case No. 23-50233-nmc. Pursuant to 11 U.S.C. § 301(b), the commencement of Debtor's Voluntary Chapter 11 Case constitutes an order for relief under Chapter 11 of the Bankruptcy Code. See 11 U.S.C. § 301(b).

C.      On April 17, 2023, the Debtor filed a Stipulation Between Debtor and Petitioning Creditors to Consolidate Involuntary and Voluntary Cases Pursuant to Fed. R. Bankr. P. 1015(a) ("Stipulation") in both the Involuntary Case and the Voluntary Chapter 11 Case. See ECF No. 17, Case No. 23-50233-nmc; ECF No. 12, Case No. 23-50177-nmc.

D.      On April 27, 2023, the Court entered its Order Approving Stipulation Between Debtor and Petitioning Creditors to Consolidate Involuntary and Voluntary Cases Pursuant to Fed. R. Bankr. P. JOI 5(a) and Fixing Petition Date and Commencement Date [ECF No. 15, Case No. 23-50177-nmc; ECF No. 28, Case No. 23-50233-nmc] ("Consolidation Order"). The Consolidation Order consolidated the Involuntary Case together with the Voluntary Chapter 11 Case under the first-filed case, 23-50177-nmc, and fixed the Chapter 11 petition date, as defined under 11 U.S.C. § 101(42), to March 17, 2023 ("Petition Date").

E.      No trustee has been appointed in this case and Debtor acts as Debtor-in-Possession; however, the Office of the United States Trustee has filed a Motion Under 11 U.S.C. 1104(a) to Appoint a Chapter 11 Trustee or, in the Alternative, an Examiner on June 13, 2023 [ECF No. 107].

F.      On May 10, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors [ECF No. 54]. Paul Andronico who serves as the Trustee of the General Partners of Andronico Family Partnership, L.P. was appointed to the Committee.

G.      Debtor's business consists of buying, selling, and managing rental properties primarily in Ohio, Missouri, and Alabama. As of the Petition Date, the Debtor owned, directly or through wholly owned subsidiaries, approximately 300 real properties and managed approximately 1,500 additional properties under certain lease agreements. See Schedules [ECF Nos. 21 and 33] and Statement of Financial Affairs [ECF Nos. 22 and 63].

H.      On December 6, 2021, Andronico as purchaser and Debtor as seller entered into a Purchase and Sale Agreement (hereinafter the "Initial Purchase Agreement"), pursuant to which Andronico agreed to purchase seven (7) residential real properties in Missouri and five (5) residential real properties in Alabama for a total of twelve (12) residential real properties (collectively hereinafter the "12 Residential Real Properties") from Debtor for the purchase price of $1,643,670.00 ("Initial Purchase Agreement"); a copy of the Purchase Agreement is attached hereto as **Exhibit 2**. The 12 Residential Real Properties with purchase prices are identified as follows:

| | Address | APN | Purchase Price |
|---|---|---|---|
| 1. | 5129 Arrow Avenue<br>Anniston, Alabama 36206 | 18-04-19-1-014-003.000 | $174,781 |
| 2. | 7209 3rd Avenue N<br>Birmingham, Alabama 35206 | 23-00-15-2-014-005.000 | $190,790 |
| 3. | 1705 Exeter Avenue<br>Bessemer, Alabama 35020 | 38-00-10-3-008-009.000 | $164,885 |
| 4. | 417 Lapsley Avenue<br>Anniston, Alabama 36207 | 21-03-08-3-001-042.000 | $183,587 |
| 5. | 2406 Avenue J<br>Birmingham, Alabama 35218 | 29-00-06-2-014-009.000 | $107,199 |
| 6. | 9721 Midland Blvd.<br>Overland, Missouri 63114 | 14L-24-0185 | $88,557 |
| 7. | 2811 Brazeau Avenue<br>Brentwood, Missouri 63144 | 21K-23-0172 | $227,475 |

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

| | | | |
|---|---|---|---|
| 8. | 6621 Camberlain Avenue<br>St. Louis, Missouri 63130 | 17H-11-0790 | $126,189 |
| 9. | 6108 Alaska Avenue<br>St. Louis, Missouri 63111 | 2931-00-0140-0 | $111,784 |
| 10. | 1467 Columbia Hills Court<br>St. Louis, Missouri 63138 | 08E-63-0798 | $126,738 |
| 11. | 8109 Cler Avenue<br>St. Louis, Missouri 63114 | 14J-11-0091 | $57,600 |
| 12. | 5635 College Avenue<br>St. Louis, Missouri 63136 | 14G-53-1175 | $84,085 |

I.       Concurrently with the execution of the Initial Purchase Agreement, Andronico and Guardian also entered into a Side Letter of Guardian Fund Secured Investment Agreement (hereinafter "Side Letter") that, among other things, modified the Purchase Agreement to include Debtor's agreement to repurchase the 12 Residential Real Properties from Andronico at the same price paid by Andronico for a period of 24 months ("the Repurchase Obligation"); a copy of the Side Letter is attached hereto as **Exhibit 3**.  The Initial Purchase Agreement and the Side Letter are hereinafter collectively referred to as the "Purchase Agreement."

J.       On December 6, 2021, Andronico as Lessor and Debtor as Lessee also entered into a Lease Agreement requiring Debtor to pay a fixed amount of rent each month as well as maintain and repair the 12 Residential Real Properties and undertake other actions with respect to the 12 Residential Real Properties ("the Lease"); a copy of the Lease Agreement is attached hereto as **Exhibit 4**.

K.       On January 19, 2022, Andronico paid the purchase price in the amount of $1,643,670 to acquire the 12 Residential Real Properties.

L.       By email dated December 2, 2022, Andronico exercised its right to require Debtor to perform under its contractual Repurchase Obligation and repurchase the 12 Residential Real Properties for the same purchase price paid by Andronico; a copy of Andronico's December 2, 2022

LAW OFFICES OF AMY N. TIRRE<br>3715 Lakeside Drive, Suite A<br>Reno, NV 89509<br>(775) 828-0909 Telephone<br>(775) 828-0914 Facsimile<br>E-mail: amy@amytirrelaw.com

email to Debtor is attached hereto as **Exhibit 5**.

M.     On December 2, 2022, Debtor, in an email, acknowledged receipt of Andronico's exercise of its repurchase rights and also confirmed Debtor would begin processing the repurchase paperwork on December 5, 2022; a copy of Debtor's December 2, 2022 email to Andronico is attached hereto as **Exhibit 6.**

N.     On December 7, 2022, Debtor notified Andronico and other parties via email that it was closing the Guardian Fund to new investors and redemptions; a copy of Debtor's December 7, 2022 email is attached hereto as **Exhibit 7**.

O.      On January 31, 2023, Andronico sent its written Notice of Termination of Lease Agreement pursuant to Section 1(B) of the Lease giving 30 days' notice of the termination of the Lease with respect to all 12 Residential Real Properties; a copy of the written Notice of Termination of Lease Agreement is attached hereto as **Exhibit 8.**

P.     On March 7, 2023, Hughes Private Capital, LLC ("HPC"), Debtor's then-Manager, sent a letter to Andronico confirming the "Termination of Lease Agreement" and informing Andronico that "we have successfully offboarded the following properties [the 12 Residential Real Properties] from Krch Realty's property management systems effective March 7, 2023;" a copy of this letter is attached hereto as **Exhibit 9**.

Q.      In March and April 2023, Debtor and HPC as "Releasors" executed twelve (12) separate "Termination & Release of Deed Restriction" documents with respect to the 12 Residential Real Properties; eleven were executed on March 15, 2023 and the twelfth was executed on April 5, 2023 (417 Lapsley Lane, Anniston, Alabama 36207).  On March 27, 2023, eleven Termination & Release of Deed Restrictions were recorded against the respective real properties and on April 14, 2023, the twelfth was recorded; copies of each of these twelve separate recorded Termination & Release of Deed Restrictions are attached hereto as **Exhibit 10**.

R.     The purpose of the Termination & Release of Deed Restrictions was for Debtor and HPC to terminate their "Deed Restriction – Right of First Offer to HPC," which had previously been recorded against each of the 12 Residential Real Properties.

S.     By way of this Stipulation, Andronico and Debtor seek to confirm that the automatic

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

stay under 11 U.S.C. §362(a) does not apply to the 12 Residential Real Properties.

T.    Whereas, this Stipulation is made pursuant to 11 U.S.C. §362(d) as well as Fed. Rule Bank. P. 4001(d) and LR 4001(c)(1).

### Stipulation

1.    Andronico is the record title holder and owner of the 12 Residential Real Properties identified herein and on Exhibit 1.  The 12 Residential Real Properties are not property of Debtor's bankruptcy estate under 11 U.S.C. §541(a).

2.    The Lease between Andronico as Lessor and Debtor as Lessee was properly terminated in accordance with its terms prior to the filing of the Involuntary Bankruptcy Case and the Voluntary Chapter 11 case.  11 U.S.C. §365(c)(3).  The Lease is not property of Debtor's bankruptcy estate and is not subject to assumption or rejection under 11 U.S.C. §365.

3.    The recorded Termination & Release of Deed Restrictions are valid and enforceable to terminate the "Deed Restriction – Right of First Offer to HPC" that were encumbering the 12 Residential Real Properties.

4.    Debtor has no legal, equitable or possessory right, title or interest in the 12 Residential Real Properties.

5.    The automatic stay under 11 U.S.C. §362(a) does not apply to the 12 Residential Real Properties.

6.    Andronico may exercise any and all of its rights as the record title holder and owner of the 12 Residential Real Properties.

7.    A copy of this Stipulation and the order approving it may be recorded against any or all of the 12 Residential Real Properties at Andronico's election to confirm that the automatic stay does not apply to these properties.

8.    Nothing in this Stipulation shall be construed as a waiver of the Debtor's right to raise any defenses in objection to Andronico's claims against the Debtor, except that the Debtor will not allege that Andronico violated the automatic stay with respect to the 12 Residential Real Properties.

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

9.      Nothing in this Stipulation shall be construed as consent or acknowledgement by the Debtor that Andronico's sale of the 12 Residential Real Properties is warranted or commercially reasonable.

10.     This Stipulation, the order approving it and any order granting relief from the automatic stay entered pursuant to it shall become effective upon entry and is not subject to the fourteen (14) day stay of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.


LAW OFFICES OF AMY N. TIRRE,                    HARRIS LAW PRACTICE, LLC
A Professional Corporation

/s/ Amy N. Tirre_____               /s/ Norma Guariglia_____
AMY N. TIRRE, ESQ.                              STEPHEN R. HARRIS, ESQ.
                                                NORMA GUARIGLIA, ESQ.

*Counsel for Andronico Family Partnership,*     *Counsel for Debtor Guardian Fund, LLC*
*L.P.*

**LAW OFFICES OF AMY N. TIRRE**
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

## CERTIFICATE OF SERVICE

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, APC, that I am over the age of 18 and not a party to the above-referenced case, and that on June 22, 2023 I filed and served the foregoing **STIPULATION BETWEEN ANDRONICO FAMILY PARTNERSHIP, L.P. AND DEBTOR GUARDIAN FUND, LLC REGARDING INAPPLICABILITY OF AUTOMATIC STAY UNDER 11 U.S.C. §362(a) TO 12 RESIDENTIAL REAL PROPERTIES** as indicated:

__X__          **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- **SALLIE B ARMSTRONG**      sarmstrong@mcdonaldcarano.com, mhale@mcdonaldcarano.com
- **ROBERT E. ATKINSON**      robert@nv-lawfirm.com, robert-atkinson-5908@ecf.pacerpro.com
- **OGONNA M. BROWN**      obrown@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com,dberhanu@lewisroca.com,ombcalendar@lewisroca.com;jhess@lewisroca.com,klopez@lewisroca.com,rcreswell@lewisroca.com
- **LOUIS M BUBALA**      lbubala@kcnvlaw.com, cdroessler@kcnvlaw.com;bsheehan@kcnvlaw.com
- **MICHAEL ANDREW BURKE**      mburke@rssblaw.com, mwilmoth@rssblaw.com
- **WILLIAM D COPE**      william@copebklaw.com, r64042@notify.bestcase.com
- **J CRAIG DEMETRAS**      mail@demetras-oneill.com
- **ELIZABETH A. FLETCHER**      efletcher@fletcherlawgroup.com, edendary@fletcherlawgroup.com
- **NORMA GUARIGLIA**      norma@harrislawreno.com, hannah@harrislawreno.com;steve@harrislawreno.com
- **MARK H. GUNDERSON**      mgunderson@gundersonlaw.com, ckonieczka@gundersonlaw.com
- **JEFFREY L HARTMAN**      notices@bankruptcyreno.com, abg@bankruptcyreno.com
- **KIRK C JOHNSON**      kirk@nvlawyers.com, teresa@nvlawyers.com;eileen@nvlawyers.com;stefanie@nvlawyers.com
- **NATHAN G. KANUTE**      nkanute@swlaw.com, mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;sdugan@swlaw.com;ljtaylor@swlaw.com
- **ROBERT R. KINAS**      rkinas@swlaw.com, jmath@swlaw.com;mfull@swlaw.com;docket_las@swlaw.com;sdugan@swlaw.com;jfung@swlaw.com
- **SEAN P PATTERSON**      illegalpat@aol.com, sbcolling@gmail.com;natesppbk@yahoo.com

- **CATHERINE A. REICHENBERG**    creichenberg@gundersonlaw.com, ealty@gundersonlaw.com
- **SAMANTHA J REVIGLIO**    Samantha@nvlawyers.com, teresa@nvlawyers.com;eileen@nvlawyers.com
- **STEFANIE T. SHARP**    ssharp@rssblaw.com, llucero@rssblaw.com
- **AMY N. TIRRE**    amy@amytirrelaw.com, admin@amytirrelaw.com
- **U.S. TRUSTEE - RN - 7**    USTPRegion17.RE.ECF@usdoj.gov
- **ALEXIS RENEE WENDL**    awendl@swlaw.com, mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;sdugan@swlaw.com
- **RICHARD D WILLIAMSON**    rich@nvlawyers.com, teresa@nvlawyers.com;eileen@nvlawyers.com;stefanie@nvlawyers.com

__X__    **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 22 June 2023, with postage thereon fully prepaid in the ordinary course of business.

