NVB 3001 (Effective 1/21)

# UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

**PROOF OF INTEREST**

Name of Debtor: **Guardian Fund, LLC**

Case Number: Lead BK -23-50177-hlb
Substantively Consolidated with:
BK-23-50233-hlb

1. **Name and address of holder of the Equity Interest** (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"):
   Directed Trust Company FBO Gary G Gilberg IRA
   c/o Karyn Freested, Executor of the Gary G Gilberg Estate
   11050 Palisades Drive
   Truckee, CA 96161

   Telephone Number: (530) 448-4821

   ☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars.

   ☐ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case.

   ☐ Check box if this address differs from the address on the envelope sent to you by the Debtors.

**NOTE:** This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An Equity Interest is any right arising from any capital stock and any equity security in any of the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b) herein.

**COURT USE ONLY**

Account or other number by which Interest holder identifies Debtor:
0001186

Check here if this claim:
☐ replaces a previously filed Proof of Interest dated: _____
☐ amends a previously filed Proof of Interest dated: _____

2. **Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest:** Directed Trust Company FBO Gary G Gilberg IRA c/o Karyn Freested, Executor of the Gary G Gilberg Estate
11050 Palisades Drive, Truckee, CA 96161
Telephone Number: (530) 448-4821

3. **Date Equity Interest was acquired:** December 2021

4. **Total amount of member interest:** $156,629.39

5. **Certificate number(s):** _____

6. **Type of Equity Interest:**
   Please indicate the type of Equity Interest you hold:
   ■ Check this box if your Equity Interest is based on an actual member interest held in the Debtor.
   ☐ Check this box if your Equity Interest is based on anything else and describe that interest:
   Description: _____

7. **Supporting Documents:** Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc.
   DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

9. **Signature:**
Check the appropriate box.
■ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent.   ☐ I am a guarantor, surety, endorser, or other codebtor.
(Attach copy of power of attorney, if any.)   (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Kary Freested
Title: Executor of the Gary G Gilberg Estate
Company: Address and telephone number (if different from notice address above):
Directed Trust Company FBO Gary G. Gilbert IRA

(Signature) *Karyn Freested*
(Date) 8/14/2023
Telephone number (530) 448-4821    email: Kfreested@gmail.com

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571*

| | |
|---|---|
| IN RE:<br><br>GUARDIAN FUND, LLC;<br><br>              Debtor. | Lead Case No. BK-23-50177-hlb<br>Chapter 11<br><br>Substantively Consolidated with:<br>Case No. BK- 23-50233-hlb<br>Chapter 11<br><br>**ATTACHMENT TO PROOF OF CLAIM FILED BY CREDITOR DIRECTED TRUST COMPANY FBO GARY G GILBERG IRA** |

      In December of 2021, Creditor Directed Trust Company FBO Gary G. Gilberg IRA ("Gilberg IRA") invested an initial amount of $134,700.68 for membership interest in Guardian Fund, LLC ("Debtor"). (Exhibit 1, Directed Trust Company Direction of Investment Form.) Based upon terms of the investment, Debtor was to assign Gilberg IRA a capital investment account that would be allocated net profits or losses proportional to its allocation percentage, determined at the beginning of each month[1]. Additionally, Debtors account statement show that Gilberg IRA opted to re-invest its pro-rata share of monthly profits, choosing not receiving dividend payments. (Exhibit 2 at dividends paid to date.)

      Gilberg IRA was advised that its capital investment account balance was $142,629.39 as of September 30, 2022. (Exhibit 2 at current balance.) Debtor did not fully detail how it reached the balance listed on the September 2022 Statement and it was the last statement received by Gilberg IRA from Debtor. Around October 14, 2022, Gilberg IRA and Debtor entered an additional subscription agreement for a further $14,000.00 in membership interest. (Exhibit 3, Subscription Agreement, Oct. 14, 2022.)

      As of March 17, 2023, the effective petition date, Debtor owed $156,629.39 under the Subscription Agreements not including pro-rata profits for the period of October 1, 2022 to March 16, 2023.

Attached are the following exhibits.
1. Directed Trust Company Direction of Investment Form
2. Guardian Capital Investment Statement, Sept. 2022
3. Guardian Subscription Agreement, Oct. 14, 2022

      Gilberg IRA reserves the right to supplement and revise to reflect additional pro-rata profit allocations. Additional documentation or information may be available upon request.

---

[1] This is a general reference to terms in Guardian's Confidential Private Placement Memorandum.

