STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
*Attorneys for Jointly Administered Debtors*

McDONALD CARANO LLP
SALLIE B. ARMSTRONG, ESQ. (NSBN 1243)
100 W. Liberty Street, 10th Floor
Reno, NV 89501
Telephone: (775) 788-2000
Email: sarmstrong@mcdonaldcarano.com
*Attorneys for Official Committee of*
*Unsecured Creditors of Guardian Fund, LLC*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No.: BK-23-50177-hlb |
| GUARDIAN FUND, LLC, | Case No.: BK-23-50233-hlb |
| ☐ AFFECTS THIS DEBTOR | **Consolidated Under Case No. BK-23-50177-hlb** (Chapter 11) |
| ☐ AFFECTS GUARDIAN CV1, LLC | Jointly Administered with: |
| ☐ AFFECTS GUARDIAN CV2, LLC | 23-50951-hlb — Guardian CV1, LLC |
| ☒ AFFECTS ALL DEBTORS | 23-50952-hlb — Guardian CV2, LLC |
| Debtors. _____/ | Hrg. Date: December 12, 2024<br>Hrg. Time: 9:30 a.m. |

**SECOND NOTICE OF AMENDMENTS TO**
**AMENDED JOINT DISCLOSURE STATEMENT**

Dated:          December 2, 2024

Filed by:      GUARDIAN FUND, LLC, a Nevada limited liability company;
                   GUARDIAN CV1, LLC, a Delaware limited liability company;
                   GUARDIAN CV2 LLC, a Delaware limited liability company; and
                   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
                   GUARDIAN FUND, LLC

GUARDIAN FUND, LLC ("**Guardian Fund**" or "**Guardian**"), GUARDIAN CV1, LLC ("**CV1**"), and GUARDIAN CV2, LLC ("**CV2**"), Debtors and Debtors-in-Possession herein (Guardian Fund, CV1, and CV2 collectively the "**Debtors**") in the above-captioned jointly administered Chapter 11 cases, and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GUARDIAN FUND, LLC ("**Committee**"), filed their *First Amendment to Second Amended Joint Plan of Reorganization* dated December 2, 2024 [ECF No. 1040] ("**First Amendment**"). The First Amendment contains certain modifications to the previously filed *Second Amended Joint Plan of Reorganization* dated October 20, 2024 [ECF No. 956]. Accordingly, the Debtors and Committee provide notice of the following second amendments to the *[Proposed] Amended Joint Disclosure Statement* [ECF No. 859], as amended by the previously filed *Notice of Amendments to Amended Joint Disclosure Statement* [ECF No. 958] (ECF Nos. 859 and 958 collectively the "**Disclosure Statement**"):

Any references in the Disclosure Statement to the "Plan" refers to the **SECOND AMENDED JOINT PLAN OF REORGANIZATION dated October 20, 2024**, as amended by the First Amendment, and as may be further amended and supplemented.

**Section VI. Significant Post-Petition Events** of the Disclosure Statement is supplemented to include the following recent events:

- On November 22, 2024, the United States Securities and Exchange Commission ("**SEC**") withdrew its $0 proofs of claims previously filed against each of the Debtors. *See* ECF No. 1020.

- On November 26, 2024, this Court entered *its Order Granting Motion for Approval of Debtors' Compromise and Settlement of Claims with Committee and Lenders Under Fed. R. Bankr. P. 9019(a)* [ECF No. 1028] ("**9019 Order**"). The 9019 Order approved a Settlement Term Sheet ("**Lenders' Settlement Term Sheet**") between the Debtors and Committee on the one hand, and the Lenders,[1] on the other hand, with respect to payment of the Lenders' secured claims against the Debtors. The Court-approved Settlement Term Sheet modifies the allowed amounts and treatment of Wilmington Trust's Class 6A, Class 6B, and Class 6C secured claims described in more detail in the Plan.

---

[1] Wilmington Trust, National Association, as Trustee, for the benefit of the Holders of CoreVest American Finance 2020-3 Trust Mortgage Pass-Through Certificates and Wilmington Trust, National Association, as Trustee, for the benefit of the Holders of CoreVest American Finance 2021-2 Trust Mortgage Pass- Through Certificates (collectively "**Lenders**" or "**Wilmington Trust**")

**Section VII. Administrative and Unclassified Claims** of the Disclosure Statement is amended to include the administrative claim against Guardian's estate for the allowed legal fees and costs of Debtors' special counsel, Tarter, Krinsky & Drogin LLP, in the estimated amount of $35,365.50.

