HARRIS LAW PRACTICE LLC
STEPHEN R. HARRIS, ESQ. (NSBN 1463)
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. (NSBN 16244)
Email: norma@harrislawreno.com
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
*Attorneys for Jointly Administered Debtors*

McDONALD CARANO LLP
SALLIE B. ARMSTRONG, ESQ. (NSBN 1243)
100 W. Liberty Street, 10th Floor
Reno, NV  89501
Telephone: (775) 788-2000
Email: sarmstrong@mcdonaldcarano.com
*Attorneys for Official Committee of*
*Unsecured Creditors of Guardian Fund, LLC*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

\* \* \* \* \*

IN RE:

GUARDIAN FUND, LLC,

☐ AFFECTS THIS DEBTOR

☐ AFFECTS GUARDIAN CV1, LLC

☐ AFFECTS GUARDIAN CV2, LLC

☒ AFFECTS ALL DEBTORS

Debtors.

_____/

Case No.: BK-23-50177-hlb
Case No.: BK-23-50233-hlb
**Consolidated Under Case No. BK-23-50177-hlb**
(Chapter 11)

Jointly Administered with:

| 23-50951-hlb | Guardian CV1, LLC |
| 23-50952-hlb | Guardian CV2, LLC |

**DECLARATION OF AARON NOE IN SUPPORT OF BRIEF IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED JOINT PLAN OF REORGANIZATION, AS AMENDED**

Hrg. Date:  December 12, 2024
Hrg. Time:  9:30 a.m.

I, Aaron Noe, declare as follows:

1.    I am over 18 years old and am mentally competent. I make this declaration in support of the Debtors' and Committee's *Brief in Support of Confirmation of the Second Amended*

*Joint Plan of Reorganization, As Amended* (the "**Confirmation Brief**").

2.    Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge.

3.    I am the President and sole shareholder of El Monte Capital, Inc. ("**El Monte**"), the legally authorized manager of Guardian Fund, LLC, a Nevada limited liability company ("**Guardian**" or "**Debtor**"). El Monte is the sole non-equity voting member of the Debtor.

4.    I have more than three decades of experience relating to real estate, property management, and related matters.  I received my Bachelor of Science in Real Estate Finance and have held real estate and brokers' licenses, property management licenses, and appraisal licenses, although these licenses are not currently active. In 1992, I founded a company specializing in real property tax advocacy consulting, Tax Review Group, Inc., where I successfully represented clients holding more than $2 billion in assets in administrative hearings before various assessment appeals boards, achieving single-year valuation reductions in excess of $350 million.

5.    In 2010, I joined American Homes 4 Rent, a startup company at which I was directly responsible for creating and opening field operations and transitions from third-party to internal property management structure.  In my eight years with this company, I grew my role to Executive Vice President, Director of Operations, and provided leadership as lead manager for prominent deals such as the $1.5 billion acquisition of American Residential Properties (NYSE: ARPI).  During that time, the company grew from owning around 50 properties to owning over 51,000 properties and becoming one of the country's largest publicly traded Real Estate Investment Trusts with a market cap of somewhere around $13.5B. I was responsible for all the property management operations, the resident operations, and overseeing all the company's local offices.

6.    After American Homes for Rent, I worked for about 3 years and 8 months at Redfin and became Vice President and founder of Redfin Home Services.  I grew the home services business unit into one of the largest residential general contractors in the country with offices in California, Oregon, Washington, Colorado, Arizona, Nevada, Texas, Florida, Massachusetts, Virginia, Maryland, and Washington D.C. I was responsible for building a

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

residential home services organization that could support the RedfinNow iBuying and the Listing Concierge programs. During my time with Redfin, we grew the program from operating in three markets to twenty markets with revenue nearing $100 million.

7.    Given my background in real estate finance, throughout my career, I have worked extensively with financial documents, both preparing them and analyzing them.  While at Tax Review Group, I was responsible for analyzing financial statements to establish property valuations for all our clients. While at American Homes 4 Rent, I was responsible for preparing and managing the financial forecasting for almost $1billion in annual revenue, as well as managing the annual operating budget.

8.    In my capacity as the President of El Monte, I have been managing Guardian, CV1, and CV2 since Guardian's Chapter 11 filing in April 2023, and I am thoroughly versed in and familiar with all aspects of their operations.  Additionally, during the course of Debtors' cases, I have traveled to many of the areas where the Debtors own properties, sometimes on multiple occasions, and I have personally inspected many of the Debtors' properties.  I have traveled to Cleveland, Ohio, Birmingham, Alabama, Granite City and Alton, Illinois, and Saint Louis, Missouri.

9.     I was integrally involved in the preparation of the *Second Amended Joint Plan of Reorganization* dated October 20, 2024 (**"Plan"**) [ECF No. 956] filed by Guardian, Guardian CV1, LLC ("**CV1**"), and Guardian CV2, LLC ("**CV2**"), Debtors and Debtors-in-Possession in the above-captioned jointly administered Chapter 11 cases (collectively the "**Debtors**"), and the Official Committee of Unsecured Creditors of Guardian ("**Committee**"),  I also worked closely with counsel for the Debtors and the Committee in preparing the *[Proposed] Amended Joint Disclosure Statement* [ECF No. 859].   Finally, I am the one who prepared the Consolidated Financial Projections attached to the Plan as **Exhibit F2 ("Financial Projections").**  Exhibit F2 is now the operative projection for purposes of confirmation.