**CASSIN T. BROWN**
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 HOWARD HUGHES PARKWAY, SUITE 600
LAS VEGAS, NV 89169

**JARED A. DAY**
OFFICE OF THE US TRUSTEE
300 BOOTH ST #3009
RENO, NV 89509

**J. CORY FALGOWSKI**
BURR & FORMAN LLP
222 DELAWARE AVENUE, SUITE 1030
WILMINGTON, DE 19801

**LAW OFFICES OF WILLIAM D. COPE**
545 MOGUL MOUNTAIN DRIVE
RENO, NV 89523

**KEVIN M PURSEL**
1245 MARS EVANS CITY RD.
EVANS CITY, PA 16033

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

**QUEST TRUST CO FBO KEVIN PURSEL**
C/O KEVIN PURSEL
1245 MARS EVANS CITY RD
EVANS CITY, PA 16033

**JAMES M. WALSH**
1037 CLIPPER COURT
DEL MAR, CA 95014

DATED June 22, 2023.

　　　　　　　　　　　　　　　　　　/s/ Meredith Marinello
　　　　　　　　　　　　　　　An Employee of Law Offices of Amy N. Tirre, APC

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

# **EXHIBIT 1**

# **EXHIBIT 1**

Andronico Family Partnership LP - Guardian Fund, LLC Property Summary

| Address | APN | Purchase Price | Date of Notice of Lease Termination | Effective Date of Lease Terminations | Date Release of Deed Restriction Signed | Date Release of Deed Restriction Recorded |
|---|---|---|---|---|---|---|
| 5129 Arrow Avenue, Anniston, Alabama, 36206 | 18-04-19-1-014-003.000 | $174,781 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 7209 3rd Avenue N, Birmingham, Alabama, 35206 | 23-00-15-2-014-005.000 | $190,790 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 1705 Exeter Avenue, Bessemer, Alabama, 35020 | 38-00-10-3-008-009.000 | $164,885 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 417 Lapsley Avenue, Anniston, Alabama, 36207 | 21-03-08-3-001-042.000 | $183,587 | 1/31/2023 | 3/8/2023 | 4/5/2023 | 4/14/2023 |
| 2406 Avenue J, Birmingham, Alabama, 35218 | 29-00-06-2-014-009.000 | $107,199 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 9721 Midland Blvd, Overland, Missouri, 63114 | 14I-24-0185 | $88,557 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 2811 Brazeau Avenue, Brentwood, Missouri, 63144 | 21K-23-0172 | $227,475 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 6621 Camberlain Avenue, St. Louis, Missouri, 63130 | 17H-11-0790 | $126,189 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 6108 Alaska Avenue, St. Louis, Missouri, 63111 | 2931-00-0140-0 | $111,784 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 1467 Columbia Hills Court, St. Louis, Missouri, 63138 | 08E-63-0798 | $126,738 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 8109 Cler Avenue, St. Louis, Missouri, 63114 | 14J-11-0091 | $57,600 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |
| 5635 College Avenue, St. Louis, Missouri, 63136 | 14G-53-1175 | $84,085 | 1/31/2023 | 3/8/2023 | 3/15/2023 | 3/27/2023 |

# EXHIBIT 2

# EXHIBIT 2

DocuSign Envelope ID:                                        D34C

# EXHIBIT C
## PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT ("**Purchase Contract**") dated as of this 6th day of December , 2021 ("**Effective Date**"), by and between **Guardian Fund, LLC**, a Nevada limited liability company located at 5440 Louie Lane, Suite: 106, Reno, NV 89511 ("**Seller**"), and Andronico Family Partnership L.P., a California Limited Partnership ("**Buyer**"), an ☐ individual ☐ limited liability Company ☑ trust located at 4068 NE Fairview Lake Way , Fairview, OR 97024 , hereinafter collectively referred to as the "**Parties**" and individually as the "**Party**".

### WITNESSETH:

**WHEREAS**, Buyer and Seller entered into a certain Secured Investment Agreement ("**Secured Investment Agreement**") on the 6th day of December , 2021 ("**Secured Investment Agreement Date**");

**WHEREAS**, all defined terms in the Secured Investment Agreement are hereby incorporated by reference;

**WHEREAS,** Seller is the owner of certain Real Property (the "**Property**") more fully described in Exhibit A of the Secured Investment Agreement;

**WHEREAS,** Seller desires to sell the Property to Buyer upon the terms and conditions set forth herein;

**WHEREAS,** Buyer desires to purchase the Property from Seller upon the terms and conditions set forth herein;

**WHEREAS,** the personal and real property which is to be sold and conveyed by Seller and purchased and accepted by Buyer pursuant to this Purchase Contract (all of which will hereinafter collectively be referred to as the "**Property**") consists of (i) the real property described in **Exhibit A** of the Secured Investment Agreement, (ii) all improvements, hereditaments, rights, privileges and easements thereunto belonging and all other rights of Seller relating in any way thereto, and (iii) all appurtenances, desks, furniture, fixtures and security equipment located thereon including, without limitation (collectively the "**Fixtures**"), but without representation or warranty as to the condition or usability of same.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants hereinafter set forth, Seller hereby agrees to sell, and Buyer hereby agrees to purchase, the Property upon the following terms and conditions.

DocuSign Envelope ID:                          D34C

# ARTICLE I
# PURCHASE PRICE

**1.1    PURCHASE PRICE.** The Purchase Price of the Property shall Property shall be:
$ 1,643,670              .00) ("**Purchase Price**").

**1.2    Payment of the Purchase Price.** The Purchase Price will be paid by Buyer in U.S. funds within five (5) business days after the Effective Date, as hereinafter defined.

# ARTICLE II
# TERMINATION AND NON-CONSUMMATION

**2.1    Termination.** Notwithstanding anything to the contrary in this Purchase Contract, Buyer may terminate the Purchase Contract by giving written notice of termination to Seller if Buyer determines, in Buyer's sole and absolute discretion, that the Property is not acceptable for any reason

**2.2    Non-Consummation.** In the event that the Closing, as more fully described in Article 5, is not consummated, the Parties agree that any funds paid to Seller by the Buyer shall be promptly returned to the Buyer by Seller and that the return of Buyer Funds shall be the sole and exclusive remedy available to both Parties. Furthermore, the Parties agree that in the event of non-consummation, each Party shall indemnify and hold the other Party and their respective successors and assigns, and any partner, or principals (disclosed or undisclosed), from and against any and all liability and damages, and from and against any and all suits, claims, and demands of every kind and nature.

# ARTICLE III
# SELLER REPURCHASE OPTION

**3.1    Seller Repurchase Option.** The real property described in **Exhibit A** is subject to a Lease Agreement that will be executed between the Parties. Upon the need to remove one or more properties from the Lease or the complete expiration, termination of the Lease, Seller will have the option, but not the obligation, exercisable upon its sole and unfettered discretion, to repurchase the Secured Investment Property from the Buyer.

Buyer understands and acknowledges that a deed restriction will be placed on each Property with the following terms:

DocuSign Envelope ID:                               D34C

### Deed Restriction
### Right of First Offer

**Notice Requirements-** *Before the Owner of Record may sell the Premises to a third party, Owner of Record shall first offer the Premises to Hughes Private Capital following the procedures set forth in this Section. Hughes Private Capital shall have twenty (20) days following written receipt of such offer to respond to Owner of Record with a written offer to purchase. Both notices may be delivered via electronic mail (email) if the parties agree and reply to the notice confirming receipt.*

**Negotiations-** *If Owner of Record does not receive a written offer to purchase within said 20-day period, or if Owner of Record and Hughes Private Capital do not enter into a legally binding, written agreement for the purchase and sale of the Premises within 30 days, Owner of record shall be free to enter into an agreement with a third party at terms no more favorable to the third party than Hughes Private Capital offered to Owner of Record.*

**Expiration-** *If Owner of Record does not complete the sale of the Premises with a third party within 90 days from the date Owner of Record first offered the Premises to Hughes Private Capital, Owner of record's right to sell the Premises to a third party shall expire and the procedure described shall be applicable again. Upon each repetition of this procedure, notice shall once again be due. Deed restriction expires and will be released after the next successful deed transfer to new ownership.*

**3.2    Waiver Required.** Seller must waive this right in writing before Buyer may offer the Property for sale to any third parties.

**3.3    Prepaid Appreciation.** Buyer understands and acknowledges there is 1% annual prepaid appreciation within the Fixed Rent payment under the Lease. If a future sale is executed using the Repurchase Option that is above the price paid under this PSA, the sale price will be reduced by the accumulated prepaid appreciation. If Seller waives its right to Repurchase and a sale is executed to an approved third party, Buyer understands and acknowledges they must reimburse Seller the accumulated prepaid appreciation.

**3.4    Insurance Claims.** If during the term of the Lease an insurance claim is paid out to Buyer in an amount equal to or above their purchase price then the property will be removed from the Lease and the lease payment will be adjusted appropriately. If any insurance claim is paid out to Buyer in an amount that is less than the Purchase Price, then the value of the Property for purposes of the Repurchase Option will be reduced by the amount paid out to the Buyer. Similarly, if all or substantially all of the Property shall be taken for any public or quasi-public purpose by any lawful power or authority by the exercise of the right of condemnation or eminent domain, any lump sum award received by Buyer as compensation shall reduce the Repurchase Option and Lease by that amount.

DocuSign Envelope ID:                    034C

## ARTICLE IV
## RISK OF LOSS

**4.1     Property**. Prior to closing, Seller may not take or permit any action without the consent of Buyer (other than actions by Buyer or Seller authorized under this Purchase Contract, actions required by governmental authorities, or actions otherwise beyond the control of Seller) that would in any material, adverse respect modify any exceptions to title set forth in the Title Commitment, alter the condition or zoning of the Property, or impair Buyer's ability to use the Property for the Intended Use.

**4.2     Damage**. Seller will bear the entire risk of loss of the Property occurring prior to the Closing. In the event of material damage to the Property prior to closing by fire, storm, or other casualty, Buyer will have the option, in Buyer's sole and absolute discretion, either to (a) accept title to the Property in its "as-is, where-is" damaged condition, or (b) accept a replacement property of equal or greater value.

**4.3     Condemnation.** If, prior to the Closing, any portion of the Property is taken by eminent domain, then Buyer will have the option, in Buyer's sole and absolute discretion, either to (a) accept a replacement property of equal or greater value, or (b) proceed with the Closing and acquire the Property as affected by such taking, together with all compensation and awards therefor.. If Buyer elects to proceed with the Closing, Buyer will not be entitled to any reduction of the Purchase Price, and Seller will deliver all such condemnation proceeds, or assign the right to receive same, to Buyer at Closing. Seller shall promptly notify Buyer of any actual or threatened condemnation affecting the Property.

## ARTICLE V
## CLOSING

**5.1     Closing.** The closing of this transaction ("**Closing**") shall be effective when this Purchase Contract, the Lease, and other standard closing documents have been signed by both parties and funds have been received by Seller.

**5.2     Deliverables at Closing**.  At Closing, the following shall be delivered by Seller and the Buyer as appropriate:

**A.     Purchase Price.** The Purchase Price, crediting any amounts paid to Seller prior to the Closing, plus or minus applicable adjustments, shall be disbursed to Seller by the Buyer, or if applicable, by an escrow agent or a qualified intermediary under Section 1031 of the United States Internal Revenue Code (26 U.S.C. § 1031).

**B.     Title Insurance.**  An ALTA owner's title insurance policy, the cost of which shall be governed by Article 6.2 herein below.

DocuSign Envelope ID: I                                    D34C

**C.    Other Documents.** Such Other Documents, executed by Buyer and Seller, as may be reasonably required to consummate the transaction contemplated by this Purchase Contract.

**D.    Possession.** Seller shall deliver possession of the Property to Buyer at the Closing.

## ARTICLE VI
## PRORATIONS AND EXPENSES

**6.1    Taxes and Assessments**. There will be no splitting, allocation, or proration of Property expenses.  All Property expenses shall be the responsibility of Seller unless and until the Lease is terminated.

**6.2    Closing Expenses.** Buyer shall pay all closing costs, including without limitation the cost of the Title Commitment and owner's title insurance policy (including related title service charges required under any state insurance regulations), any real estate brokerage fees if applicable, the cost of documentary tax on the Deed, (commonly known as Deed Stamps), and recording of the Deed, and the state of real estate transfer tax, if applicable, any additional costs incurred by either Party, the cost of any governmental approvals, the cost of Buyer's due diligence activities, Buyer's attorneys' fees, and costs incurred in connection with any mortgage loan procured by Seller or Buyer.

**6.3    No Commissions Due.** Each of Seller and Buyer warrants to the other that no commissions are payable or due to any broker or finder in connection with this Purchase Contract or the transaction contemplated herein.  Each of Seller and Buyer agrees to indemnify, defend and hold the other harmless from and against any commissions or fees or claims for commissions or fees arising under the indemnifying party, which indemnification will expressly survive the termination of this Purchase Contract and the closing of the sale and purchase of the Property contemplated by this Purchase Contract. The representations, warranties, and indemnification set forth in this Paragraph will survive the closing hereunder.

## ARTICLE VII
## REPRESENTATATIONS AND WARRANTIES

**7.1    Seller's Representations and Warranties.**  As a material inducement to Buyer to execute this Purchase Contract and consummate the purchase of the Property, Seller represents and warrants to Buyer that Seller has been duly organized and is validly existing as a limited liability limited company or corporation, as applicable, under the laws of the state of Nevada. Seller has the full right and authority, and has obtained any and all consents required therefor, to enter into this Purchase Contract and to consummate the sale of the Property. The person signing below on behalf of Seller is duly authorized to execute this Purchase Contract and to bind Seller. This Purchase Contract and all of the documents to be delivered by Seller at the Closing have been and will be authorized

DocuSign Envelope ID:                                                    D34C

and properly executed and delivered by Seller and are, and will constitute, the valid and binding obligations of Seller.

**7.2    Buyer's Representations and Warranties.**  Buyer hereby warrants they are purchasing the Property for their own account and not with a view towards resale.