# EXHIBIT 1

# EXHIBIT 1

T: 602.899.9396
www.directedira.com

**DIRECTED IRA**
by Directed Trust Company

# Direction of Investment – PPM, Private Fund (Subscription Agreement)

**IMPORTANT INFORMATION**
This Direction of Investment form should be used when your account is purchasing a PPM interest, or Private Offering investment. Do NOT use this Direction of Investment for a Real Estate, 401(k) or IRA/LLC, Promissory Note, or Private Company/Private Equity Investment as those investment classes have their own specific Direction of Investment Form.

**Expedited Processing Options**
*If no option is selected, Directed IRA will process your request as normal (within 3 business days). I understand that if my account does not have sufficient funds, my transaction may not be processed. Processing cannot begin until all Investment Documents have been received and determined to be in good order.*

☐ Next-Day Service ($150) – Must be received by 4pm MST   ☐ Same-Day Service ($250) – Must be received by 10am MST

**1. Account Owner Information**
First Name: **Gary**　　　　MI: **G**　　Last Name: **Gilberg**
Last 4 of SSN: [redacted]　　Date of Birth: [redacted]　　Phone Number: **(530) 386-1203**
Directed IRA Account Number: **2076823**　　Account Type: **IRA**

**2. Asset Type to Purchase**
Please note the supporting documents required must be sent over to Directed IRA to be reviewed prior to making the investment. See attached PPM Instructions and information on how to properly complete the investment documents.

**Private Placement Memorandum (PPM)**
Name of Offering: **Guardian Fund LLC**
Units Purchased: **134**
Total Investment Amount $: **134,700.68**

**Supporting Documents Needed:**
Copy of PPM, Operating Agreement, and Subscription Agreement.

**3. Asset Sponsor Information**
Asset Sponsor: **Hughes Private Capital**　　Contact Name: **Katie**
Email Address: **Katie@hughescapital.com**　　Phone: **(775) 636-8504**

**4. Titling of Investments**
Your retirement account is considered the legal owner of your investment. All documents must reflect this ownership. Failure to title the asset correctly may cause delays and/or tax consequences. The correct titling for all investment documents should be as follows: **Directed Trust Company FBO (your name) (account type).** For example, Directed Trust Company FBO John Smith IRA, Directed Trust Company FBO John Smith HSA, or Directed Trust Company FBO John Smith Solo 401(k) Roth, etc.

**5. Documents to Process**
Please list the documents Directed Trust Company is required to sign on behalf of your account.
Documents: **Subscription agreement**

© 2021 Directed Trust Company

1

Direction of Investment – PPM, Private Fund

# EXHIBIT 2

EXHIBIT 2

# Guardian
## Capital Investment Statement

*Invested $14,000 more on 10/14/22 (transfer from Directed IRA*

| | |
|---|---|
| Account #: 0001186 AKA G1342 | |
| Investor Name: Directed Trust Company FBO Gary G Gilberg IRA | |
| Statement Date: September 2022 | |

| TRANSACTION | AMOUNT |
|---|---|
| Principal Investment | $134,700.68 |
| Previous Monthly Balance | $141,927.26 |
| Profit Allocation | $702.13 |
| New Investment | $- |
| Withdrawal | $- |
| Reinvestments | |
| Pro-Rated Interest | $- |
| Dividend | $- |
| Current Balance | $142,629.39 |
| Dividends Paid to Date | $14,000$- |
| Distributions Paid to Date | $156,629$-.39 |

*Next Monthly Statement should reflect this deposit*

*Deposit Transferred from Directed IRA on 10/14/2022*

### Actual Historical Performance Summary of Hughes Capital Buy and Hold Fund



Hughes Capital Buy and Hold Fund Per $100,000 invested in March 2017

- Hughes Buy and Hold Fund
- 10 Year Treasury Bond
- S&P 500
- Dow Jones Industrial Average

$157,598

**Monthly Net Returns**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Compounded Annualized Returns Total | With Depreciation Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022 | 0.60 | 0.62 | 0.62 | 0.59 | 0.62 | 0.54 | 0.55 | 0.53 | 0.49 | | | | 7.00% | 8.40% |
| 2021 | 0.65 | 0.64 | 0.60 | 0.69 | 0.68 | 0.57 | 0.60 | 0.61 | 0.61 | 0.72 | 0.85 | 0.58 | 7.87% | 9.27% |
| 2020 | 0.60 | 0.74 | 0.64 | 0.72 | 0.65 | 0.70 | 0.70 | 0.70 | 0.61 | 0.61 | 0.81 | 0.59 | 8.18% | 9.58% |
| 2019 | 0.74 | 0.64 | 0.71 | 0.72 | 0.75 | 0.71 | 0.70 | 0.75 | 0.57 | 0.52 | 0.59 | 0.69 | 8.66% | 10.06% |