**Section VIII. Classification of Claims and Interests** in the Disclosure Statement is amended to show that Class 3A, Class 3B, and Class 3C (formerly the SEC's claims) are blank, with the notation "Intentionally Left Blank." These classes will remain only as placeholders in the event the Debtors need to add any additional classes of creditors before or as a result of the Plan confirmation.

**Section IX. Treatment of Classes** The descriptions in the Disclosure Statement of the treatment of Class 2A, Class 2B, and Class 2C claims of the Lenders, and Classes 3A, 3B, and 3C are replaced in their entirety with the following language:

2.  **CV1 CLASS 2A CLAIM [SECURED CLAIM OF WILMINGTON TRUST]**: The Class 2A allowed secured claim of Wilmington Trust for Loan 1 shall be treated and paid as set forth in the Lenders' Settlement Term Sheet, which is incorporated herein in its entirety. Those terms are summarized as follows:

   a. Wilmington Trust shall have an allowed non-recourse secured claims against CV1 as provided in the existing Loan 1 documents and security agreements (which, for the absence of doubt, also includes Wilmington Trust's perfected security interests in Guardian's ownership interests of CV1), with the allowed Class 2A secured claim balance due on CV1's loan, as of December 31, 2024, consisting of: (i) the loan principal balance, (ii) 100% of the accrued, unpaid non-default contract interest, (iii) accrued default interest and late charges of $200,000 collectively, plus (iv) agreed upon and allowed attorneys' fees and costs of $150,000 with no additional allowed attorneys' fees and costs to accrue under Loan 1 thereafter, provided that CV1 does not default under the terms of the Lenders' Settlement Term Sheet. Except as modified herein, the current Loan 1 documents and security agreements will remain in full force and effect.

b. Commencing on January 1, 2025, Loan 1 will continue to accrue interest on the unpaid principal balance at the contract non-default rates until paid. Lenders will not charge or be entitled to a yield maintenance premium or any prepayment penalty for payments made during the duration of the Agreement. Debtors will not be required to make any payments on Loan 1 to Lenders other than as explained below and in the Lenders' Settlement Term Sheet.

c. All funds in the reserve accounts for Loan 1 held by Berkadia will be applied to the allowed Class 2A secured claim of Lenders, first to accrued non-default interest and default interest (as described above) and then to fees and costs (as described above). Any remaining amount will be applied to reduce principal.

d. A liquidating agent shall be appointed under this Plan for the limited purpose of selling CV1 and CV2's properties as set forth in the Lenders' Settlement Term Sheet ("**Liquidating Agent**"). The initial Liquidating Agent shall be Eric Taylor. The Liquidating Agent shall be authorized to sell CV1's properties. The estimated market value for each property will be agreed upon by Debtors, Committee, and Lenders after the Liquidating Agent completes a 45-day property analysis. The Liquidating Agent is authorized to sell the properties, so long as the sale of each property, after closing costs, realizes not less than 90% of the estimated market value. The Liquidating Agent can only sell a property for less than 90% of the estimated market value with written consent of the Debtors, through Aaron Noe, and the Lenders, which consent will not be unreasonably withheld. If the parties cannot agree to a particular sale price, then Debtors or the Lenders may file a motion with the Bankruptcy Court to resolve the dispute.

e. The Liquidating Agent will be paid a fee of $1,500 for each property sold, with his fee to be paid directly from escrow upon closing. Until the Lenders are paid in full, the Liquidating Agent is also entitled to $300 for each of CV1's properties that is pulled, lost, or does not close. The Liquidating Agent will list CV1's properties for sale only with licensed brokers at reasonable and ordinary market

rates, with no additional referral fees payable to him. The Liquidating Agent is expected to market the properties through the Multiple Listing Service and syndicated to Zillow, Redfin, Realtor.com, and other aggregators. 12BR is also willing to market the collateral properties for sale and will offer an additional fee of $1,000 per property to the Liquidating Agent if he uses 12BR. All property sale and closing fees will be paid directly from escrow upon closing, and the Liquidating Agent shall provide Debtors and Lenders with advance copies of estimated escrow settlement statements at least five (5) days prior to close.