10.    The primary source of revenue to pay creditors under the Plan is the sale of real properties owned by Guardian.  The Debtors' real estate portfolio is comprised of around 444 low-income residential properties. Guardian owns 317 properties, Guardian DE (a non-debtor

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

subsidiary) owns 6 properties, and CV1 and CV2 own 121 properties ("**Properties**"). The Properties are approximately 35% occupied and many suffer from significant deferred maintenance and will require substantial capital investment, the result being that many Properties would not qualify for traditional financing in their "as is" condition. Many of the vacant Properties are also boarded up with utilities turned off, making it difficult for a potential buyer to perform due diligence. The average age of the Properties in the portfolio is approximately 91 years old with the oldest building over 135 years old. A wholesale or bulk liquidation of the Properties in their impaired "as is" condition will most likely generate only about 20-30% of their fair market value in a habitable condition.

11.     Guardian has not had the resources during its Chapter 11 case to invest the capital needed to improve as many of the Properties which suffer from significant deferred maintenance as I would have liked, but the Financial Projections include the funds necessary to actively undertake the restoration process.

12.     These cash constraints, which are, in great part, the result of the bankruptcy process itself, will no longer exist after confirmation of the Plan, thus allowing the Debtors to maximize their assets to implement the Plan. For example, it was not ideal for Guardian to regularly sell its properties as a debtor-in-possession because of the administrative burden required to employ listing brokers and to obtain Court approval for such sales.  Likewise, there were very few buyers who were willing to pay fair market value for the assets from a pending bankruptcy estate because most buyers expected substantial discounts simply by virtue of the fact that the properties were being sold out of a bankruptcy estate.  Other potential buyers would not even consider sales that required bankruptcy court approval because of a general lack of understanding or trust in legal proceedings. The limited ability for the Debtors to sell assets impacted Guardian's available cash and hampered its ability to expand the other aspects of its business operations.

13.     Finally, it was difficult for me to hire the personnel needed to fully develop 12BR's property management operations because of Guardian's pending chapter 11 case and uncertain future. Potential qualified employees understandably did not want to leave other viable jobs to

work for a company that could be shut down at any time if Guardian were not able to successfully emerge from Chapter 11.

14.     On the other hand, I believe, and my experience has shown, that significant value can be added to the Debtors' current assets through strategic renovations, leasing, asset management, and disposition. Under the Plan, the Debtors intend to continue renting, rehabbing, and selling their Properties in the ordinary course of business and reinvesting the sale proceeds into better properties in more commercially desirable locations. The Debtors will continue the process of selling and buying new properties in the ordinary course of business to earn ongoing revenue from property appreciation. Additionally, Guardian's wholly owned subsidiary, 12BR, will expand its property site operations and will also continue to provide selective property sales and brokerage services.

15.     My understanding is that in the Ninth Circuit, a plan is feasible under § 1129(a)(11) if the plan proponent demonstrates that the plan "has a reasonable probability of success." *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 787 F.2d 1352, 1364 (9th Cir. 1986). It is well settled that a debtor is not required "to prove that success is inevitable[.]" *Comput. Task Grp., Inc. v. Brotby* (*In re Brotby*), 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003) (*citing In re WCI Cable, Inc.*, 282 B.R. 457, 486 (Bankr. D. Or. 2002)). The Ninth Circuit has explained that the purpose of the feasibility requirement "is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (B.A.P. 9th Cir. 1985) (*quoting* 5 Collier on Bankruptcy ¶ 1129.02[11] (15th ed. 1984)).

16.     It is my opinion that the Plan is feasible with a reasonable probability of success.

17.     The Financial Projections show that the Debtors will have enough cash from operations and the sales of assets to fund the Plan and pay allowed creditor claims, with enough expected revenue after year five for potential dividend distributions to Guardian's existing members (equity holders) after allowed creditor claims are paid in full under the Plan.  There is no question creditors will receive significantly more under the Plan.  The Debtors' liquidation

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

analysis shows that unsecured creditors would receive little (perhaps pennies on the dollar) in a liquidation.

18.    Given my significant experience in real estate renovations, leasing, asset management, and disposition, I am confident in the Debtors' Financial Projections.   I likewise believe there is tremendous opportunity for growth in the low-income housing sector and that Guardian, as a reorganized debtor, together with 12BR, can continue to build an expertise in this area, which will, in turn, increase its profitability.

19.    Below is but one example of one of the Debtors' transactions (this transaction is for a 12 Bridges POA property and is expected to close before the end of the year) that I provide to illustrate that the assumptions set forth in the projections are reasonable and supportable and to underscore the expertise I believe Guardian is developing in the low-income housing sector:

**4929 Donovan Drive, Garfield Heights, OH:** https://www.zillow.com/homes/4929-Donovan-Dr-Garfield-Heights,-OH-44125_rb/33595723_zpid/

- Brokers price opinions $42,500
- Renovation Cost: $71,086
- Renovation time: 48 days
- Asking Price: $180,000
- Escrow Price: $175,000
- Days on Market: 19 days
- Estimated Days to Close: 33 days

20.    It is my opinion that the Plan is most likely to optimize value for and return the most value to Debtors' creditors and equity holders.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated December 7, 2024.

/s/ Aaron Noe
Aaron Noe, President
El Monte Capital, Inc., Manager,
Guardian Fund, LLC

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

**CERTIFICATE OF SERVICE**

On December 7, 2024, the foregoing document was served via ECF automated system to all parties registered with ECF in this case on the date and time I filed the document with the Court's ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Dated December 7, 2024.

/s/ Norma Guariglia

_____

Norma Guariglia

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD.
SUITE F
RENO, NEVADA 89511
775 786 7600

7