**7.3    Limitations.** Seller makes and has made no representation or warranty, express or implied, concerning any portion of the Property, its condition, the use to which it may be put, its suitability for any purpose, any environmental matters, or any other thing or matter directly or indirectly related to the Property. Buyer is responsible for determining that the condition of the Property is satisfactory to Buyer. Buyer will purchase the Property and accept every portion of the Property in its "as is, where-is" condition without requiring any action, expense, or other thing or matter on the part of Seller to be paid or performed. Upon acceptance of the deed at Closing, Buyer will be conclusively deemed to have accepted the Property in its "as is, where-is" condition. Seller makes and has made no representation or warranty, express or implied, as to the reliability or accuracy of any information or reports provided to Buyer which are or were produced by a third Party, it being expressly understood that verification of the accuracy of such information or reports is the responsibility of Buyer. Seller disclaims any warranties with respect to the Property, including any common law implied warranties of fitness for a particular purpose, merchantability, or habitability.

## ARTICLE VIII
## MISCELLANEOUS

**8.1    Assignment.** Seller may assign its rights and obligations under this Purchase Contract to a Seller Affiliate. Buyer may assign its rights under this Purchase Contract to a qualified intermediary in order to effectuate a like-kind exchange under Section 1031 of the Internal Revenue Code. Seller agrees to cooperate with Buyer and the intermediary as reasonably requested; however, Seller will not be required to incur any liability or undertake any additional responsibilities as a result of the exchange. Seller understands that the qualified intermediary will not be assuming Buyer's obligations; accordingly, Seller will look solely to Buyer for the performance of Buyer's obligations and will release the qualified intermediary from responsibility for any breach of Buyer's obligations under this Purchase Contract.

**8.2    Headings.** The article and section headings of this Purchase Contract are for convenience only and in no way limit or enlarge the scope or meaning of the language hereof.

**8.3    Invalidity and Waiver.** If any portion of this Purchase Contract is held invalid or inoperative, then so far as is reasonable the remainder of this Purchase Contract will be deemed valid and operative, and effect will be given to the intent manifested by the portion held invalid or inoperative. Except to the extent provided otherwise herein, the failure by either Party to enforce against the other any term or provision of this Purchase Contract

DocuSign Envelope ID:                                        D34C

will not constitute a waiver of such Party's right to enforce against the other Party the same or any other such term or provision.

**8.4    Governing Law.** This Purchase Contract will, in all respects, be governed, construed, applied, and enforced in accordance with the laws of the state of Nevada.

**8.5    Venue.** Any legal proceeding to construe or enforce this Purchase Contract must be brought in the appropriate Court venue in and for Washoe County, Nevada. Buyer and Seller submit to the jurisdiction of this court.

**8.6    No Third-Party Beneficiary.** This Purchase Contract is not intended to give or confer any benefits, rights, privileges, claims, actions, or remedies to any person or entity as a third-Party beneficiary or otherwise.

**8.7    Entirety and Amendments.** This Purchase Contract embodies the entire agreement between the Parties and supersedes all prior and contemporaneous agreements and understandings relating to the Property. This Purchase Contract may be amended or supplemented only by an instrument in writing executed by both Parties. The Recitals are true and correct and are incorporated into this Purchase Contract by this reference.

**8.8    Notices.** All notices, demands, consents, approvals, and requests given by either party to the other hereunder shall be in writing and shall be sent by hand, by overnight courier, or by registered or certified mail, return receipt requested, postage prepaid, to the parties at the following addresses:

To Seller:

Guardian Fund, LLC
5440 Louie Lane
Suite: 106
Reno, NV 89511
Tel: (775) 297-4970
Email: Investing@hughescapital.com
Attn: Greg Hughes

With copy to:

Pino Nicholson PLLC
99 South New York Avenue
Winter Park, Florida 32789
Tel: (407) 206-6511
Email: ljp@PinoNicholsonLaw.com
Attn: Laurence J. Pino

DocuSign Envelope ID:                                    D34C

To Buyer:     Andronico Family Partnership L.P., a California Limited Partnership

4068 NE Fairview Lake Way

Fairview, OR 97024

or to such other address and to the attention of such other person as either party may from time to time designate in writing. Notices shall be effective upon receipt. Refusal to accept delivery shall constitute receipt.

**8.9    Indemnification.** Any obligation contained herein to indemnify a Party includes indemnification against any attorney's fees incurred by such Party in connection with trial or appellate proceedings.

**8.10    Execution in Counterparts.** This Purchase Contract may contain more than one counterpart of the signature page, and this Purchase Contract may be executed by the affixing of the Parties' signatures to one or more of such counterpart signature pages, All such counterpart signature pages will be read as though one, and they will have the same force and effect as though all the signatories have signed a single signature page.

**8.11    Documents.** If this Purchase Contract is terminated for any reason other than the default of Seller, Buyer shall deliver to Seller copies of any reports, surveys, and studies related to the Property created by, or on behalf of, Buyer prior to the date of termination.

**8.12    Time.** Time is of the essence in the performance of this Purchase Contract. Any time period ending on a Saturday, Sunday, or national legal holiday will be extended until 5:00 p.m. of the next business day.

**8.13    Construction of Purchase Contract.** The Parties acknowledge that the Parties and their counsel have participated in the drafting of this Purchase Contract and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting Party will not be employed in the interpretation of this Purchase Contract or any exhibits or amendments hereto. Whenever required by the context, the singular number includes the plural, the plural number includes the singular, and the use of any gender include all genders. When the word "including" (or some derivation thereof, such as "includes") is used in this Purchase Contract to refer to something that, in that context, may be part of a larger group of similar items, the reference is without limitation, and it should be interpreted as if followed by "but not limited to," "without limitation," or appropriate equivalent language for the context.

**8.14    Facsimiles.** The Parties may evidence their acceptance of this Purchase Contract by facsimile or electronic transmission of a copy of this Purchase Contract bearing the respective Party's signature, and such facsimile or electronic copy will be binding for all purposes as fully as a copy bearing the original signature of such Party.

**8.15    Confidentiality.** Buyer and Seller agree to maintain, and to cause their respective employees, brokers, counsel and other consultants, advisors and agents to maintain, the highest degree of confidentiality with respect to the subject matter of this Purchase Contract.    Buyer hereby confirms, for itself and its financial, legal, environmental,

DocuSign Envelope ID:                            D34C

engineering, and other consultants to be utilized by Buyer in connection with Buyer's inspection of the Property, that Buyer shall keep all matters regarding the Property (including, without limitation, the Inspection Items) private and confidential, and shall not disclose any such information to any party not assisting Buyer in Buyer's investigations of the Property. Additionally, prior to delivery of all or any portion of the Inspection Items to any consultant, Buyer shall receive the assurance and confirmation of said consultant that said consultant will likewise keep matters set forth within the Inspection Items private and confidential, and will not disclose the substance of such Inspection Items to any other party not involved in investigation of proposed acquisition of the Property for Buyer.

       IN WITNESS, HEREOF, the parties have caused this Purchase Contract to be executed as of the Effective Date first above written by their duly authorized officers.

**BUYER**

Andronico Family Partnership L.P., a California Limited Partnership

Nicholas A. Andronico

**Title:**      Trustee

**Signature:**      *Nicholas A. Andronico*
                  EFABA1951BE44EC

**Date Signed:**    12/8/2021 | 4:16:11 PM PST

**Title:** _____

**Signature:** _____

**Date Signed:** _____

**GUARDIAN FUND, LLC**

**Name:**     Steve Sixberry or Greg Hughes

**Title:**      Managing Member

**Signature:**    *Steve Sixberry*

**Date Signed:**    December 6th, 2021

# **EXHIBIT 3**

**EXHIBIT 3**

DocuSign Envelope ID:                                    CE31

## Side Letter of Guardian Fund Secured Investment Agreement

The Managing Member of Guardian Fund, LLC enters into the following agreement for the mutual benefit of the Investor and the Fund.

The parties hereby amend:

### Secured Investment Agreement Exhibit C Purchase and Sale Agreement

with the following terms:

- For a period of 24 months following the Effective Date of the agreement, Guardian Fund, LLC agrees to repurchase the properties attached by Exhibit A to the agreement for the same price Investor paid.

- Investor to pay all escrow, title, and any exchange fees.

- All other terms of the agreement remain intact, including termination of the Lease upon a completed repurchase of the properties.

Andronico Family Partnership - Nicholas A. Andronico
Secured Investor - Print Name

| | |
|---|---|
| *Nicholas A. Andronico* | 12/8/2021 \| 4:19:03 PM PST |
| Signature of Secured Investor | Date |
| *Greg Hughes* | 12/7/2021 \| 2:40:12 PM PST |
| Signature of Manager | Date |
| Guardian Fund, LLC | |

# **EXHIBIT 4**

# **EXHIBIT 4**

**EXHIBIT D**
**LEASE AGREEMENT**

This LEASE AGREEMENT ("**Lease**"), is entered into as of this 6th day of December, 2021 by and between Nicholas A. Andronico

☐ AS INDIVIDUAL(S)    ☑ AS TRUSTEE(S)    ☐ AS MEMBER(S) of
Andronico Family Partnership L.P., a California Limited Partnership (together with its successors and assigns, "**Lessor**"), and **Guardian Fund, LLC**, a Nevada limited liability company (together with its successors and assigns, "**Lessee**").

**WITNESSETH:**

**WHEREAS**, Secured Investor and Guardian entered into a certain Secured Investment Agreement ("**Secured Investment Agreement**") on the 6th day of December, 2021 ("**Secured Investment Agreement Date**");

**WHEREAS**, all defined terms in the Secured Investment Agreement are hereby incorporated by reference;

**WHEREAS,** Secured Investor is the owner of certain Real Property (the **Property**") more fully described in Exhibit A of the Secured Investment Agreement, and;

**WHEREAS,** Lessor hereby leases to Lessee the Property, together with any improvement to the Property ("**Improvements**").

TOGETHER WITH the rights and appurtenances pertaining to the Property (the Property, including the Improvements, are referred to as the "**Demised Premises**").

SUBJECT TO the Permitted Exceptions (as later defined). The lease of the Demised Premises includes, without limitation, Lessee's right to use the furniture, fixtures, equipment and other personal property, if any, owned by Lessor and located in, on or about the Demised Premises "Personalty", and Lessee hereby waives any right, title or interest to the ownership thereof, whether pursuant to statute or common law.

NOW, THEREFORE, the parties agree as follows:

**1.**    **Term**. The term ("**Term**") of this Lease shall commence on the Effective Date and expire on the first anniversary of the Effective Date ("**Expiration Date**") unless sooner terminated as provided in this Lease. All terms, provisions and conditions of this Lease shall be effective as of the Effective Date.

(A)    <u>Automatic Renewal</u>. This Lease shall automatically renew for additional one-year terms (each, a "**Renewal Term**") upon the expiration of the initial Term and any Renewal Terms, unless either party provides written notice of its intent to terminate the Lease not less than 30 days prior to the applicable term's expiration.

DocuSign Envelope ID:                                D34C

(B)    <u>Lessor's Right to Early Termination</u>. The Lessor shall have the right to terminate this Lease at any time, for any reason or no reason at all, upon delivering a minimum 30 days written notice to the Lessee.

(C)    <u>Lessee's Right to Early Termination</u>. The Lessee shall have the right to terminate this Lease at any time, for any reason or no reason at all, upon delivering a minimum 90 days written notice to Lessor.

## 2.    Fixed Rent.

(A)    Lessee agrees to pay Lessor without any setoff or deduction whatsoever, except as otherwise specifically provided under this Lease, a fixed monthly rental payment of $ 9,930.51____, payable at monthly, quarterly or bi-annual intervals at the option of Lessee ("**Fixed Rent**").  If paid monthly, Fixed Rent shall be due no later than the 5th day of each month with the first month being a pro rata portion from the effective date. If this Lease is terminated prior to the Expiration Date, then Lessee agrees to pay Lessor the pro rata portion of the monthly installment of the Fixed Rent through and including the date of such early termination.

(B)    Lessee reserves the right to adjust the Fixed Rent to market conditions no more than two times per year with a 30-day notice.

(C)    Any installment or installments of Fixed Rent, additional rent, and/or other sums coming due to Lessor under the provisions of this Lease which are not paid when due and remain unpaid for 30 days following written notice and demand from Lessor, shall bear interest at the Default Rate of 5% simple annual interest per annum.

(D)    Commencing on the Effective Date and at all times during the Term, Lessee shall pay or shall cause any and all Sublessees to pay for all public utilities, including all charges for electricity, water, fuel oil, gas and telephone, incurred in connection with the occupancy, maintenance and/or operation of the Demised Premises, and any and all other costs and expenses incurred in connection with the occupancy, maintenance and/or operation of the Demised Premises, except those expenses properly borne by the Lessor under the laws of the jurisdiction to which the demised premises is subject.

3.    **Use of Demised Premises**. Lessee covenants that it shall use the Demised Premises for any lawful purpose and for no other purpose. Anything herein contained to the contrary notwithstanding, Lessee shall not use or permit the use of the Demised Premises or any part thereof for any unlawful or illegal purposes or in violation of any certificate of occupancy, or for any extra-hazardous purpose or in such manner as to create or constitute a nuisance of any kind.

DocuSign Envelope ID:                                           D34C

**4.    Payment of Taxes.**

(A)    All Taxes assessed for the Term shall be paid by the Lessee. As used herein, the term "**Taxes**" shall mean all taxes, assessments, water charges and sewer rents, rates and charges, transit taxes, charges for public utilities, excises, levies, license and permit fees and other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or during the term of this Lease may be assessed, levied, confirmed, imposed upon or become a lien on the Demised Premises or the Property, or any part thereof, or for any use or occupation of the Demised Premises, and such franchises as may be appurtenant to the use of the Demised Premises, this transaction or any document to which Lessee is a party. The term "**Taxes**" as used herein shall not include any franchise, excise, corporate, inheritance, succession, capital levy or transfer tax of Lessor, or any income, profits or revenue tax upon the income of Lessor.