*Investor's actual depreciation tax benefits may vary, depending on method of investment.*

## Hughes Private Capital
5440 Louie Lane Ste. 106, Reno, NV 89511
775.297.4970  Investing@HughesCapital.com



# EXHIBIT 3

# EXHIBIT 3

*Added $14,000 to Guardian Fund investment # 0011186*

**EXHIBIT B**
**TO THE PRIVATE PLACEMENT MEMORANDUM OF**
**GUARDIAN FUND, LLC**

## SUBSCRIPTION AGREEMENT

**TO BE USED ONLY IN CONJUNCTION WITH AN INVESTMENT IN UNITS OFFERED THROUGH THE OFFERING MATERIALS DATED JUNE a, 2020, RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED BY THE UNDERSIGNED SUBSCRIBER.**

THIS SUBSCRIPTION AGREEMENT is made as of this __14th__ day of __Octboer__, 2022, by and between GUARDIAN FUND, LLC, a NEVADA limited liability company (the "Fund"), and the undersigned subscriber (the "Subscriber"),

The Fund desires to obtain financing by selling investment units ("Units") at $1,000 per Unit. Subscriber desires to purchase the number of Units set forth on the signature page hereof.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants hereinafter set forth, the parties hereto do hereby agree as follows:

1. **SUBSCRIPTION FOR UNITS AND REPRESENTATIONS BY THE SUBSCRIBER**

1.1     Subject to the terms and conditions hereinafter set forth, the Subscriber hereby subscribes for and agrees to purchase the number of Units for the purchase price set forth upon the signature page hereof, and the Fund agrees to sell such Units to the Subscriber at a purchase price equal to such amount. The purchase price is payable by check or wire transfer on terms set forth in Section 2.3.

The Subscriber understands that their admission to the Fund as a Member is contingent upon the acceptance in writing of the Subscription by the Fund. The Subscriber understands that pending such acceptance, the check will be deposited in an escrow account and the other documents the Subscriber furnished will be held in trust by the Fund.

1.2     The Subscriber recognizes that the purchase of Units involves a high degree of risk and is suitable only for persons of adequate financial means who have no need for liquidity in this investment in that (i) he/she may not be able to liquidate his investment in the event of an emergency; (ii) transferability is extremely limited; and (iii) he/she could sustain a complete loss of his/her entire investment.

1.3     The Subscriber represents that (i) he/she is competent to understand and does understand the nature of the investment, and (ii) he/she is able to bear the economic risk of this investment.

1.4     Please check the appropriate space(s):

☑ The **Subscriber represents** that he/she **is** an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended [the "Act"). (The definition of "accredited investor" is set forth below.)

☐ The Subscriber represents that he/she is not an "accredited investor", but is a sophisticated investor.

☑ The Subscriber represents that he/she is a resident of the United States.

DocuSign Envelope ID: IFE687C3-6C9F-44BF-9968-3035D411D61C

The definition of an "accredited investor" includes the following:

- An **individual** having a net worth or a joint net worth with Spouse at the time of purchase in excess of **$1,000,000**. (In calculating net worth, you may include the value of your personal **property** and real estate, **excluding** the **value** of your principal residence, but including cash, short-term investments, stock and securities. Your inclusion of personal property and real estate, other than your principal residence, should be **based** on the fair market value of such property 'less debt secured by such property.)

- An individual whose net income was in excess of $200,000 in each of the two most recent years, or whose joint income with spouse was in excess of $300,000 in each of those years, and who reasonably **expects** his net income to reach such level in the current year.

- **An** IRA, Keogh or similar benefit plan for which investments are made solely by persons that are accredited investors.

- **Any** entity in which all of the equity owners are accredited investors.

The definition **of** a "sophisticated investor" includes the following:

- **An** individual having such knowledge and **experience** in financial **and** business matters that they are capable of evaluating the merits **and** risks of **the investment,** and **having, excluding** the value of the investor's principal residence, furnishings and automobiles, either:

    o A net worth of at least $250,000; or

    o A gross annual income of at least $100,000 and a net worth of at least $100,000; or

    o In the case of sales to fiduciary accounts (such as an IRA, Keogh Plan, or pension or profit sharing plan), these minimum suitability standard? must be satisfied by the beneficiary, the fiduciary account, or by the donor or grantor who directly or indirectly supplies the funds to invest if the donor or the grantor is the fiduciary.