f.  If either the Lenders or the Debtors determine that Eric Taylor needs to be replaced for any reason or should Eric Taylor resign or for any reason not be able to serve, the Debtors and the Lenders will work together to determine who the successor Liquidating Agent should be. If the Parties cannot agree, then the Debtors or the Lenders may file a motion with the Bankruptcy Court to resolve the dispute.

g.  Lenders will release their deeds of trust and related security agreements for each property as it is sold, however, Lenders will retain a security interest in the proceeds as explained below.

h.  All CV1 and CV2's properties will be managed by a property manager of Lenders' choice as long as the property manager does not charge more than the Debtors are currently being charged by Evernest and as long as the property manager has the requisite expertise commensurate to manage collateral properties of this type. In making this determination, the Lenders will consider the views of the Debtors and the Committee that changing property managers will be disruptive and financially detrimental (potentially leading to less net rental income), especially in light of the temporary limited engagement due to the anticipated liquidation of the properties.

i.  The property managers will take direction from Aaron Noe as to the ongoing management of the properties, but Mr. Noe will not authorize any repairs or maintenance expenses above $1,500 for any single occupied property or $500 for

any single vacant property without prior written consent from the Lenders, or the Liquidating Agent if the Lenders desire for the Liquidating Agent to have this authority.

j. The Debtors, Liquidating Agent, and the Lenders will be provided with detailed budgets as well as profit and loss statements directly from the property managers.

k. All ongoing property expenses, including property taxes and insurance, will be paid by the property manager through rental proceeds so long as sufficient rental proceeds exist. If insufficient rental proceeds exist to pay such expenses, those expenses will be funded from the property proceeds held in the segregated bank accounts discussed herein. If there are insufficient funds in the segregated bank accounts, Lenders may advance for the cost of insurance and/or taxes and add the same to Lender's allowed claim.

l. All net rental and sale proceeds from CV1's properties will be deposited in segregated bank accounts at Heritage Bank controlled by Aaron Noe as the authorized signer, with Lenders granted a security interest in the bank accounts through a control agreement. Only necessary expenses are to be used in calculating net rental proceeds ("**NOI**"). NOI as calculated herein, shall be paid to Lenders each month after the Effective Date, with payment being made by the 15th of the following month. In any month, Debtors agree the monthly NOI paid to the Lenders will equal the greater of (i) actual NOI or (ii) the monthly non-default interest due under the Loan Documents.

m. The Debtors shall provide Lenders with monthly bank statements and reconciliation reports for all activity in the segregated bank accounts.

n. Beginning April 15, 2025 and continuing each quarter thereafter, Aaron Noe will distribute to Lenders 75% of available funds in the segregated account by the 15th of the next month following the end of each quarter. The quarterly payments will be applied first to the agreed pre-confirmation accrued contract interest, default interest, and fees and costs and then to principal. Payments will continue

until the earlier of (i) Lenders being paid in full the agreed Loan 1 amounts (ii) the date all collateral is liquidated or (iii) June 30, 2026. The remaining 25% of available funds in the segregated accounts will be used only to pay necessary property expenses with prior written consent from the Lenders and monthly interest (NOI).

o.  Lenders shall provide Debtors with monthly loan statements showing the current loan balances with interest charges and after payments.

p.  Once Lenders' Class 2A allowed claim is paid in full under the Lenders' Settlement Term Sheet, Lenders will release all remaining deeds of trust and security instruments against CV1's assets, including the bank account control agreements, and return the Loan 1 promissory note marked as "paid in full" to CV1. Guardian and CV1 will then have the option to terminate the Liquidating Agent's services. Lenders will have no more claims against CV1's remaining assets or Guardian's equity interests in CV1, and Guardian will continue to manage CV1 or dissolve it under applicable state law, subject to payment of other creditor claims that may exist unrelated to Lenders.

q.  Debtors and the Committee agree not to challenge the validity of Lenders' liens or pursue any litigation claims against Lenders, all of Lenders' related parties, including, but not limited to, their master and special loan servicers, and all predecessors-in-interest through the date of approval of the Lenders' Settlement Term Sheet, including, but not limited to, for fraudulent transfers or lender liability.