(B)    As additional rent, Lessee shall pay or shall cause to be paid, as the same shall become due and payable, all Taxes which are assessed and are, or become, a lien during the term of this Lease; *provided, however*, that with respect to any bill or statement for Taxes issued by any taxing authority directly to Lessor, Lessee shall have no obligation to pay such Taxes, or interest or penalties accrued with respect thereto, until 30 business days shall have expired following Lessee's receipt of such bill or statement. Lessee may pay or shall cause to be paid any Taxes in installments, if payment may be so made, without fine or penalty. Notwithstanding the foregoing, in the event the holder ("**Fee Mortgagee**") of any mortgage which affects Lessor's interest in the Demised Premises or any portion thereof (each such mortgage, a "**Fee Mortgage**") requires that Taxes be paid in advance of their due date, or in installments in advance of the due date to be held in escrow by the Fee Mortgagee, Lessee hereby agrees to pay or shall cause to be paid Taxes as required by the Fee Mortgagee.

(C)    Lessor hereby designates Lessee to act on its behalf and, during the Term of this Lease, assigns to Lessee Lessor's rights and interest: (i) to complete, terminate or settle any appeal proceedings pending on the Effective Date with respect to Property tax assessments of the Demised Premises for periods prior to the Effective Date, (ii) to determine the need to initiate an appeal of any Property tax assessment of the Demised Premises with respect to periods prior to or after the Effective Date, and to complete, terminate or settle any such appeals, and (iii) to engage legal counsel in connection with the foregoing, *provided, however*, that any refunds or settlement monies resulting from such appeals shall be applied as follows subject to the terms of any Fee Mortgage: (1) first, to the payment of all attorneys' fees and costs attendant to such appeals, (2) second, to any Sublessees to the extent such Sublessees are entitled to a portion of such refunds or monies under their respective subleases and (3) third, to Lessee. Lessee shall pay all costs, including attorneys' fees and costs, attendant to such appeals (to the extent not covered by the application of any refunds or settlement monies) and Lessor shall have no obligation to pay the same.

DocuSign Envelope ID:                            D34C

6.    **Repairs**. Lessee will (i) make all necessary repairs and replacements to the Demised Premises, whether ordinary or extraordinary, foreseen or unforeseen, structural or non-structural, during the term of this Lease, (ii) keep the same in substantially the same condition and repair as when received and (iii) at the expiration or sooner termination of this Lease, return the Demised Premises to Lessor in substantially the same condition and repair as when received, ordinary wear and tear and condemnation losses excepted. In furtherance and not in limitation of the foregoing, but subject to the provisions of Section 10, Lessee agrees to perform any necessary repairs, replacements and restorations to the Demised Premises as and when the same are necessary (in Lessee's sole judgment).   The Lessee is not responsible for capital improvements.

7.    **Compliance with Laws**. Lessee shall comply with all statutes and ordinances applicable to the Demised Premises. Lessee shall pay all costs and expenses incidental to such compliance and will indemnify and save Lessor harmless from and against all expenses, costs and damages of every nature by reason of any notice, orders, violations or penalties filed against or imposed upon the Demised Premises or against Lessor as owner thereof, because of the failure of Lessee to comply with this covenant. Lessee shall have the right to contest or review any such order by legal proceedings or in such manner as Lessee may deem advisable and may have any such order cancelled, removed or revoked, without actual compliance therewith.

8.    **Indemnification**. Lessee shall indemnify and hold harmless Lessor, each Fee Mortgagee and their respective successors and assigns, and any partner, or principal (disclosed or undisclosed) of Lessor from and against any and all liability and damages, and from and against any and all suits, claims, and demands of every kind and nature, including reasonable counsel fees and expenses, by or on behalf of any person, firm, association or corporation to the extent arising out of or based upon the negligence or willful misconduct of Lessee or any agent, employee or contractor of Lessee, or any accident, injury or damage, however occurring, which shall or may happen during the term of this Lease, on or about the Demised Premises. Nothing herein shall require Lessee to indemnify Lessor, any Fee Mortgagee, or any parties or principal (disclosed or undisclosed) of Lessor based upon the following (each, an "**Excepted Item**"): (A) any accident, injury or damage on or about the Demised Premises, arising out of the gross negligence or willful misconduct of Lessor or any agent of Lessor; or (B) any misrepresentation made by Lessor herein. Lessee, at its expense, shall have the right to defend with counsel of its own choice any legal proceeding commenced or threatened against Lessor or Lessee, in connection with which a claim for indemnification may be asserted by Lessor. Lessor shall indemnify and save harmless Lessee, its officers, directors, shareholders, successors, permitted assigns, and any guarantor of Lessee's obligations hereunder from and against any liability and damages, and from and against any and all suits, claims and demands of every kind and nature, including reasonable counsel fees and expenses, to the extent arising out of or based upon any Excepted Item. Lessor, at its expense, shall have the right to defend with counsel of its own choice any legal proceeding commenced or threatened against Lessor or Lessee, in connection with which a claim for indemnification may be asserted by Lessee on account of any Excepted

Item. Lessor shall not be required to furnish any services or facilities or to make any repairs or alterations of any nature in or to the Demised Premises, Lessee hereby assuming the full and exclusive control thereof and responsibility for the condition, operation, repair, replacement, maintenance and management of the Demised Premises.

9.    **Insurance**.

(A)    Investors with Leverage. Lessor shall be responsible for maintaining both property and liability insurance coverage on all leased properties of satisfactory amounts such that no liability shall fall to lessee. Lessor shall maintain insurance coverage through escrow with Lessor's Lender.

(B)    Investors without Leverage. Lessor's name shall be added to Lessee's existing liability insurance policy for Lessor's assets. This insurance coverage will not require any payment on the part of the Lessor, or any reimbursement on the part of the Lessee.

10.    **Damage or Destruction**.  If during the Term of this Lease any portion of the Demised Premises or the Improvements are damaged or destroyed by fire or other casualty, Lessee shall be liable for the loss, repair or replacement of the Demised Premises.

11.    **Condemnation**. All compensation awarded or paid upon such a total or partial taking of the Demised Premises shall belong to and be the property of Lessor. Nothing contained herein shall be construed to preclude Lessee from prosecuting any claim directly against the condemning authority in such condemnation proceedings for loss of business, depreciation or damage to and/or cost of removal or the value of stock and/or trade fixtures, furniture and other personal property belonging to Lessee; *provided, however*, that no such claim or award shall diminish or otherwise adversely affect Lessor's claim or award, nor any claim or award of any Fee Mortgagee. If any award pursuant to a taking shall have a "loss of use" component specifically allocated, such component of the award shall be paid to Lessee.

12.    **Lessor's Right to Perform Lessee's Covenants**. If Lessee shall at any time fail to make any payment or perform any act on its part to be made or performed hereunder, then Lessor, without waiving or releasing Lessee from any obligation of Lessee contained in this Lease, may at its option pay any sum or perform any act on Lessee's part to be paid or performed as provided herein, and may enter upon the Demised Premises for any purpose and take any action thereon as may be necessary to cure such failure. The amount of any payment made, or expense incurred by Lessor in connection with the foregoing, with interest thereon at the Default Rate from the date of payment, shall constitute additional rent (hereinafter defined as "**Additional Rent**") and shall be paid by Lessee to Lessor on demand. Notwithstanding the foregoing, Lessor may not, except in the case of an emergency, exercise any rights pursuant to this Section 12, except upon 30 days' prior written notice to Lessee. In the event Lessee fails to pay Taxes or any other sum which Lessee is required by the terms of this Lease to pay, and Lessor,

DocuSign Envelope ID:                                      D34C

in its absolute discretion elects to pay such sum on behalf of Lessee, Lessee shall pay to Lessor, as Additional Rent hereunder, within 30 days of demand therefor, the amount of such payment, together with interest at the Default Rate, from the date of such payment by Lessor until the date Lessee pays such sums to Lessor.

   **13.     Discharge of Liens**.

         (A)     Lessee shall not create, permit to be created or to remain, and covenants to discharge any lien, encumbrance or charge upon the Demised Premises or any part thereof or the income therefrom having any priority or preference over this Lease or ranking on a parity with the estate, right and interest of Lessor in the Demised Premises or the Property, or any part thereof, or the income therefrom, and Lessee will not suffer any matter or thing whereby the estate, right and interest of Lessor might be impaired except as expressly provided in this Lease. Except for any Fee Mortgage, Lessor shall not create, permit to be created or to remain, and covenants to discharge any lien, encumbrance or charge upon the Property or the Improvements or any part thereof or the income therefrom, and Lessor will not suffer any matter or thing whereby the estate, right and interest of Lessee might be impaired except as expressly provided in this Lease.

         (B)     If, as a result of action or inaction by Lessee, any mechanic's, laborer's or materialmen's lien shall at any time be filed against any part of the Demised Premises, Lessee shall within 60 days after the notice of the filing thereof cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. Lessee shall defend on behalf of Lessor and at Lessee's own cost and expense any action which may be brought for the enforcement of any such liens, and Lessee shall pay any damages and discharge any judgment entered thereon and indemnify and save Lessor and any Fee Mortgagee harmless from and against any claim or damage resulting therefrom. In the event any mechanic, laborer or materialman shall send a notice of lien to Lessor, and not to Lessee, Lessor shall forward a copy of such notice of lien to Lessee, and the foregoing 60-day period shall commence as of the date Lessee receives such notice.

         (C)     Anything to the contrary in the foregoing notwithstanding, Lessee shall not be required to pay, discharge or remove any mechanic's, laborer's or materialman's lien filed against the Demised Premises, or any part thereof, so long as Lessee shall in good faith proceed to contest the same, or the validity thereof, by appropriate legal proceedings, which shall operate to prevent enforcement of such lien, so long as Lessee's failure to pay, discharge or remove such lien does not result in a default under the terms of any Fee Mortgage or other agreement affecting the Demised Premises.

         (D)     All materialmen, contractors, artisans, mechanics, laborers and any other persons who now or hereafter have contracted with Lessee (or any Sub lessee) for the furnishings of any labor, services, materials, supplies or equipment with respect to any portion of the Demised Premises at any time from the date of this Lease until the end

DocuSign Envelope ID:                                          D34C

of the term of this Lease, are hereby charged with notice that they must look exclusively to Lessee (or such Sub lessee) to obtain payment for the same.

**14.    Lessor's Access to Premises**.

(A)    Subject to the terms of any Subleases, Lessee will permit Lessor and its authorized representatives upon reasonable notice to enter the Demised Premises for the purpose of inspecting the same and performing any work therein that may be necessary by reason of Lessee's failure to make any repairs or perform any work required of Lessee pursuant to the terms of this Lease. Nothing herein shall imply any duty upon the part of Lessor to do any such work, and performance thereof by Lessor shall not constitute a waiver of Lessee's default in failing to perform the same.

(B)    Lessor, upon reasonable notice, shall have the right to enter the Demised Premises for the purpose of showing the Demised Premises to prospective purchasers and for the purpose of showing same to prospective lessees.

(C)    Lessee shall not enter into any future Sublease unless such Sublease contains the following provisions:

i)    Sublessee acknowledges that the Premises is subject to that certain Lease Agreement by and between various parties as Lessor and Lessee ("**Master Lease**"), and that this Sublease shall in all respects be subject and subordinate to the terms of the Master Lease.  No further documentation shall be required to evidence the foregoing; provided, however, that in confirmation of such subordination, Sublessee agrees to promptly execute any certificate, in recordable form, that Sublessor may reasonably request.

ii)    In the event Master Lessor shall succeed to the rights of the Sublessor, then Sublessee will recognize such party as successor Sublessor of this Sublease and shall pay the rent thereto, and perform the provisions of this Sublease for the benefit of any such successor Sublessor, and Sublessor shall concomminately recognize Sublessee under this Lease. No documentation other than this Sublease shall be necessary to evidence such attornment, and the Parties agree to execute any such documents, in recordable form, which are reasonably required by the other arties to confirm such attornment or to otherwise carry out the intent and purposes of this Section.

The requirements of this Section 14 shall not apply to the Subleases in existence as of the date of this Lease or to any amendments, modifications or supplements thereto.

**15.    Assignment**. Lessor shall have the right to assign this Lease or the leasehold estate created hereby without the consent of Lessee.  Lessee shall have the right to sublet all or any portion of the Demised Premises without the consent of Lessor,

DocuSign Envelope ID:                          D34C

including, without limitation, the right to enter into Subleases that extend beyond the Term of this Lease.

**16.    Default**.

(A)    If any one or more of the following events (herein sometimes called "**Events of Default**") shall happen:

(i)    if Lessee shall fail to make due and punctual payment of any Fixed Rent or Additional Rent payable under this Lease or any other sum when and as the same shall become due and payable, and such failure shall continue for a period of 30 days after written notice from Lessor;

(ii)    if Lessee shall fail in the performance or compliance with any of the agreements, terms, covenants or conditions in this Lease (other than those referred to in the foregoing Section 16 (A)(i)) for a period of 30 days after written notice from Lessor to Lessee specifying the items which Lessee has failed to perform or comply with, or in the case of any failure or a contingency which cannot with due diligence be cured within said 30-day period, if Lessee fails to proceed within said 30-day period to commence to cure the same and thereafter to prosecute the curing of such failure with due diligence (it being intended in connection with a failure not susceptible of being cured with due diligence within said 30-day period that the time of Lessee within which to cure the same shall be extended for such period as may be necessary to complete the same with all due diligence);

(iii)    if Lessee shall (1) apply for, or consent in writing to, the appointment of a custodian, receiver, trustee or liquidator of Lessee or of all or substantially all of its assets, (2) file a voluntary petition in bankruptcy or admit in writing its inability to pay its debts as they become due, (3) make a general assignment for the benefit of creditors, (4) file a petition or an answer seeking a reorganization (other than a reorganization not involving the liabilities of Lessee) or an arrangement with creditors, or take advantage of any insolvency law, (5) file an answer admitting the material allegations of a petition filed against Lessee in any bankruptcy, reorganization or insolvency proceedings, (6) admit in writing its inability to pay its debts as they mature, or (7) be dissolved as the result of any adversary suit or proceedings;

(iv)    if an order, judgment or decree shall be entered by any court of competent jurisdiction approving a petition seeking a reorganization of Lessee or the appointment of a custodian, receiver, trustee or liquidator of Lessee, or of all or substantially all of Lessee's assets, and such order, judgment or decree shall continue unstayed and in effect, whether pursuant to appeal or otherwise, for any period of 90 days; or

(v)    if an involuntary case is commenced against Lessee by the filing of a petition under Chapter 7 or Chapter 11 of Title 11 of the United States

DocuSign Envelope ID:                        D34C

Bankruptcy Code and an order for relief is entered therein or the petition is not dismissed within 90 days after the filing of such petition;

Then and in any such event Lessor, at any time thereafter, may give written notice to Lessee specifying the Event(s) of Default and stating that this Lease and the term hereby demised shall expire and terminate on the date specified in such notice, which shall be no less than 10 days after the giving of such written notice, and upon said date this Lease and the term hereby demised and all rights of Lessee under this Lease, including any renewal privileges whether or not exercised, shall expire and terminate, and Lessee shall remain liable as hereinafter provided.