**1.5**   The Subscriber acknowledges and represents that his/her investment does not and will not exceed any additional net worth requirements imposed by the Subscriber's state of residence.

**1.6**   The Subscriber acknowledges and represents that he/she has significant prior investment experience and that he/she recognizes the highly speculative nature of this investment. The Subscriber has such knowledge and experience in financial and business matters that he/she is capable of evaluating the merits and risks of investment in the Fund; and has the capacity to protect his/her interest in connection with an investment in the Fund;

**1.7**   The Subscriber hereby represents that he/she has been furnished **by** the Fund during the course of this transaction with all information regarding the Fund which he/she requested or desired to know; that all **other** documents which could be reasonably provided have been made available for his/her inspection and review; and that he/she has been offered the opportunity to ask questions of and receive answers from duly authorized officers or other representatives of the Fund concerning the Fund and the terms and conditions of this offering.

**1.8**   The Subscriber hereby specifically accepts and adopts each and every provision of the Operating Agreement and executes this Subscription Agreement **as a** counterpart signature page to that Operating Agreement. The Subscriber has read and understands the Operating Agreement, the Private Placement Memorandum, this Subscription Agreement and all other related documents.

DocuSign Envelope ID: 1FE687C3-6C9F-44BF-9968-30350411D61C

1.9     The Subscriber's overall commitment to investments that are not readily marketable is not disproportionate to his/her or their net worth and the investment in the Fund will cause such overall commitment to be excessive.

**1.10**     The Subscriber hereby acknowledges that this offering of Units has not been **reviewed** by the United States Securities and Exchange Commission (the "SEC") because of the Fund's representations that this is intended to be a nonpublic offering pursuant to Sections 4(a)(2) and 4(a)(6) of the Act and Regulation D ("Regulation D") promulgated thereunder. The Subscriber represents that the Units **are** being purchased for his/her/their own account, for investment and not for distribution or resale to others. The Subscriber agrees that he/she will not sell, transfer or otherwise dispose of any of the Units unless they are registered under the Act or unless an exemption from suck registration is available.

**1.11**     The Subscriber **agrees** that the Fund may, if it desires, permit the transfer of the Units **by the** Subscriber out of his/her name only when his/her request for transfer is accompanied by an opinion of counsel reasonably satisfactory to the Fund that the proposed sale, transfer or disposition does not result in a violation of the Act or any applicable state or province "blue **sky**" laws [collectively, "Securities Laws"). The Subscriber agrees to hold the Fund and its directors, officers and controlling persons and their respective heirs, representatives, successors and assigns harmless and to indemnify them against all liabilities, costs and expenses incurred by them as a result of any sale, transfer or other disposition of the Units by the undersigned Subscriber in violation of any Securities Laws or any misrepresentation herein.

1.12    The Subscriber acknowledges and agrees that the Fund is relying on the Subscriber's representations contained in this Agreement in determining whether to accept this Subscription. The Subscriber agrees that the Fund **reserves** the unrestricted right to request and require additional information from Subscriber, reject or limit any Subscription, and to close the offer at any time.

**1.13**    The Subscriber represents and **warrants** that all representations made by the Subscriber hereunder are true and correct in all **material** respects as of the date of execution hereof, and Subscriber further agrees that until the closing on the Units subscribed for he/she shall inform the Fund immediately of any changes in any of the representations provided by the Subscriber hereunder.

1.14    The Subscriber is aware of the following:

(a)     The Fund has limited financial or operating history;

(b)     There are substantial restrictions on the transferability of the Units; the Units will not be, and investors in the Fund have no rights to require that the Units be registered under the Securities Act of 1933, or any other state or federal act, and any such registration is unlikely;

(c)     Financial **projections** and forecasts, if any, in the materials provided by the Fund are **only** management's **estimates** based on assumptions therein stated. There is no assurance or guarantee that any such projections and forecasts will be met;

(d)     At any time, the amount of distributions or, tax **effects** that maybe available as a result of investment in the Fund is not susceptible to absolute prediction, and different future occurrences, interpretations or new developments in rulings of the Internal Revenue Service, court decisions or legislative changes **may** have all adverse effect thereon;

(e)     No federal or state agency has made any finding or determination as to the fairness for public investment, nor any recommendation nor endorsement, of the Units;

DocuSign Envelope ID: 4FE687C3-6C9F-44BF-9968-30350411D61C

1.15    The Subscriber acknowledges and agrees that, except as set forth in the offering materials, no other facts or assumptions have been represented, guaranteed or warranted to me, or us, by any person, expressly or by implication.