r.  If CV1 fails to make any of the payments required by the Lenders' Settlement Term Sheet, such shall be a default. If the defaulting party does not cure the default within five (5) calendar days of notification, Lenders may terminate the agreement.

s.  Upon confirmation of this Plan, as amended, CV1 can use any cash in its debtor-in-possession ("**DIP**") bank accounts to pay its allowed non-insider creditors other than Lenders, and for payment of its Chapter 11 administrative expenses, including

but not limited to allowed attorney fees and costs for its bankruptcy counsel, Harris Law Practice LLC. For purpose of clarity, the DIP bank accounts do not include accounts with Evernest or Lender reserve or escrow accounts.

t. The Bankruptcy Court will retain post-Confirmation jurisdiction to resolve any disputes arising from or in connection with the Lenders' Settlement Term Sheet.

Accordingly, the allowed Class 2A Claim of Wilmington Trust is <u>impaired</u> under the Plan.

3. **CV2 CLASS 2B CLAIM [SECURED CLAIM OF WILMINGTON TRUST]**: The Class 2B allowed secured claim of Wilmington Trust for Loan 2 shall be treated and paid as set forth in the Lenders' Settlement Term Sheet, which is incorporated herein in its entirety. Those terms are summarized as follows:

a. Wilmington Trust shall have an allowed non-recourse secured claims against CV2 as provided in the existing Loan 2 documents and security agreements (which, for the absence of doubt, also includes Wilmington Trust's perfected security interests in Guardian's ownership interests of CV2), with the allowed Class 2B secured claim balance due on CV2's loan, as of December 31, 2024, consisting of: (i) the loan principal balance, (ii) 100% of the accrued, unpaid non-default contract interest, (iii) accrued default interest and late charges of <u>$215,000 collectively</u>, plus (iv) agreed upon and allowed attorneys' fees and costs of $150,000 with no additional allowed attorneys' fees and costs to accrue under Loan 2 thereafter, provided that CV2 does not default under the terms of the Lenders' Settlement Term Sheet. Except as modified herein, the current Loan 2 documents and security agreements will remain in full force and effect.

b. Commencing on January 1, 2025, Loan 2 will continue to accrue interest on the unpaid principal balance at the contract non-default rates until paid. Lenders will not charge or be entitled to a yield maintenance premium or any prepayment penalty for payments made during the duration of the Lenders' Settlement Term Sheet. Debtors will not be required to make any payments on Loan 2 to Lenders other than as explained below and in the Lenders' Settlement Term Sheet.

c. All funds in the reserve accounts for Loan 2 held by Berkadia will be applied to the allowed Class 2B secured claim of Lenders, first to accrued non-default interest and default interest (as described above) and then to fees and costs (as described above). Any remaining amount will be applied to reduce principal.

d. A liquidating agent shall be appointed under this Plan for the limited purpose of selling CV1 and CV2's properties as set forth in the Lenders' Settlement Term Sheet ("**Liquidating Agent**"). The initial Liquidating Agent shall be Eric Taylor. The Liquidating Agent shall be authorized to sell CV2's properties. The estimated market value for each property will be agreed upon by Debtors, Committee, and Lenders after the Liquidating Agent completes a 45-day property analysis. The Liquidating Agent is authorized to sell the properties, so long as the sale of each property, after closing costs, realizes not less than 90% of the estimated market value. The Liquidating Agent can only sell a property for less than 90% of the estimated market value with written consent of the Debtors, through Aaron Noe, and the Lenders, which consent will not be unreasonably withheld. If the parties cannot agree to a particular sale price, then Debtors or the Lenders may file a motion with the Bankruptcy Court to resolve the dispute.

e. The Liquidating Agent will be paid a fee of $1,500 for each property sold, with his fee to be paid directly from escrow upon closing. Until the Lenders are paid in full, the Liquidating Agent is also entitled to $300 for each of CV2's properties that is pulled, lost, or does not close. The Liquidating Agent will list CV2's properties for sale only with licensed brokers at reasonable and ordinary market rates, with no additional referral fees payable to him. The Liquidating Agent is expected to market the properties through the Multiple Listing Service and syndicated to Zillow, Redfin, Realtor.com, and other aggregators. 12BR is also willing to market the collateral properties for sale and will offer an additional fee of $1,000 per property to the Liquidating Agent if he uses 12BR. All property sale and closing fees will be paid directly from escrow upon closing, and the