(B)    Upon any such expiration or termination of this Lease, Lessee shall quit and peacefully surrender the Demised Premises to Lessor and Lessor, upon or at any time after any such expiration or termination, may without further notice enter upon and re-enter the Demised Premises and possess and repossess itself thereof, by force, summary proceedings, ejectment or otherwise, and may dispossess Lessee and remove Lessee and (subject to the provisions of <u>Section 16 (D)</u>) all other persons and property from the Demised Premises and may have, hold and enjoy the Demised Premises and the right to receive all rental income of and from the same.

(C)    At any time or from time to time after any such expiration or termination, Lessor may relet the Demised Premises or any part thereof, in the name of Lessor or otherwise, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the term of this Lease) and on such conditions (which may include concessions or free rent) as Lessor in its uncontrolled discretion may determine and may collect and receive the rents therefor.

(D)    No failure by either party to insist upon the strict performance of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial rent during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Lease to be performed or complied with by either party and no breach thereof, shall be waived, altered or modified except by a written instrument executed by the other party. No waiver of any breach shall affect or alter this Lease but each and every covenant, agreement, term and condition of this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(E)    Each right and remedy of the parties provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise. The exercise or beginning of the exercise by either party of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by such party of any or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

(H)    Upon an Event of Default by Lessor hereunder, Lessee shall be entitled to recover against Lessor all of its reasonable costs and expenses, together with interest at the Default Rate on any sums determined to be due and payable to Lessee, in connection with any such default.

**17.    Representations by the Parties**.

(A)    Lessee accepts the Demised Premises in its "as is" condition as of the date of this Lease and agrees that Lessor shall not be required to do any work to prepare the Demised Premises for use or occupancy by Lessee. Lessor's agents have made no representations or promises with respect to the Improvements or the Demised Premises except as herein expressly set forth.

(B)    Lessor hereby represents and warrants to Lessee as follows:

(i)    Lessor has fee title to the Demised Premises, subject to no liens or encumbrances other than Permitted Exceptions. The representation contained in this Section 17(B)(i) shall be true and correct as of the Effective Date.

(ii)    Lessor, if a partnership, limited liability company, trust or corporation, is duly organized and validly existing under the laws of the state of its organization and is duly registered and qualified to do business in each jurisdiction where such registration or qualification is material to the transactions contemplated hereby and has been duly authorized by all necessary and appropriate action to enter into this Lease and to consummate the transaction contemplated herein, and the individuals executing this Lease on behalf of Lessor, have been duly authorized by all necessary and appropriate action on behalf of Lessor. Lessor, if an individual, has full power, authority and capacity to enter into this Lease and to consummate the transaction contemplated herein. When executed and delivered by Lessor, this Lease will constitute valid and legally binding obligations of Lessor, enforceable against Lessor in accordance with its terms.

(iii)    Neither the execution nor the delivery of this Lease nor the consummation of the transaction contemplated hereby nor fulfillment of or compliance with the terms and conditions of this Lease conflict with or will result in a breach of any of the terms, conditions or provisions of any agreement, order, judgment, decree, arbitration award, statute, regulation or instrument to which Lessor is a party or by which it is bound, or constitutes or will constitute a breach, violation or default under any of the foregoing.

(C)    During the term of this Lease, Lessor shall not voluntarily pursue an application for a zoning variance, land use approval, assessment, special improvement or similar action which would materially adversely affect Lessee's use of the Demised Premises or materially increases Lessee's cost to operate and maintain the Demised Premises.

DocuSign Envelope ID:                                                                    D34C

(D)    Lessor hereby transfers and assigns to Lessee any and all warranties and guaranties in Lessor's possession which were obtained by Lessor (whether by specific agreement or as a matter of law) in connection with the construction or acquisition of the Improvements, and preparation of the Demised Premises, and agrees to cooperate with Lessee in connection with the enforcement of any of the foregoing. Lessor further agrees to execute any documents which Lessee may reasonably request in furtherance of the foregoing assignment.

18.    **Quiet Enjoyment**. Lessor covenants that Lessee may peaceably and quietly enjoy the Demised Premises, free from any interference, molestation or acts of Lessor or of anyone claiming by, through or under Lessor, subject, nevertheless, to the terms and conditions of this Lease.

19.    **Subordination; Subleases**.

(A)    Subject to Lessee receiving a subordination and non-disturbance agreement from any existing or future Fee Mortgagee(s) or underlying lessors, this Lease, and all the rights of Lessee hereunder, are and shall be subject and subordinate to any and all Fee Mortgages now or hereafter existing and any other liens either in whole or in part on the Demised Premises, and any extension, renewal or modification of any such Fee Mortgages, and to any and all ground or underlying leases which may now or hereafter affect the Demised Premises or any portion thereof, and any extensions, renewals or modifications thereof. In confirmation of such subordination, Lessee shall execute promptly any certificate, in recordable form, that Lessor may reasonably request.

(C)    In the event of a termination of this Lease by operation of law or otherwise, each Sublease shall continue in full force and effect as a direct lease between Lessor and Sublessee, and each Sublessee's possession of the premises leased under the applicable Sublease shall not be disturbed as a result of the termination of this Lease.

20.    **Brokerage**.  Lessor and Lessee warrant and represent that they have not dealt with any realtor, broker or agent, in connection with the negotiation of this Lease.

21.    **Lease Status**. Upon request of either party to this Lease, the other party will execute and deliver (within 10 business days after request therefor) an instrument stating, if the same be true, that this Lease is a true and exact copy of the Lease between the parties to this Lease, that there are no amendments of this Lease (or stating what amendments there may be), that the same is then in full force and effect and that, to the best of such party's knowledge, there are then no offsets, defenses or counterclaims with respect to the payment of rent reserved hereunder or in the performance of the other terms, covenants and conditions of this Lease to be performed by either party to this Lease, and that as of such date no default has been declared hereunder by either party to this Lease and that such party at the time has no knowledge of any factor or circumstance which it might reasonably believe would give rise to a default by either party.

DocuSign Envelope ID:                                D34C

**22.    Definition and Liability of Lessor**. The term "**Lessor**" as used in this Lease means only the owner(s) or the mortgagee(s) in possession for the time being of the Demised Premises, so that in the event of any sale of the Demised Premises or an assignment of this Lease by Lessor or such mortgagee, or a demise of the Demised Premises, Lessor (and each of the partners and principals (disclosed and undisclosed) of Lessor) shall be and hereby is entirely freed and relieved of all obligations of Lessor hereunder, provided such successor Lessor agrees in writing to assume all such obligations, whether arising prior or subsequent to the date of such assignment. In the event of any of the foregoing transfers by Lessor (or any assignee of Lessor), Lessor (or such assignee) shall deliver to Lessee a written agreement from the purchaser(s), assignee(s) or lessee(s) of Lessor's (or such assignee's) interest in this Lease or the Demised Premises, that the purchaser, assignee or lessee has assumed and agreed to observe and perform all obligations of Lessor hereunder including, without limitation, all obligations which were the responsibility of the prior Lessor hereunder, but only with respect to the period ending with a subsequent transfer of such purchaser's, assignee's, or lessee's interest in the Demised Premises.

**23.    Environmental Covenants**. Lessee hereby unconditionally covenants and agrees with Lessor, as follows:

(A)    Lessee shall not use, generate, manufacture, produce, store, release, discharge, treat, or dispose of on, under, from or about the Demised Premises or transport to or from the Demised Premises any Hazardous Substance, and shall use reasonable efforts to not allow any other person or entity to do so, except in compliance with Environmental Laws. Lessee shall not install or permit to be installed any asbestos or storage tanks at the Demised Premises and shall remedy all violations of Environmental Laws with respect thereto which arise as a direct result of Lessee's actions, including, but not limited to, removal of asbestos and/or storage tanks in the manner and as required by applicable Environmental Laws.

(B)    During the term of this Lease, Lessee shall use reasonable efforts to keep and maintain the Demised Premises in compliance with, and to not cause or permit the Demised Premises to be in violation of any Environmental Law and shall promptly take corrective action to remedy such noncompliance which arises as a direct result of Lessee's actions.

**24.    Governing Law**. This Lease shall be governed by and construed in accordance with the laws of the State of Nevada and any action arising out of or related to this agreement filed by any of the parties, their principals, or affiliates shall be filed exclusively in the courts in and for Washoe County, Nevada.

**25.    Notices.** All notices, demands, consents, approvals, and requests given by either party to the other hereunder shall be in writing and shall be sent by hand, by overnight courier, or by registered or certified mail, return receipt requested, postage prepaid, to the parties at the following addresses:

DocuSign Envelope ID:                                        D34C

To Lessee:   Guardian Fund, LLC
             5440 Louie Lane
             Suite: 106
             Reno, NV 89511
             Tel: (775) 297-4970
             Email: Investing@hughescapital.com
             Attn: Greg Hughes

With copy to: Pino Nicholson PLLC

             99 South New York Avenue
             Winter Park, Florida 32789
             Tel: (407) 206-6511
             Email: ljp@PinoNicholsonLaw.com
             Attn: Laurence J. Pino

To Lessor:   Andronico Family Partnership L.P., a California Limited Partnership
             4068 NE Fairview Lake Way
             Fairview, OR 97024

or to such other address and to the attention of such other person as either party may from time to time designate in writing. Notices shall be effective upon receipt. Refusal to accept delivery shall constitute receipt.

     **26.    Assignment**. Subject to the terms and conditions of this Lease, the covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Lessor and Lessee and their respective successors, assigns and legal representatives (including any Fee Mortgagee(s)). Lessee hereby acknowledges that Lessor shall have the absolute right to transfer 1 or more undivided interests in the Demised Premises without the consent of or notice to Lessee, in which event such transferee shall be deemed to be a "**Lessor**" hereunder. As soon as reasonably practicable after any such transfer, the transferor of such interests in the Demised Premises shall deliver a notice to Lessor and Lessee of such transfer, which notice shall reflect each Lessor's undivided percentage interest in the Demised Premises; however, the failure to deliver any such notice shall not affect Lessor's rights or Lessee's obligations hereunder.

     **27.    Invalidity of Particular Provisions**. If any term or provision of this Lease or the application thereof to any persons or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term or provision to other persons or circumstances shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

DocuSign Envelope ID:                                        D34C

**28.    Severability**. If any portion of this Lease shall become illegal, null or void or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void or against public policy (A) the remaining portions of this Lease shall not be affected thereby and shall remain in full force and effect to the fullest extent permissible by law and (B) in lieu of such invalid and unenforceable provision, there will be added automatically as a part of this Lease a provision as similar in terms to the invalid or unenforceable provision as may be possible and be valid and enforceable.

**29.    Captions**. Captions used in this Lease are inserted solely for convenience and shall not constitute a part of this Lease, nor shall they affect its meaning, construction or effect.

**30.    Surrender of the Demised Premises**. Except as otherwise herein provided, at the expiration of the term of this Lease, Lessee will peaceably yield up to Lessor the Demised Premises, broom clean, in as good order and repair as when delivered to Lessee, ordinary wear and tear and damage by the elements excepted.

**31.    Certificate of Occupancy**. Lessor agrees to cooperate with Lessee, in connection with Lessee's obtaining any certificate of occupancy which may be required.

**32.    Counterparts; Execution**. This Lease may be executed in one or more counterparts, each of which will constitute an original, and all of which together shall constitute one and the same agreement. Executed copies hereof may be delivered by facsimile, PDF or email, and, upon receipt, shall be deemed originals and binding upon the parties hereto. Without limiting or otherwise affecting the validity of executed copies hereof that have been delivered by facsimile, PDF or email, the parties will use their best efforts to deliver originals as promptly as possible after execution.

*Signature page to follow.*

DocuSign Envelope ID:                                 D34C

IN WITNESS WHEREOF, the parties have executed this LEASE AGREEMENT as of the Effective Date.


**LESSOR(S)**

Andronico Family Partnership L.P., a California Limited Partnership

Nicholas A. Andronico

**Title:**          Trustee

**Signature:**      *Nicholas A. Andronico*

**Date Signed:**    12/8/2021 | 4:16:11 PM PST



**Title:**          _____

**Signature:**      _____

**Date Signed:**    _____


**LESSEE**

**Steve Sixberry or Greg Hughes**

**Guardian Fund, LLC**

**Title:**          Managing Member

**Signature:**      *Steve Sixberry*

**Date Signed:**    December 6th, 2021

# EXHIBIT 5

# EXHIBIT 5

**From:** **Paul Andronico** paul@andronico.com 
**Subject:** Buy-Back and Withdrawals
**Date:** December 2, 2022 at 2:47 PM
**To:** Isabella Gargano isabella.gargano@hughescapital.com, Adam Johnson Adam@hughescapital.com, Heather Hull
heather.hull@hughescapital.com
**Cc:** Jake Andronico jake@andronico.com
**Bcc:** Paul Andronico paul@andronico.com



Isabella, Heather and Adam, we have decided to diversify our family's investment portfolio and reduce our current over-focus on the single family housing market.  Accordingly, we are writing for the following purposes:

1. To exercise our right in the attached "Side Letter of Guardian Fund Secured Investment Agreement" to have Guardian Fund, LLC  buy back the 12 properties purchased by the Andronico Family Partnership LP in January 2022, which are listed in the attached "Transaction Breakdown" dated September 30, 2022.

2. To request a withdrawal of all funds held in Account #‾‾‾‾‾‾‾‾ in the name of the Andronico 401K Plan.  We have attached the most recent statement from September 2022 which showed a balance of $156,630.02.