## 2. TERMS OF OFFERING

2.1    The total amount of the Offering is unlimited and shall have no minimum nor maximum. The Subscription period began on February 1, 2017 and will continue until terminated by the Fund as determined by the fund in its sole discretion (the "Offering Period"]. The *Offering may be closed from time to time, in tranches of any number of Units [collectively the "Closings").*

2.2    AH funds paid hereunder shall be immediately available to the Fund.

2.3    The Subscriber hereby agrees to purchase the number of Units from the Fund set forth upon the signature page hereof. The Subscriber must purchase a minimum of twenty-five (25) or more Units for his/her initial Subscription' with a purchase price of $1,000 per Unit. The purchase price is payable by check or wire transfer to the Fund. If the Fund declines to accept this Subscription, the Fund will return Subscription funds to the undersigned without interest thereon or deduction therefrom.

2.4    Closings on Subscriptions shall be held as soon as practicable following the Fund's acceptance hereof.

## 3. RESTRICTIONS ON TRANSFER

3.1    The certificates representing the Units shall bear the following legend:

The securities issued pursuant to this certificate are restricted securities as defined in Rule 144 promulgated pursuant to the U.S. Securities Act of 1933, as amended (the **"Act")**; the securities have not been registered under the Act with the Securities and Exchange Commission or under the Securities Laws of any state. The holder of a certificate evidencing interests will only be able to sell or otherwise transfer his or her securities pursuant to an effective registration statement or in accordance with an opinion from counsel, acceptable to the company that the same may be sold pursuant to an exemption from the registration requirements of those Securities Laws.

3.2    The Fund may in its sole discretion place a "Blue Sky" legend on the certificates in accordance with Securities Laws or as required by applicable securities laws.

3.3    Except as otherwise permitted by the Operating Agreement, each Subscriber will be prohibited from selling, transferring, pledging or otherwise disposing of the Units sold pursuant to this Private Placement Offering. As a result of restrictions on transferability of the Units, a Subscriber **may** not **be** able to liquidate his investment and must bear the economic risk of his investment for a significant period of time.

## 4. NOTICES TO SUBSCRIBERS

4.1    THE UNITS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES **LAWS** OF ANY STATE OR PROVINCE AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES LAWS. THE UNITS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SEC, OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THE OFFERING DOCUMENTS. ANY REPRESENTATION TO THE **CONTRARY** IS UNLAWFUL.

**4.2** THE UNITS ARE SUBJECT TO RESTRICTIONS OM TRANSFERABILITY AND **RESALE AND MAY** NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES **LAWS, PURSUANT TO REGISTRATION** OR EXEMPTION THEREFROM. SUBSCRIBERS SHOULD BE AWARE **THAT** THEY MAY BE REQUIRED **TO** BEAR THE **FINANCIAL** RISKS **OF** THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

5. **MISCELLANEOUS**

**5.1** Any notice or other communication given hereunder shall be deemed sufficient if in writing and sent by registered or certified mail, return receipt requested, addressed to the Fund at "Guardian Fund, LLC c/o Hughes Private Capital, LLC, 5440 Louie Lane, Suite 106, Reno, NV 89511", and to the Subscriber at his/her address indicated on the last page of this Agreement. Notices shall be deemed to have been given on the date of mailing, except notices of change of address, which shall be deemed to have been given when received.

**5.2** This **Agreement** shall not be changed, modified, or amended except by a writing signed by the parties to be charged, and tkis Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the party to be charged. The respective representations, warranties and covenants of the parties set forth in this Agreement shall survive delivery of and payment for the Units contemplated hereunder.

**5.3** This Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, legal representatives, successors and assigns. This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and merges and supersedes all prior discussions, agreements and understandings of any and every nature among them.

**5.4** This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the State of Nevada, without giving effect to the choice of law rules thereof, and by the terms of the Operating **Agreement** for the **Fund**.

**5.5** This Agreement may be executed in counterparts. Upon the execution and delivery of tkis Agreement by the Subscriber to the Manager by email to Investing@hughescapital.com. This Agreement shall become a binding obligation of the Subscriber with respect to the purchase of Units as herein provided.