Liquidating Agent shall provide Debtors and Lenders with advance copies of estimated escrow settlement statements at least five (5) days prior to close.

f. If either the Lenders or the Debtors determine that Eric Taylor needs to be replaced for any reason or should Eric Taylor resign or for any reason not be able to serve, the Debtors and the Lenders will work together to determine who the successor Liquidating Agent should be. If the Parties cannot agree, then the Debtors or the Lenders may file a motion with the Bankruptcy Court to resolve the dispute.

g. Lenders will release their deeds of trust and related security agreements for each property as it is sold, however, Lenders will retain a security interest in the proceeds as explained below.

h. All CV1 and CV2's properties will be managed by a property manager of Lenders' choice as long as the property manager does not charge more than the Debtors are currently being charged by Evernest and as long as the property manager has the requisite expertise commensurate to manage collateral properties of this type. In making this determination, the Lenders will consider the views of the Debtors and the Committee that changing property managers will be disruptive and financially detrimental (potentially leading to less net rental income), especially in light of the temporary limited engagement due to the anticipated liquidation of the properties.

i. The property managers will take direction from Aaron Noe as to the ongoing management of the properties, but Mr. Noe will not authorize any repairs or maintenance expenses above $1,500 for any single occupied property or $500 for any single vacant property without prior written consent from the Lenders, or the Liquidating Agent if the Lenders desire for the Liquidating Agent to have this authority.

j. The Debtors, Liquidating Agent, and the Lenders will be provided with detailed budgets as well as profit and loss statements directly from the property managers.

k. All ongoing property expenses, including property taxes and insurance, will be

paid by the property manager through rental proceeds so long as sufficient rental proceeds exist. If insufficient rental proceeds exist to pay such expenses, those expenses will be funded from the property proceeds held in the segregated bank accounts discussed herein. If there are insufficient funds in the segregated bank accounts, Lenders may advance for the cost of insurance and/or taxes and add the same to Lender's allowed claim.

l.  All net rental and sale proceeds from CV2's properties will be deposited in segregated bank accounts at Heritage Bank controlled by Aaron Noe as the authorized signer, with Lenders granted a security interest in the bank accounts through a control agreement. Only necessary expenses are to be used in calculating net rental proceeds ("**NOI**"). NOI as calculated herein, shall be paid to Lenders each month after the Effective Date, with payment being made by the 15th of the following month. In any month, Debtors agree the monthly NOI paid to the Lenders will equal the greater of (i) actual NOI or (ii) the monthly non-default interest due under the Loan Documents.

m.  The Debtors shall provide Lenders with monthly bank statements and reconciliation reports for all activity in the segregated bank accounts.

n.  Beginning April 15, 2025 and continuing each quarter thereafter, Aaron Noe will distribute to Lenders 75% of available funds in the segregated account by the 15th of the next month following the end of each quarter. The quarterly payments will be applied first to the agreed pre-confirmation accrued contract interest, default interest, and fees and costs and then to principal. Payments will continue until the earlier of (i) Lenders being paid in full the agreed Loan 2 amounts (ii) the date all collateral is liquidated or (iii) June 30, 2026. The remaining 25% of available funds in the segregated accounts will be used only to pay necessary property expenses with prior written consent from the Lenders and monthly interest (NOI).

o.  Lenders shall provide Debtors with monthly loan statements showing the current

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

loan balances with interest charges and after payments.

p. Once Lenders' Class 2B allowed claim is paid in full under the Lenders' Settlement Term Sheet, Lenders will release all remaining deeds of trust and security instruments against CV2's assets, including the bank account control agreements, and return the Loan 2 promissory note marked as "paid in full" to CV2. Guardian and CV2 will then have the option to terminate the Liquidating Agent's services. Lenders will have no more claims against CV2's remaining assets or Guardian's equity interests in CV2, and Guardian will continue to manage CV2 or dissolve it under applicable state law, subject to payment of other creditor claims that may exist unrelated to Lenders.