3. To request a withdrawal of all funds held in Account #‾‾‾‾‾‾‾ in the names of Paul Athan Andronico and Robin Rae Andronico, Trustees of the Andronico Living Trust dated February 8, 2018, and any amendments thereto.  We have attached the most recent statement from September 2022 which showed a balance of $175,547.85 (this total does not reflect a prior withdrawal of $50,000.00, nor a pending withdrawal of $75,000.00).

We thank you for your help over this past year.

Please email me the Docusign paperwork to implement the foregoing divestments at your earliest convenience.

Thank you.

Best,

Paul Andronico

HPC Statement
- Septe...22.pdf

DocuSign Envelope ID: I                                     iCE31

Side Letter of Guardian Fund Secured Investment Agreement

# EXHIBIT 6

# EXHIBIT 6



**From:** **Isabella Gargano** isabella.gargano@hughescapital.com  📎
**Subject:** RE: Buy-Back and Withdrawals
**Date:** December 2, 2022 at 3:38 PM
**To:** Paul Andronico paul@andronico.com, Adam Johnson Adam@hughescapital.com, Heather Hull heather.hull@hughescapital.com
**Cc:** Jake Andronico jake@andronico.com, Stacy Silva Stacy@hughescapital.com

Good afternoon, Paul,

Happy Friday and thank you for your email.

We have received your request and will start processing this on Monday. Unfortunately, both, Adam and Heather are out of the office today. We will follow up with you regarding this on Monday. Have a lovely weekend!

Thank you!

**Isabella Gargano**
**Investor Relations Coordinator**
**Email:** isabella.gargano@HughesCapital.com
**Phone:** (775) 446-5613
5440 Louie Lane, Reno NV 89511
**Mailing Address:** Suite 106
**Investor Relations Office:** Suite 102



*Nothing in this email should be interpreted as representing an offer to buy or sell any security or investment from us. Any such offer or solicitation may only be made through our Offering Documentation ("Offering"), available only to Accredited Investors with a minimum of $25,000 or more for investment. In addition, while marketing material in this email could be interpreted as including forward-looking statements, those statements can only be read within the context of disclaimers contained in the Offering.*

**From:** Paul Andronico <paul@andronico.com>
**Sent:** Friday, December 2, 2022 2:47 PM
**To:** Isabella Gargano <isabella.gargano@hughescapital.com>; Adam Johnson <Adam@hughescapital.com>; Heather Hull <heather.hull@hughescapital.com>
**Cc:** Jake Andronico <jake@andronico.com>
**Subject:** Buy-Back and Withdrawals

Isabella, Heather and Adam, we have decided to diversify our family's investment portfolio and reduce our current over-focus on the single family housing market. Accordingly, we are writing for the following purposes:

1. To exercise our right in the attached "Side Letter of Guardian Fund Secured Investment Agreement" to have Guardian Fund, LLC buy back the 12 properties purchased by the Andronico Family Partnership LP in January 2022, which are listed in the attached "Transaction Breakdown" dated September 30, 2022.

# **EXHIBIT 7**

# **EXHIBIT 7**

**From:** **Hughes Capital Investing** invest@hughescapital.com  📎
**Subject:** [Important] Updates on Guardian Buy and Hold Fund and Secured Portfolio Properties
**Date:** December 7, 2022 at 5:09 AM
**To:** naandronikos@gmail.com
**Cc:** paul@andronico.com



Dear Nikos,

The year 2022 has been one of growth as well as new challenges at Hughes Private Capital.  We've been fortunate to be able to continue to grow our capital fund (Guardian aka The Buy & Hold Fund) to serve more investors.  At the same time, some of the headwinds of the economic turmoil have had our attention.  Specifically, the rapid increase in interest rates as the Federal Reserve fights against the unprecedented 40-year high in inflation.  Additionally, consumers and businesses alike have been forced to deal with supply cost increases, labor shortages and delays in just about everything that involves government, regulation and compliance (including for us, a large backlog in evictions for non-paying tenants).

Unlike the Covid shutdown, the economic volatility will likely be with us longer than a few months. Building and maintaining resiliency has always been our standard.  To the effect of that goal, we have continued to evolve and add A-players to our team.  In May of this year, we were fortunate to hire Aaron Noe as our new CEO, bringing his broad experience, financial and operational expertise which made American Homes 4 Rent (AMH) the market leader in the single-family residential space.  He was instrumental in growing AMH from 0 to over 50,000 homes which became a publicly traded R.E.I.T. with a market cap of over $13 billion.

In the short time of six months, Aaron has worked tirelessly on improving our systems and operations, ensuring we are on track and moving towards achieving a very efficient and well-run investment portfolio.  He has added multiple A-players to our teams such as Andrew Palmer, our new CFO as of July, who has improved our internal controls, property management, data reporting systems, and accounting processes.  While improving our systems, we have discovered how the past economic headwinds, including labor shortages, Covid restrictions, and the eviction moratorium, impacted our overall performance and fund returns.

As we worked through our Covid-related backlog of evictions, we believed we were making significant progress, but our new data showed a much different story.  There are still a significant number of tenants that need to pay rent and must be evicted.  This exacerbates the problem because evictions are an expensive and slow process.  Once the tenant is legally evicted, the home is not usually left in the best shape and needs costly and time-consuming rehab before it's ready to be rented again.

These factors and others have significantly impaired the portfolio's net operating income through high vacancies, uncollectable revenue, and more-than-expected capital expenditure.  A large part of that has been the master leases with the Secured Portfolio properties.  The master leases are now significantly impairing Guardian members' share value due to the properties not producing enough net operating income to pay the agreed-upon set monthly rent.

Aaron and Andrew, amid their review and new financial forecasts, brought to the attention of our leadership team the need to restructure our current fund model due to the economic headwinds of 2022 and what we expect to face in 2023 and beyond.

In short, the fund portfolio's net operating income has been shrinking.  To remedy this, we have enacted a stabilization plan that will take approximately 18 to 24 months to execute and requires a capital infusion into the homes in the portfolio.

**<u>For capital preservation, we will take the following steps</u>.  We will immediately close Guardian from new investments and redemptions.  The fund will reopen at such time that the stabilization plan is secure.  During the first 90 days of the stabilization period, we will suspend the monthly net profit distribution in Guardian as well as the master lease payments from Guardian for the Secured Portfolio homes.**

After the first 90 days, we will reassess the plan and reinstate the monthly net profit distribution in Guardian and lease payments for the Secured Portfolio homes based on the net profits from the portfolio.

Currently, we expect that payment to be 1% to 2% annualized for 12 months, 3% to 4% annualized for the following 12 months, and then 4% to 6% annualized thereafter.  These returns and timelines are estimates.  We will continue to update you regularly.

Our firm's primary objective has always been to preserve our investors' capital and position the portfolio to deliver long-term stable cash disbursements.  We strongly believe in our investment thesis in the affordable housing sector.  We do not look at real estate as a short-term trade but as a long-term wealth-building vehicle.  The fund re-structure will ensure our fund's financial stability through the current recession and economic downturn.

We know that you have questions, and we will be fully transparent as we go through this transition period.

We have a Zoom meeting Friday, December 9th, at 10:00 am PST.  We will go over the plan and answer questions.  You can pre-send in your questions to Ashley@HughesCapital.com or just reply to this email.  If you are unable to attend the live presentation, a recording will be sent to you for your review.  We will send the link to register for the Zoom call in an upcoming email.

In addition, after the Zoom call, we have set up a calendar where you can schedule an appointment to have any further questions answered.  We will share the link to schedule a call after the Zoom meeting.

We will send regular updates to address common questions and inform you of progress.

---

## IMPORTANT NOTICE FOR MORTGAGE HOLDERS

You will need to continue making your mortgage payments.  With the suspension of your lease payments, if you are auto-paying them out of the account that the lease payments were deposited, you will need to be sure the account is funded to cover your payments.

If you are unable to fund your mortgage payments, contact us at (775) 297-4970 or email Invest@HughesCapital.com.

---

Sincerely,
Your Investment Fund Managers
Greg Hughes & Steve Sixberry

# **EXHIBIT 8**

# **EXHIBIT 8**

# *Robertson, Johnson, Miller & Williamson*

### ATTORNEYS AND COUNSELORS AT LAW

G. DAVID ROBERTSON (NV & CA)
KIRK C. JOHNSON (NV, AZ & CO)
JARRAD C. MILLER (NV & CA)
RICHARD D. WILLIAMSON (NV & CA)
ANTHONY G. ARGER (NV & CA)
SAMANTHA J. REVIGLIO (NV)
BRIANA N. COLLINGS (NV & CA)

Of Counsel ROSS E. DE LIPKAU (NV)
Of Counsel HON. PATRICIA LYNCH (Ret.) (NV)

50 W. LIBERTY ST. SUITE 600
RENO, NEVADA 89501
TELEPHONE: (775) 329-5600
FACSIMILE: (775) 348-8300
www.nvlawyers.com

LAS VEGAS OFFICE:
HUGHES CENTER
3753 HOWARD HUGHES PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89169
TELEPHONE: (702) 483-5800

**REPLY TO: RENO OFFICE**

January 31, 2023

**<u>VIA CERTIFIED MAIL, RRR</u>**
Guardian Fund, LLC
5440 Louie Lane
Suite: 106
Reno, NV 89511
Attn: Greg Hughes

**<u>VIA CERTIFIED MAIL, RRR</u>**
Pino Nicholson PLLC
99 South New York Avenue
Winter Park, Florida 32789
Attn: Laurence J. Pino

> Re:  *Notice of Termination of Lease Agreement dated December 6, 2021 (the "Lease")
> by and between Andronico Family Partnership, L.P., a California limited
> partnership ("Lessor") and Guardian Fund, LLC, a Nevada limited liability
> company ("Lessee")*

Dear Gentlemen:

As you know, we represent the Lessor under the above-referenced Lease. All capitalized terms used but not defined in this letter shall have the meanings given to them in the Lease.

As you also know, Lessee is in default of both the Lease and the parties' related Sale and Buy-Back Agreement. In fact, despite our prior requests, Lessee has refused to comply with its obligations under those agreements. Lessee has also failed to properly maintain and manage the 12 properties that it and its affiliates convinced Lessor to purchase. Accordingly, without waiving any claims or damages that Lessor has against Lessee, its officers, and its affiliates, Lessor will attempt to mitigate some of the damages that those parties have caused.

Guardian Fund, LLC
January 31, 2023
Page 2

     Accordingly, this letter shall constitute a 30-day notice of termination of the Lease pursuant to Section 1(B) of the Lease with respect to all 12 homes comprising the Real Property.

     We demand that you promptly provide us with complete copies of the leasing files for the 12 homes comprising the Real Property, including but not limited to copies of all leases and amendments, copies of all notices and other correspondence (including eviction filings and other related paperwork), and full accounting and transaction ledgers.

     Without limiting the foregoing, we specifically demand that you provide Lessor with an accounting of all security deposits held by Lessee with respect to the Real Property, including the amount of all security deposits previously received by Lessee in connection with the Real Property, and any disbursements and replenishments of such security deposit funds.

     We further demand that you pay Lessor the amount of security deposits currently held by you in connection with the leasing of the Real Property upon the termination of the Lease. Moreover, we demand that you provide Lessor with all keys, codes, and other means of access to any portion of the Real Property, along with any and all plans, specifications, and other documents pertaining to any of the Real Property.

     Again, nothing in this letter shall constitute a waiver of any claims or other rights Lessor has under the Lease, under any related agreements, or at law or in equity. Rather, Lessor intends to hold Lessee and all other responsible persons and entities accountable for the damages they have inflicted upon Lessor.

                  Sincerely,

                  ROBERTSON, JOHNSON,
                  MILLER & WILLIAMSON

                  Richard D. Williamson, Esq.

cc:    Client (via email)

# **EXHIBIT 9**

# **EXHIBIT 9**



March 7, 2023

Richard D. Williamson, Esq.
Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno, Nevada 89501

Andronico Family Partnership LP
Robin Andronico and Paul Andronico
774 Mays Blvd Ste 10-602
Incline Village, Nevada 89451

Re: Termination of Lease Agreement

Dear Mr. And Mrs. Andronico,

This letter is to inform you that we have successfully offboarded the following properties from Krch Realty's property management systems effective March 7, 2023.

Offboarding Properties:
1. 5129 Arrow Ave Anniston, AL 36206 | Occupied
2. 7209 3rd Ave. N Birmingham AL 35206 | Occupied
3. 1705 Exeter Ave Bessemer AL 35020 | Occupied
4. 417 Lapsley Ave Anniston AL 36207 | Vacant – Construction Managed
5. 2406 Avenue J Birmingham, AL 35218 | Occupied
6. 9721 Midland Blvd Overland, MO 63114 | Vacant – In Construction
7. 2811 Brazeau Ave. Brentwood MO 63144 | Vacant – Rent Ready
8. 6621 Chamberlain Ave. ST. Louis MO 63130 | Occupied – In Eviction
9. 6108 Alaska Ave. S. Louis MO 63111 | Occupied | Prepaid rent $2,050.08 for March and April
10. 1467 Columbia Hills Ct. St. Louis, MO 63138 | Occupied
11. 5635 College Ave St. Louis, MO 63136 | Vacant – In Construction
12. 8109 Cler Ave St. Louis, MO 63114 | Occupied

All tentants have been notified and sent your contact information as the new property managment company. Security deposit checks will be sent via certified mail within 3 business days to you at 50 West Liberty Street, Suite 600 Reno, Nevada 89501.