6. **ACCEPTANCE.**

Execution of this Subscription Agreement and tender of the payment referenced in Paragraph 1 above shall constitute an irrevocable offer which the Fund may accept or .reject; acceptance by the Fund shall be indicated by it causing the undersigned to become a Member of the Fund with execution hereof constituting execution of the Operating Agreement, admitting the undersigned as a Member.

*[the remainder of this page intentionally left blank]*

5

Doc In- 7864072454d871995aff40f90d20307b082cf4c9

DocuSign Envelope ID: 1FE687C3-6C9F-44BF-9966-30350411D61C

| SUBSCRIBER INFORMATION: | | | |
|---|---|---|---|
| Vested Name Directed Trust Company FBO Gary G Gilberg IRA | | Social Security # or Tax I.D. ▮▮▮▮185 | |
| Your Full Name (if different from above) | | | |
| Street Address 3033 N. Central Ave. Ste. 415 | | | |
| City Phoenix | | State AZ | Zip Code 85012 |
| Telephone 530-386-12036 | Email garyggilberg@gmail.com | | |

| CO-SUBSCRIBER INFORMATION: | | | |
|---|---|---|---|
| Name | | Social Security # or Tax I.D. | |
| Street Address | | | |
| City | | State | Zip Code |
| Telephone | Email | | |

**INVESTMENT OWNERSHIP:**

- ✓ (circled) 14 Units — $14,000.00
- ~~250 Units — $250,000~~
- ☐ 100 Units — $100,000
- ☐ 75 Units — $75,000
- ☐ 50 Units — $50,060
- ☐ 25 Units — $25,000

**INVESTMENT PAYMENT METHOD (CHOOSE ONE):**

- [X] Wire Transfer Instructions
- ☐ Check

**REVENUE AUTOMATIC DIRECT DEPOSIT**

- ✓ Reinvest my pro-rata amount of the monthly net profits to compound in my capital account.
- ☐ Direct deposit my pro-rata amount of the monthly net profits.
- ☐ Direct deposit a specific amount of $_____ monthly.

**MY INTEREST SHOULD BE SHOWN ON THE FUND RECORDS AS FOLLOWS (INDICATE ONE OF THE FOLLOWING):**

- ☐ Individual/Sole Proprietor or Single Member LLC
- ☐ Joint Tenancy
- ☐ Trustee**
- ✓ IRA
- ☐ Corporation***
- ☐ LLC*
- ☐ Tenants in Common
- ☐ Other (Describe)

\* If a Limited Liability Company (not single member disregarded), please include a copy of the Articles of Organization, Operating Agreement and a certificate of action of the manager(s) or other document authorizing the investment.

\*\* If a custodian, trustee or agent, please include a copy of the trust, agency or other agreement and an entity certificate authorizing the investment.

\*\*\* If a corporation, please include a copy of the Articles of Incorporation and a corporate resolution or other document authorizing the investment.

6

Doc ID: 796407245d4814005af840fa0d2D307b082a44a0

**BENEFICIARY INFORMATION:**

While a designation of your beneficiary or beneficiaries is not required for investment, should you desire to identify your beneficiary of your investment herein, please provide the information requested below. If you live in a state with community property statutes and do not designate your spouse as *the* sole primary beneficiary, you represent and warrant that your spouse has consented to such a designation. Note that the information provided on this form will replace all existing primary and contingent beneficiary designations you have provided to us, and, as to this investment override any designations you have provided in your will.

1. [ ] Primary Beneficiary  [ ] Contingent Beneficiary

| Beneficiary Name: | | Social Security Number: | |
|---|---|---|---|
| Address: | City: | State: | Zip: |

2. [ ] Primary Beneficiary  [ ] Contingent Beneficiary

| Beneficiary Name: | | Social Security Number: | |
|---|---|---|---|
| Address: | City: | State: | Zip: |

Please indicate your acceptance of the terms, conditions, and information provided in this Subscription Agreement by executing below in the space provided. The Subscription Agreement will be deemed to be fully executed and a copy returned to you for your records upon receipt of investment payment.

**SUBSCRIBER**

| Signature | Printed Name | Date |
|---|---|---|
| *Heidi Faulk* (Heidi Faulk, Authorized Signor) | Directed Trust Company FBO Gary G Gilberg IRA | 10 / 14 / 2022 |
| Read & Approved By *GGilberg* | Printed Name Gary G Gilberg, IRA Account Owner | Date 10 / 14 / 2022 |

**GUARDIAN FUND, LLC**

| Signature | Printed Name | Date |
|---|---|---|
| | | |

7

Doc id: 786407245dd871005af49fa9d20307b082ef4e0