q. Debtors and the Committee agree not to challenge the validity of Lenders' liens or pursue any litigation claims against Lenders, all of Lenders' related parties, including, but not limited to, their master and special loan servicers, and all predecessors-in-interest through the date of approval of the Lenders' Settlement Term Sheet, including, but not limited to, for fraudulent transfers or lender liability.

r. If CV2 fails to make any of the payments required by the Lenders' Settlement Term Sheet, such shall be a default. If the defaulting party does not cure the default within five (5) calendar days of notification, Lenders may terminate the agreement.

s. Upon confirmation of this Plan, as amended, CV2 can use any cash in its debtor-in-possession ("**DIP**") bank accounts to pay its allowed non-insider creditors other than Lenders, and for payment of its Chapter 11 administrative expenses, including but not limited to allowed attorney fees and costs for its bankruptcy counsel, Harris Law Practice LLC. For purpose of clarity, the DIP bank accounts do not include accounts with Evernest or Lender reserve or escrow accounts.

t. The Bankruptcy Court will retain post-Confirmation jurisdiction to resolve any disputes arising from or in connection with the Lenders' Settlement Term Sheet.

Accordingly, the allowed Class 2B Claim of Wilmington Trust is <u>impaired</u> under the Plan.

4.  **GUARDIAN CLASS 2C CLAIM [SECURED CLAIMS OF WILMINGTON TRUST]**: The Class 2C allowed secured claims of Wilmington Trust under Guardian's Pledgor Guaranties of Loan 1 and Loan 2, which provide that Wilmington Trust's only recourse is against the "Pledged Collateral," shall be modified consistent with the Lenders' Settlement Term Sheet so that Wilmington Trust can only enforce it contractual remedies against Guardian if the Debtors default under the terms of the Lenders' Settlement Term Sheet. Accordingly, the Class 2C allowed secured claims of Wilmington Trust in the amounts set forth in the Lenders' Settlement Term Sheet, are <u>impaired</u> under the Plan.

5.  **CLASS 3A** provides for no treatment of any claims and is reserved as a placeholder.

6.  **CLASS 3B** provides for no treatment of any claims and is reserved as a placeholder.

7.  **CLASS 3C** provides for no treatment of any claims and is reserved as a placeholder.

**Section XV. Miscellaneous Provisions** of the Disclosure Statement is amended to include the following additional provision:

<u>Committee</u>.

After the Effective Date, the Committee will be designated as an oversight Committee and will continue in existence for a limited period of time with post-confirmation powers and duties (since it is a proponent of the Plan) until those issues which exist at confirmation are resolved, including the Plan settlement with Wilmington Trust under the Lenders' Settlement Term Sheet. With regard to the Plan settlement with Wilmington Trust, the Committee will continue in its current role, and Guardian will pay the Committee's reasonable legal fees and costs until its cessation, until such time as the Debtors and Wilmington Trust have established agreed-upon market values for CV1 and CV2's properties, finalized a contract with the Liquidating Agent, and resolved any other outstanding issues with the Lenders which in Guardian's discretion could benefit from the

Committee's assistance. Upon consultation with the Committee, Guardian will provide a notice of cessation in writing to the Committee members and their counsel, so that on the effective date of such notice of cessation the Committee will cease to act in its official capacity.

**Section XVI** of the Disclosure Statement, <u>Litigation Claims</u>, is amended to delete any reserved claims or causes of action against Wilmington Trust arising or accruing before the date of approval of the Lenders' Settlement Term Sheet.

The Debtors and Committee may make other modifications to the Plan before or at the confirmation hearing on December 12, 2024. If any discrepancies exist between the Disclosure Statement and the Plan, as modified and supplemented, the language of the Plan controls.

Respectfully submitted December 2, 2024.

| HARRIS LAW PRACTICE LLC | McDONALD CARANO LLP |
|---|---|
| /s/ Norma Guariglia | /s/ Sallie B. Armstrong |
| Norma Guariglia, Esq. | Sallie B. Armstrong, Esq. |
| *Attorneys for Jointly Administered Debtors* | *Attorneys for Official Committee of Unsecured Creditors of Guardian Fund, LLC* |

**CERTIFICATE OF SERVICE**

On December 2, 2024, the foregoing document was served via ECF automated system to all parties registered with ECF in this case on the date and time I filed the document with the Court's ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Dated December 2, 2024.

/s/ Norma Guariglia
Norma Guariglia