Access to any documents that we have on file can be found at this link until May 30, 2023.
https://hughescapital.box.com/s/fv4bim3r9kty5y82fuapj2ehn7x4tak4

Below is a list of the following deadlines for services that require action:

- **Deed and Property Taxes |** Please contact the assessor's office for each of your properties to update the mailing address on the deed and for property taxes no later than **March 31, 2023.**

- **Insurance |** Insurance policies on your properties will be cancelled effective **March 10th, 2023**. Our management of any additional insurance policies will also be cancelled effective **March 10th, 2023.**

- **Rently door access |** There are Rently door knobs on most of the properties will be deactivated on **March 10,2023** at 5:00PM PST.
  - **Please note this will mean no access for the tenats until new subscriptions are activated.**

Hughes Private Capital
5440 Louie Lane, Suit e 106  |  Reno, Nevada 89511
775.297.4970  |  Invest@HughesCapital.com



- To reactive the subscriptions on those doors you will need to contact Zach Gouldhiane at Zach@Rently.com or Pini Lackner at pini@rently.com to establish a subscription. Their phone number is 805-392-3351.
- Below are the details for your Rently HUBs that you will need to establish a subscription:
  1. 5129 Arrow Ave Anniston, AL 36206| HUB #81033
  2. 7209 3rd Ave. N Birmingham AL 35206| HUB #75143
  3. 1705 Exeter Ave Bessemer AL 35020| HUB #81697
  4. 417 Lapsley Ave Anniston AL 36207| *No keys, no Lockbox and no HUB. Owner will need to contact a locksmith*
  5. 2406 Avenue J Birmingham, AL 35218| HUB #81032
  6. 9721 Midland Blvd Overland, MO 63114| HUB #48807
  7. 2811 Brazeau Ave. Brentwood MO 63144| HUB #71086
  8. 6621 Chamberlain Ave. ST. Louis MO 63130| HUB #72361
  9. 6108 Alaska Ave. S. Louis MO 63111| HUB #72828
  10. 1467 Columbia Hills Ct. St. Louis, MO 63138 | HUB  #72106
  11. 5635 College Ave St. Louis, MO 63136 | HUB #78173
  12. 8109 Cler Ave St. Louis, MO. 63114 | HUB #37697

- **Utilities** | Attached you will find a utility contact list for the properties.
  - Please contact the companies to reestablish connection so there is no disruption in the tenant's services.

**1.    5129 Arrow Ave Anniston, AL 36206**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: Will be disconnected 3/10/23. Please call and set up services prior to that date.

**2.    7209 3rd Ave. N Birmingham AL 35206**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: Will be disconnected 3/10/23. Please call and set up services prior to that date.

**3.    1705 Exeter Ave Bessemer AL 35020**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: This is established in the tenant's name, so no action needs to be taken at this time.

**4.    417 Lapsley Ave Anniston AL 36207**
- Electric: Will be disconnected 3/10/23. Please call and set up services prior to that date.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: This is established in the tenant's name, so no action needs to be taken at this time.

**5.    2406 Avenue J Birmingham, AL 35218**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: Will be disconnected 3/10/23. Please call and set up services prior to that date.

**6.    9721 Midland Blvd Overland, MO 63114**
- Electric: Service is already disconnected
- Gas: Service is already disconnected
- Water/Sewer: Will be disconnected 3/10/23. Please call and set up services prior to that date.

Hughes Private Capital
5440 Louie Lane, Suit e 106  |  Reno, Nevada 89511
775.297.4970  |  Invest@HughesCapital.com



7. **2811 Brazeau Ave. Brentwood MO 63144**
- Electric: Will be disconnected 3/10/23. Please call and set up services prior to that date.
- Gas: Will be disconnected 3/10/23. Please call and set up services prior to that date.
- Water/Sewer: Will be disconnected 3/10/23. Please call and set up services prior to that date.

8. **6621 Chamberlain Ave. ST. Louis MO 63130**
- Electric: Will be disconnected 3/10/23. Please call and set up services prior to that date.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: This is established in the tenant's name, so no action needs to be taken at this time.

9. **6108 Alaska Ave. S. Louis MO 63111**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: This is established in the tenant's name, so no action needs to be taken at this time.

10. **1467 Columbia Hills Ct. St. Louis, MO 63138**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: This is established in the tenant's name, so no action needs to be taken at this time.

11. **5635 College Ave St. Louis, MO 63136**
- Electric: Will be disconnected 3/10/23. Please call and set up services prior to that date.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: Will be disconnected 3/15/23. Please call and set up services prior to that date.

12. **8109 Cler Ave St. Louis, MO 63114**
- Electric: This is established in the tenant's name, so no action needs to be taken at this time.
- Gas: This is established in the tenant's name, so no action needs to be taken at this time.
- Water/Sewer: This is established in the tenant's name, so no action needs to be taken at this time.

- **MISC:**
  - Any mail correspondence, bills, or otherwise that we receive on your behalf over the next 90 days will be uploaded to the Box Link below:
  - https://hughescapital.box.com/s/fv4bim3r9kty5y82fuapj2ehn7x4tak4

    - **Please check this link often to be sure nothing gets missed.**

Feel free to reach out to us with any questions or concerns.

Respectfully,

**Nathan Edwards, MBA**
**Senior Investor Relations Advisor**
Email: nate.edwards@hughescapital.com **| Phone: 775-446-3802**
**Mailing Address:** 5440 Louie Lane, Suite: 106, Reno, NV 89511
**Investor Relations Office:** 5440 Louie Lane, Suite: 102, Reno, NV 89511

Hughes Private Capital
5440 Louie Lane, Suite 106  |  Reno, Nevada 89511
775.297.4970  |  Invest@HughesCapital.com

# **EXHIBIT 10**

# **EXHIBIT 10**

**2023032700130**

CERTIFIED-FILED FOR RECORD
3/27/2023   7:08:39AM

GERALD E. SMITH
RECORDER OF DEEDS
COUNTY OF ST. LOUIS, MISSOURI

PAGES: 6
RECORDING FEE: $36.00

THIS DOCUMENT WAS ERECORDED

GERALD E. SMITH, RECORDER OF DEEDS
ST. LOUIS COUNTY MISSOURI
41 S. CENTRAL AVE., CLAYTON, MO 63105-1799

Type of Instrument:    RELEASE

Grantor:    GUARDIAN FUND LLC

Grantee:    HUGHES PRIVATE CAPITAL LLC

**NOTE:** I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to the **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected** is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, **the ATTACHED DOCUMENT governs.** Only the DOCUMENT NUMBER, the DATE and TIME of filing for record of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI          )
                                            SS.
COUNTY OF ST. LOUIS       )

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of __6__ pages, (this page inclusive), was filed for record in my office on the __27__ day of __March__ __2023__ at __7:08 am__ and is truly recorded as the document number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.



_____
**SLP**
**Deputy Recorder**

_Gerald E. Smith_

_____
**Recorder of Deeds**
**St. Louis County, Missouri**

20,209,846

Prepared By and Return To:
Pino Nicholson, PLLC
99 S. New York Avenue
Winter Park, FL 32789

## TERMINATION & RELEASE OF DEED RESTRICTION

This Termination of Deed Restriction is made this 14th day of March, 2023, by Guardian Fund, LLC, a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("Guardian") and Hughes Private Capital, LLC a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("HPC") (Collectively, Guardian and HPC shall be referred to as "Releasors").

Guardian, as the Grantor, granted all its right, title, and interest which Releasor may have had in and to the following described property, subject to a Deed Restriction - Right of First Offer to HPC, all of which was filed in the Public Records with respect to the property.

**WITNESSETH**, that Releasor, for and in consideration of the sum of ONE AND NO/100 DOLLARS ($1.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby remise, relinquish, release, and terminate their Deed Restriction - Right of First Offer to HPC on the following property:

**Common Address:** 9721 Midland Boulevard, Overland, Missouri, 63114

**Parcel Identification Number**: 14L-24-0185

**Legal Description**: Parts of Lots 1 and 2 of Natural Terrace Addition, a Subdivision in St. Louis County, Missouri, as per plat thereof recorded in Plat Book 8 Page 50 of the St. Louis County Records, described as: Beginning at a point in the North line of Midland Boulevard, distant 243.375 feet East of the East line of Tennyson Avenue; thence North 146.05 feet to a point in the South line of property conveyed to Benjamin W. Hogan and wife by deed recorded in Book 602 Page 357, distant 20.18 feet West of the East line of Lot 2; thence East along said South line of property of Benjamin W. Hogan and wife 20.18 feet to the dividing line between Lots 1 and 2 of said Subdivision; thence North along said dividing line 100.00 feet to a point; thence East parallel with the North line of Lot 1, 20.40 feet to a point; thence South parallel with the dividing line between Lots 1 and 2, 228.28 feet to a point in the North line of Midland Boulevard; thence West along the North line of Midland Boulevard 44.32 feet to the place of beginning, according to survey by Richard M. Van Cleve on July 8 1938.

**Common Address:** 2811 Brazeau Avenue, Brentwood, Missouri, 63144

**Parcel Identification Number:** 21K-23-0172

**Legal Description:** Lot 22 in Block 1 of Maddenville, a subdivision in St. Louis County, Missouri, according to the plant thereof recorded in Plat Book 5, Page 6 of the St. Louis County Records.

**Common Address:** 6621 Chamberlain Avenue, St. Louis, Missouri, 63130

**Parcel Identification Number:** 17H-11-0790

**Legal Description:** Lot 2 in Block 1 of Balson's Olive Street Addition, a Subdivision in the County of St. Louis, State of Missouri, according to the plat thereof recorded in Plat Book 5 Page 63 of the St. Louis County/Records.

**Common Address:** 6108 Alaska Avenue, St. Louis, Missouri, 63111

**Parcel Identification Number:** 2931-00-0140-0

**Legal Description:** Lot 15 in Block 6 of B. Guion's Subdivision and in City Block 2931 of the City of St. Louis fronting 25 feet on the East line of Alaska Avenue by a depth Eastwardly of 125 feet to an Alley

**Common Address:** 1467 Columbia Hills Court, St. Louis, Missouri, 63138

**Parcel Identification Number:** 08E-63-0798

**Legal Description:** Lot 2 of Columbia Hills addition, as per thereof recorded in Plat Book 167 Page 34 of the St. Louis County Records.

**Common Address:** 5635 College Avenue, St. Louis, Missouri, 63136

**Parcel Identification Number:** 14G-53-1175

**Legal Description:** The Northern half of Lots 213 and 214 and the Eastern 1 foot of the Western 4 feet of the Southern half of Lot 213 in Block 14 of Jenwood Third Subdivision, a subdivision in St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 19 Page 52 of the St. Louis County Records.

**Common Address:** 8109 Cler Avenue St. Louis, Missouri, 63114

**Parcel Identification Number:** 14J-11-0091

**Legal Description:** A tract of land in Lot 4 of the Subdivision of Samuel Cler Estate in Section 22, Township 46 North, Range 6 East, in St. Louis County, Missouri, and described as follows: Starting at an old stone in the Southwest corner of Lot 4 of said Samuel Cler Estate, thence South 87 degrees 47 minutes East 502.87 feet to an iron pipe for the point of beginning for herein described tract, thence North 0 degrees 13 minutes East 135 feet to an iron pipe, thence South 89 degrees 47 minutes East 12.18 feet to an iron pipe, thence South 45 degrees 41 minutes East 113.54 feet to an iron pipe, thence South 0 degrees 30 minutes West 56 feet to an old stone, -thence North 89 degrees 47 minutes West 93.60 feet to an iron pipe, which is the point of beginning, according to survey executed by Sterling R. Kennedy, Civil Engineering on January 8, 1943, 8109 Cler.

**In Witness Whereof**, both Releasors have signed and sealed this present the day and year first above written.

Signed, sealed, and delivered in our presence:

Witness Printed Name: _Karilyn Robinson_

Witness Printed Name: _Isabella Gargano_

**Guardian Fund, LLC**

By: _____

    Greg Hughes, Managing Member

Hughes Private Capital, LLC

By: _____

    Steve Sixberry, Manager

4 of 5

STATE OF Nevada )
) ss.
COUNTY OF Washoe )

The foregoing instrument was acknowledged before me by Greg Hughes, authorized signatory of Guardian Fund, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this 15st day of March 202 3, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: 7/21/2024

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 - Expires July 21, 2024

Notary Public

STATE OF Nevada )
) ss.
COUNTY OF Washoe )

The foregoing instrument was acknowledged before me by Steven Sixberry, authorized signatory of Hughes Private Capital, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this 15st day of March 202 3, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: 7/21/2024

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 - Expires July 21, 2024

Notary Public

County Division Code: AL039 Inst. # 2023028007 Pages: 1 of 4  I certify this instrument filed on:  3/27/2023 8:38 AM
Doc: REST Judge of Probate Jefferson County, AL Rec: $25.00
Clerk: DRBESS

Prepared By and Return To:
Pino Nicholson, PLLC
99 S. New York Avenue
Winter Park, FL 32789

## TERMINATION & RELEASE OF DEED RESTRICTION

This Termination of Deed Restriction is made this 14th day of March, 2023, by Guardian Fund, LLC, a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("Guardian") and Hughes Private Capital, LLC a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("HPC") (Collectively, Guardian and HPC shall be referred to as "Releasors").

Guardian, as the Grantor, granted all its right, title, and interest which Releasor may have had in and to the following described property, subject to a Deed Restriction - Right of First Offer to HPC, all of which was filed in the Public Records with respect to the property.

**WITNESSETH**, that Releasor, for and in consideration of the sum of ONE AND NO/100 DOLLARS ($1.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby remise, relinquish, release, and terminate their Deed Restriction - Right of First Offer to HPC on the following property:

**Common Address**: 7209 3rd Avenue, North Birmingham, Alabama, 35206

**Parcel Identification Number**: 23 00 15 2 014 005.000

**Legal Description**: Lot 15, Block 4-B, in the Survey of East Lake Land Company, as shown by Map recorded in Volume 1, Page 217, in the records of Maps and Surveys in the Office of the Judge of Probate of Jefferson County, Alabama.

**Common Address**: 1705 Exeter Avenue, Bessemer, Alabama, 35020

**Parcel Identification Number**: 38 00 10 3 008 009.000

**Legal Description**: Lot 10, Block 78, according to the Map and Survey of Bessemer Land & Improvement Company, as recorded in Map Book 5, Page 75, in the Office of the Judge of Probate, Jefferson County, Alabama. Subject property situated in the Bessemer Division.

**Common Address:** 2406 Avenue J, Birmingham, Alabama, 35218

**Parcel Identification Number**: 29 00 06 2 014 009.000

**Legal Description**: Lot 21 and Lot 22, in Block 24-1, according to Easley Lan Company's Fifth Addition, as recorded in Map Book 4, Page 80, in the Office of the Judge of Probate of Jefferson County, Alabama.

**In Witness Whereof**, both Releasors have signed and sealed this present the day and year first above written.

Signed, sealed, and delivered in our presence:

**Guardian Fund, LLC**

By: _____

Greg Hughes, Managing Member

Witness Printed Name: *Kaitlyn Robinson*

Hughes Private Capital, LLC

By: _____

Steve Sixberry, Manager

Witness Printed Name: *Isabella Gargano*

3 of 4

STATE OF _Nevada_ )
 ) ss.
COUNTY OF _Washoe_ )

The foregoing instrument was acknowledged before me by _Greg Hughes_, authorized signatory of Guardian Fund, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this _15th_ day of _March_ 2023, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: _7/21/2024_

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 - Expires July 21, 2024

_____
Notary Public


STATE OF _Nevada_ )
 ) ss.
COUNTY OF _Washoe_ )

The foregoing instrument was acknowledged before me by _Steven Sixberry_, authorized signatory of Hughes Private Capital, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this _15th_ day of _March_ 2023, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: _7/21/2024_

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 - Expires July 21, 2024

_____
Notary Public

Prepared By and Return To:
Pino Nicholson, PLLC
99 S. New York Avenue
Winter Park, FL 32789

## TERMINATION & RELEASE OF DEED RESTRICTION

This Termination of Deed Restriction is made this 14th day of March, 2023, by Guardian Fund, LLC, a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("Guardian") and Hughes Private Capital, LLC a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("HPC") (Collectively, Guardian and HPC shall be referred to as "Releasors").

Guardian, as the Grantor, granted all its right, title, and interest which Releasor may have had in and to the following described property, subject to a Deed Restriction - Right of First Offer to HPC, all of which was filed in the Public Records with respect to the property.

**WITNESSETH**, that Releasor, for and in consideration of the sum of ONE AND NO/100 DOLLARS ($1.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby remise, relinquish, release, and terminate their Deed Restriction - Right of First Offer to HPC on the following property:

**Common Address:** 7209 3rd Avenue, North Birmingham, Alabama, 35206

**Parcel Identification Number**: 23 00 15 2 014 005.000

**Legal Description**: Lot 15, Block 4-B, in the Survey of East Lake Land Company, as shown by Map recorded in Volume 1, Page 217, in the records of Maps and Surveys in the Office of the Judge of Probate of Jefferson County, Alabama.

**Common Address:** 1705 Exeter Avenue, Bessemer, Alabama, 35020

**Parcel Identification Number**: 38 00 10 3 008 009.000

**Legal Description**: Lot 10, Block 78, according to the Map and Survey of Bessemer Land & Improvement Company, as recorded in Map Book 5, Page 75, in the Office of the Judge of Probate, Jefferson County, Alabama. Subject property situated in the Bessemer Division.

1 of 4

**Common Address:** 2406 Avenue J, Birmingham, Alabama, 35218

**Parcel Identification Number**: 29 00 06 2 014 009.000

**Legal Description**: Lot 21 and Lot 22, in Block 24-1, according to Easley Lan Company's Fifth Addition, as recorded in Map Book 4, Page 80, in the Office of the Judge of Probate of Jefferson County, Alabama.

**In Witness Whereof**, both Releasors have signed and sealed this present the day and year first above written.

Signed, sealed, and delivered in our presence:

Witness Printed Name: _Kaitlyn Robinson_

Witness Printed Name: _Isabella Gargano_

**Guardian Fund, LLC**

By: _____

Greg Hughes, Managing Member

Hughes Private Capital, LLC

By: _____

Steve Sixberry, Manager

STATE OF _Nevada_ )
 ) ss.
COUNTY OF _Washoe_ )

The foregoing instrument was acknowledged before me by _Greg Hughes_, authorized signatory of Guardian Fund, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this _15th_ day of _March_ 2023, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: _7/21/2024_

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 - Expires July 21, 2024

_____
Notary Public


STATE OF _Nevada_ )
 ) ss.
COUNTY OF _Washoe_ )

The foregoing instrument was acknowledged before me by _Steven Sixberry_, authorized signatory of Hughes Private Capital, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this _15th_ day of _March_ 2023, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: _7/21/2024_

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 - Expires July 21, 2024

_____
Notary Public

4 of 4

```
DEED    3315   656
Recorded In Above Book and Page
03/27/2023 10:29:02 AM
Alice K. Martin
Judge of Probate
Calhoun County, Alabama

Mental Health Fee $ 4.00
Recording Fee $ 15.00
TOTAL $ 19.00
```

Prepared By and Return To:
Pino Nicholson, PLLC
99 S. New York Avenue
Winter Park, FL 32789

## TERMINATION & RELEASE OF DEED RESTRICTION

This Termination of Deed Restriction is made this 14th day of March, 2023, by Guardian Fund, LLC, a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("Guardian") and Hughes Private Capital, LLC a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("HPC") (Collectively, Guardian and HPC shall be referred to as "Releasors").

Guardian, as the Grantor, granted all its right, title, and interest which Releasor may have had in and to the following described property, subject to a Deed Restriction - Right of First Offer to HPC, all of which was filed in the Public Records with respect to the property.

**WITNESSETH**, that Releasor, for and in consideration of the sum of ONE AND NO/100 DOLLARS ($1.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby remise, relinquish, release, and terminate their Deed Restriction - Right of First Offer to HPC on the following property:

**Common Address:** 5129 Arrow Avenue, Anniston, Alabama, 36206

**Parcel Identification Number:** 18-04-19-1-014-003.000

**Legal Description:** The North 30.22 feet of Lot 4, all of Lot 5 and the South 15.42 feet of Lot 6, all in Block 1 according to the First Addition to Bunny Fields Subdivision recorded in Plat Book E, Pages 64 and 65, the Probate Office of Calhoun County, Alabama, situated lying and being in Calhoun County, Alabama.

Recorded In DEED BK 3315 PG 657, 03/27/2023 10:29:02 AM
Alice K. Martin, Judge of Probate, Calhoun County, Alabama

**In Witness Whereof**, both Releasors have signed and sealed this present the day and year first above written.

Signed, sealed, and delivered in our presence:

Witness Printed Name: _Kaitlyn Robinson_

Witness Printed Name: _Isabella Crangaro_

**Guardian Fund, LLC**

By: _____

Greg Hughes, Managing Member

Hughes Private Capital, LLC

By: _____

Steve Sixberry, Manager

Recorded In DEED BK 3315 PG 658, 03/27/23 10:29:02 AM
Alice K. Martin, Judge of Probate, Calhoun County, Alabama

STATE OF _Nevada_ )
)  ss.
COUNTY OF_Washoe_ )

The foregoing instrument was acknowledged before me by _Greg Hughes_,
authorized signatory of Guardian Fund, LLC, personally known to me or produced
_____ as identification, either ☒physically present or ☐ appeared
virtually/electronically, this _18th_ day of _March_ 202_3_, and executed this Termination
of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: _7|21|2024_

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 · Expires July 21, 2024

_Heather Hull_
Notary Public

STATE OF _Nevada_ )
)  ss.
COUNTY OF _Washoe_ )

The foregoing instrument was acknowledged before me by _Steven Sixberry_,
authorized signatory of Hughes Private Capital, LLC, personally known to me or produced
_____ as identification, either ☒physically present or ☐ appeared
virtually/electronically, this _18th_ day of _March_ 202_3_, and executed this Termination
of Lease, as Lessor, for the purposes declared therein.

WITNESS my hand and official seal.

My commission expires: _7|21|2024_

Seal:

HEATHER HULL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-7695-2 · Expires July 21, 2024

_Heather Hull_
Notary Public

3 of 3

Prepared By and Return To:
Pino Nicholson, PLLC
99 S. New York Avenue
Winter Park, FL 32789

## TERMINATION & RELEASE OF DEED RESTRICTION

This Termination of Deed Restriction is made this 14th day of March, 2023, by Guardian Fund, LLC, a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("Guardian") and Hughes Private Capital, LLC a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("HPC") (Collectively, Guardian and HPC shall be referred to as "Releasors").

Guardian, as the Grantor, granted all its right, title, and interest which Releasor may have had in and to the following described property, subject to a Deed Restriction - Right of First Offer to HPC, all of which was filed in the Public Records with respect to the property.

**WITNESSETH**, that Releasor, for and in consideration of the sum of ONE AND NO/100 DOLLARS ($1.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby remise, relinquish, release, and terminate their Deed Restriction - Right of First Offer to HPC on the following property:

**Common Address:** 5129 Arrow Avenue, Anniston, Alabama, 36206

**Parcel Identification Number:** 18-04-19-1-014-003.000

**Legal Description:** The North 30.22 feet of Lot 4, all of Lot 5 and the South 15.42 feet of Lot 6, all in Block 1 according to the First Addition to Bunny Fields Subdivision recorded in Plat Book E, Pages 64 and 65, the Probate Office of Calhoun County, Alabama, situated lying and being in Calhoun County, Alabama.

1 of 3

**In Witness Whereof**, both Releasors have signed and sealed this present the day and year first above written.

Signed, sealed, and delivered in our presence:

_____

Witness Printed Name: _Kaitlyn Robinson_

_____

Witness Printed Name: _Isabella Giangrande_

**Guardian Fund, LLC**

By: _____

Greg Hughes, Managing Member

Hughes Private Capital, LLC

By: _____

Steve Sixberry, Manager

2 of 3

STATE OF _Nevada_ )
COUNTY OF _Washoe_ ) ss.

    The foregoing instrument was acknowledged before me by _Greg Hughes_, authorized signatory of Guardian Fund, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this _1st_ day of _March_ 202_3_, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

    WITNESS my hand and official seal.

    My commission expires: _7/21/2024_

    Seal:

> **HEATHER HULL**
> Notary Public - State of Nevada
> Appointment Recorded in Washoe County
> No: 08-7695-2 - Expires July 21, 2024

_Heather Hull_
Notary Public

STATE OF _Nevada_ )
COUNTY OF _Washoe_ ) ss.

    The foregoing instrument was acknowledged before me by _Steven Sixberry_, authorized signatory of Hughes Private Capital, LLC, personally known to me or produced _____ as identification, either ☒ physically present or ☐ appeared virtually/electronically, this _1st_ day of _March_ 202_3_, and executed this Termination of Lease, as Lessor, for the purposes declared therein.

    WITNESS my hand and official seal.

    My commission expires: _7/21/2024_

    Seal:

> **HEATHER HULL**
> Notary Public - State of Nevada
> Appointment Recorded in Washoe County
> No: 08-7695-2 - Expires July 21, 2024

_Heather Hull_
Notary Public

DEED     3316    534                    Mental Health Fee $ 4.00
Recorded In Above Book and Page        Recording Fee $ 15.00
04/14/2023 11:52:50 AM                 TOTAL $ 19.00
Alice K. Martin
Judge of Probate
Calhoun County, Alabama

Prepared By and Return To:
Pino Nicholson, PLLC
99 S. New York Avenue
Winter Park, FL 32789

## TERMINATION & RELEASE OF DEED RESTRICTION

This Termination of Deed Restriction is made this 30th day of March, 2023, by Guardian Fund, LLC, a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("Guardian") and Hughes Private Capital, LLC a Nevada Limited Liability Agreement having an address of 5440 Louie Lane, Ste. 106, Reno, NV, 89511 ("HPC") (Collectively, Guardian and HPC shall be referred to as "Releasors").

Guardian, as the Grantor, granted all its right, title, and interest which Releasor may have had in and to the following described property, subject to a Deed Restriction - Right of First Offer to HPC, all of which was filed in the Public Records with respect to the property.

**WITNESSETH**, that Releasor, for and in consideration of the sum of ONE AND NO/100 DOLLARS ($1.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby remise, relinquish, release, and terminate their Deed Restriction - Right of First Offer to HPC on the following property:

**Common Address:** 417 Lapsley Avenue, Anniston, Alabama, 36207

**Parcel Identification Number:** 21-03-08-3-001-042.000

**Legal Description:** The North 8 feet of Lot 19, all of Lot 20 and the South 21 feet of Lot 21, as shown on the Map S.F., Boozers Resubdivision of the Pines and Block B and C of Herrons Addition as recorded in  that certain Plat recorded in the Office of Probate Judge of Calhoun County, Alabama, in Plat Book B at Page 40, situated, lying and being in Calhoun County, Alabama.

Recorded In DEED BK 3316 PG 535, 04/14/2023 11:52:50 AM
Alice K. Martin, Judge of Probate, Calhoun County, Alabama

**In Witness Whereof**, both Releasors have signed and sealed this present the day and year first above written.

Signed, sealed, and delivered in our presence:

_____

Witness Printed Name: _Isabella Gargany_

_____

Witness Printed Name: _Alexis Spencer_

**Guardian Fund, LLC**

By: _____

    Greg Hughes, Managing Member

Hughes Private Capital, LLC

By: _____

    Steve Sixberry, Manager

Recorded In DEED BK 3316 PG 536, 04/14/2023 11:52:50 AM
Alice K. Martin, Judge of Probate, Calhoun County, Alabama

STATE OF _Nevada_ )
                    ) ss.
COUNTY OF _Washoe_ )

      The foregoing instrument was acknowledged before me by _Greg Hughes_,
authorized signatory of Guardian Fund, LLC, personally known to me or produced
_____ as identification, either ☒ physically present or ☐ appeared
virtually/electronically, this _5th_ day of _April_ 202_3_, and executed this Termination
of Lease, as Lessor, for the purposes declared therein.

      WITNESS my hand and official seal.

      My commission expires: _7/21/2024_

      Seal:

      **HEATHER HULL**
      Notary Public - State of Nevada
      Appointment Recorded in Washoe County
      No: 08-7695-2 - Expires July 21, 2024

                         Notary Public

STATE OF _Nevada_ )
                    ) ss.
COUNTY OF _Washoe_ )

      The foregoing instrument was acknowledged before me by _Steve Sixberry_,
authorized signatory of Hughes Private Capital, LLC, personally known to me or produced
_____ as identification, either ☒ physically present or ☐ appeared
virtually/electronically, this _5th_ day of _April_ 202_3_, and executed this Termination
of Lease, as Lessor, for the purposes declared therein.

      WITNESS my hand and official seal.

      My commission expires: _7/21/2024_

      Seal:

      **HEATHER HULL**
      Notary Public - State of Nevada
      Appointment Recorded in Washoe County
      No: 08-7695-2 - Expires July 21, 2024

                         Notary Public